FILED

2012 MAR -8  PM 4: 09

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

1    Vahn Alexander (167373)
2    Christopher B. Hayes (277000)
     **FARUQI & FARUQI, LLP**
3    10866 Wilshire Boulevard, Suite 1470
4    Los Angeles, CA  90024
     Telephone: (424) 256-2884
5    Facsimile: (424) 256-2885
6    E-Mail: valexander@faruqilaw.com
           chayes@faruqilaw.com
7

8    Scott A. Bursor (276006)
9    L. Timothy Fisher (191626)
     **BURSOR & FISHER, P.A.**
10   1990 North California Blvd., Suite 940
     Walnut Creek, CA 94596
11   Telephone: (925) 482-1515
12   Facsimile: (925) 407-2700
     E-Mail:  scott@bursor.com
13           ltfisher@bursor.com
14
     *Attorneys for Plaintiff*
15

16          **UNITED STATES DISTRICT COURT**

17        **CENTRAL DISTRICT OF CALIFORNIA**

18                   **CV12 1983** -GHK (MRWx)

19   ENZO FORCELLATI, on Behalf of   |  Case No.
     Himself and all Others Similarly Situated,
20

21             Plaintiffs,   |  **CLASS ACTION COMPLAINT**

22      v.   |  **DEMAND FOR JURY TRIAL**

23   HYLAND'S, INC., STANDARD
     HOMEOPATHIC LABORATORIES,
24   INC., and STANDARD
     HOMEOPATHIC COMPANY,
25

26             Defendants.

27

28

                            CLASS ACTION COMPLAINT

## CLASS ACTION COMPLAINT WITH JURY DEMAND

Plaintiff Enzo Forcellati ("Plaintiff"), by his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF ACTION

1.     This is a class action against Hyland's, Inc., Standard Homeopathic Laboratories, Inc., Standard Homeopathic Company and Does 1-100 (collectively "Hyland's" or "Defendants") arising out of the sale of homeopathic cold and flu remedies sold over the counter ("OTC"), including Hyland's Cold 'n Cough 4 Kids ("Cold 'n Cough"), Cough Syrup with 100% Natural Honey 4 Kids ("Cough Syrup"), Sniffles 'n Sneezes 4 Kids ("Sniffles 'n Sneezes"), Cold Relief Strips 4 Kids with Zinc ("Cold Strips"), Complete Flu Care 4 Kids ("Flu Care"), and Nighttime Cold 'n Cough 4 Kids ("Nighttime Cold") (collectively "Cold and Flu Remedies").

2.     Hyland's represents that its homeopathic Cold and Flu Remedies offer children "Fast acting," "Safe & Effective," "Multi-symptom" relief from cold and flu symptoms, including runny noses, sore throats, coughs, headaches, body aches, flu and congestion.  In fact, Hyland's Cold and Flu Remedies are nothing more than sweetened, flavored water with only highly diluted concentrations of the products' so-called "active ingredients."

3.     As a direct and proximate result of Hyland's false and misleading advertising claims and marketing practices, Plaintiff and the members of the Class, as defined herein, purchased Hyland's Cold and Flu Remedies to treat cold and flu symptoms for which the drugs were not fast acting or efficacious as they were marketed and advertised.

CLASS ACTION COMPLAINT

4.   Plaintiff seeks relief in this action individually, and on behalf of all purchasers of Hyland's Cold and Flu Remedies, for Hyland's violations of the Magnuson-Moss Act, 15 U.S.C. § 2301, *et seq.*, for unjust enrichment, breach of express warranty, breach of implied warranties of fitness and merchantability, violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 58:8-1, *et seq.*, violation of the California Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*, Unfair Competition Law ("UCL"), California Bus. & Prof. Code §§ 17200, *et seq.*, and False Advertising Law ("FAL"), California Bus. & Prof. Code §§ 17500, *et seq.*

## THE PARTIES

5.   Plaintiff Enzo Forcellati is a resident of Bergen County, New Jersey.

6.   Hyland's is a corporation organized under the laws of the State of California, with its principal place of business located at 204 W. 131st Street, Los Angeles, California 90061.  Hyland's is engaged in the business of manufacturing, mass marketing and distributing homeopathic formulas under the Hyland's brand name.  Hyland's is a wholly owned subsidiary of defendant Standard Homeopathic Company.

7.   Standard Homeopathic Laboratories, Inc. is a privately held corporation organized under the laws of the State of Nevada, with its principal place of business located at 154 W. 131st Street, Los Angeles, California 90061.   Standard Homeopathic Laboratories is a wholly owned subsidiary of Standard Homeopathic Company.   Standard Homeopathic Laboratories' website maintains that it is a "licensed pharmacy and modern laboratory designed to provide the most comprehensive choice of homeopathic medicines."

8.   Standard Homeopathic Company is a privately held corporation organized under the laws of the State of Nevada, with its principal place of business located at 154 W. 131st Street, Los Angeles, California 90061.   Standard

CLASS ACTION COMPLAINT

Homeopathic Company has four wholly owned subsidiaries: P&S Laboratories dba Hyland's, Inc.; Standard Homeopathic (International), Inc. - a foreign sales corporation; Walker Laboratories, Inc.; and Standard Homeopathic Laboratories. Standard Homeopathic Company has three sales divisions: Pharmacy; Wholesale; and Natural Foods.   Standard Homeopathic Company promotes itself and its operating companies as the largest full-service homeopathic firm in the United States in terms of sales and operating results.

9.   Plaintiff is unaware of the names and capacities of those defendants sued as DOES 1 through 100 but will seek leave to amend this complaint once their identities become known to Plaintiff.  Upon information and belief, Plaintiff alleges that at all relevant times each defendant, including DOE defendants 1 through 100, was the officer, director, employee, agent, representative, alter ego, parent or subsidiary, or co-conspirator of each of the other defendants.

## JURISDICTION AND VENUE

10.   This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question).  This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

11.   This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from at least one Defendant.

12.   Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions and acts giving rise to the claims herein occurred in this District.   Defendants reside in this district and Defendants sold the products which are the subject of the present Complaint, in this District.

CLASS ACTION COMPLAINT

# FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

## A.   Homeopathy Is A Pseudoscience

13.   Homeopathy is a 200-year old system of alternative medicine in which practitioners treat patients using highly diluted preparations that were believed to cause healthy people to exhibit symptoms that are similar to those exhibited by the patient.

14.   Homeopathy is based on two principles: "Like-Cure-Like" whereby a substance that causes a symptom to manifest in a healthy person is used in diluted form to treat the same symptom in a sick person; and "ultra-dilution" whereby the more one dilutes a substance, the more potent that sometimes becomes at treating the symptom ("ultra-dilution" is aided by a specific method of shaking the solutions, termed "succession" or "succussion").   It is claimed that homeopathy works by stimulating the body's healing mechanisms. *See* House of Commons, Science and Technology Committee, Evidence Check 2: Homeopathy, Fourth Report, 2009-10, HC 45, ¶ 9 (U.K.).

15.   The "Like-Cure-Like" principle of homeopathy, also known as the "law of similars," was first stated by German physician Samuel Hahnemann in 1796. Hahnemann believed that by using drugs to induce symptoms, the artificially induced symptoms would stimulate the "vital force," causing it to neutralize and expel the original disease and that this artificial disturbance would naturally subside when the dosing ceased.  As explained in Hyland's literature:

> Basically, [the law of similars] states that a medicinal substance that can create a set of symptoms in a healthy individual can treat a sick individual who is manifesting similar symptoms. This law has been found in writings of Hippocrates as well as in ancient Indian and Chinese texts.  While Hahnemann wasn't the first to discover the law of

CLASS ACTION COMPLAINT

1    similars, he was the first physician to conduct extensive systematic

2    experiments that put this law into clinical practice.

3    *See* http://www.hylands.com/Cough-Cold-Edu.pdf (last accessed March 7,

4    2012).

5        16.    As an example of the "law of similars," the consumption of a substance

6    such as coffee before bed keeps children awake, so coffee is used to make a

7    homeopathic remedy to treat insomnia. Indeed, coffee is listed on the label as one of

8    the ingredients of Hyland's Nighttime Cold, and according to Hyland's webpage for

9    this product, is purportedly effective to treat "sleeplessness." *See*

10   http://www.hylands.com/products/nightime-cold.php (last accessed March 7, 2012).



20       17.    The settled view of medical science is that the "law of similars" is

21   theoretically weak and "fails to provide a credible physiological mode of action for

22   homeopathic products." *See* House of Commons, Science and Technology

23   Committee, Evidence Check 2: Homeopathy, Fourth Report, 2009-10, HC 45, ¶ 54

24   (U.K.).

25       18.    The method homeopaths have used for over 200 years to determine

26   which remedies were suitable for specific symptoms is called a "proving," after the

27   original German word Prüfung, meaning "test." Provings involved taking various

28

CLASS ACTION COMPLAINT

substances and recording every twitch, sneeze, ache or itch that occurred afterward - often for several days.    Followers of homeopathy took for granted that every sensation reported was caused by whatever substance was administered, and that extremely diluted doses of that same substance would then be the correct substance to treat anyone with those specific symptoms.

19.    As explained in Hyland's brochure promoting its Cold and Flu Remedies:

> In his clinical practice, Hahnemann conducted a thorough history and physical examination paying attention to the mental, emotional as well as the physical symptoms of each patient.    Hahnemann was a truly holistic physician in that he also questioned his patients about their lifestyle in general - diet, exercise, attitudes, as well as the quality of air and water they were exposed to, and so forth.
>
> A "symptom picture" would be generated from each patient interview and Hahnemann would then prescribe that substance whose drug picture most closely matched the symptom picture.    Hahnemann confirmed in his clinical practice that the more closer the match, the more successful the treatment outcome.

See http://www.hylands.com/Cough-Cold-Edu.pdf (last accessed March 7, 2012).

20.    Homeopathy uses many animal, plant, mineral, chemical and poisonous substances in its remedies.    Examples of substances used by homeopaths to prepare their remedies include arsenicum album (arsenic oxide), natrum muriaticum (sodium chloride or table salt), lachesis muta (the venom of the bushmaster snake), opium, and thyroidinum (thyroid hormone).    Some of Defendants' homeopathic products for children list belladonna (also known as the "deadly nightshade"), one of the most lethal plants in the Western Hemisphere, as an active ingredient.    In addition to

CLASS ACTION COMPLAINT

various plants and flowers, Hyland's Cold and Flu Remedies contain such "active ingredients" as sulphur, phosphorous, zinc, potash, soda ash, and extract from duck hearts and liver.

21.     In producing these remedies, homeopaths use a process called "dynamisation," "potentisation" or "ultra-dilution" whereby a substance is diluted with alcohol or, more commonly, distilled water. The diluting procedure specific for homeopathy is called potentisation or dynamisation.

22.     Defendants use the decimal scale to describe the dilution ratio of its "active ingredients." Under the decimal scale, the active substance is diluted by a factor of 10 at each stage, and is expressed as #D or #X. Dilution often continues until none of the original substance remains. Indeed, the allowable concentration of arsenic in U.S. drinking water is 8X, which is several orders of magnitude less than many of the purportedly "active ingredients" in Defendants' Cold and Flu Remedies.

23.     According to homeopathic theory, following each dilution, homeopathic remedies are then vigorously shaken by ten hard strikes against an elastic body, in a process which homeopaths term "succession" or "succussion." Each dilution followed by succession is assumed to increase the effectiveness of the remedy. Homeopaths call this process of ultra-dilution and succussion "potentization."

24.     Because they are so heavily diluted, homeopathic remedies may not contain any pharmacologically active molecules, and, therefore, for such remedies to have pharmacological effect violates fundamental principles of science. Modern homeopaths have proposed that water has a memory that allows homeopathic preparations to work without any of the original substance. As explained by Hyland's in its brochure promoting its Cold and Flu Remedies, "[t]he most current proposal for how this may work is that water is capable of storing information about substances with which it has previously been in contact." Medical science considers the notion that ultra-dilutions can maintain an imprint of substances previously

7

CLASS ACTION COMPLAINT

dissolved in them to be scientifically implausible.  *See* House of Commons, Science and Technology Committee, Evidence Check 2: Homeopathy, Fourth Report, 2009-10, HC 45, ¶ 61 (U.K.).

25.    The efficacy of homeopathic remedies has been rejected repeatedly by medical science.  For example, in a study of homeopathic remedies commissioned by the British Government, medical scientists repeatedly expressed their criticisms of homeopathy and its proponents:

> We regret that advocates of homeopathy. . .choose to rely on, and promulgate, selective approaches to the treatment of evidence base as this risks confusing or misleading the public, the media and policy makers . . .

*Id.* at ¶73.

> In our view, the systematic reviews and meta-analyses conclusively demonstrate that homeopathic products perform no better than placebos.

*Id.* at ¶70.

> There has been enough testing of homeopathy and plenty of evidence showing that it is not efficacious . . .

*Id.* at ¶77.

> For patient choice to be real choice, patients must be adequately informed to understand the implications of treatments.  For homeopathy this would certainly require an explanation that homeopathy is a placebo.  When this is not done, patient choice is meaningless.  When it is done, the effectiveness of the placebo – that is, homeopathy – may be diminished.

*Id.* at ¶70.

26.    After its investigation, the British Government found that:

CLASS ACTION COMPLAINT

[T]he evidence base shows that homeopathy is not efficacious (that is, it does not work beyond the placebo effect) and that explanations for why homeopathy would work are scientifically implausible… The [Science and Technology] Committee concluded, given that the existing scientific literature showed no good evidence of efficacy, that further clinical trials of homeopathy could not be justified… In the Committee's view, homeopathy is a placebo treatment and the Government should have a policy on prescribing placebos. Prescribing of placebos is not consistent with informed patient choice, which the Government claims is very important, as it means patients do not have all the information needed to make choice meaningful… Beyond ethical issues and the integrity of the doctor-patient relationship, prescribing pure placebos is bad medicine. Their effect is unreliable and unpredictable and cannot form the sole basis of any treatment on the NHS.

*See* Press Release, Science and Technology Committee, MPS Urge Government to Withdraw NHS Funding and MHRA Licensing of Homeopathy (February 22, 2010), available at http://www.parliament.uk/business/committees/committees-archive/science-technology/s-t-homeopathy-inquiry/ (last accessed March 7, 2012).

27.   In 2005, Dr. Matthias Egger and colleagues from the University of Berne in Switzerland analyzed 110 placebo-controlled homeopathy trials and compared the results to the same number of trials of conventional drugs. The results, published in the British journal, The Lancet, showed that the benefits from the homoeopathic remedies were entirely compatible with the placebo effect. The researchers went on to add that: "the findings were less surprising than the fact that debate over homeopathy continues, despite 150 years of unfavorable findings . . ." Aijing Shang, *Are The Clinical Effects of Homoeopathy Placebo Effects?*

CLASS ACTION COMPLAINT

*Comparative Study of Placebo-controlled Trials of Homoeopathy and Allopathy,* The Lancet, Vol. 366, Aug. 27, 2005, at 726-732 (the "Homeopathy Comparative Study").

28.   Michael Levy, director of the Food and Drug Administration's ("FDA") division of new drugs and labeling compliance, has stated that the FDA is "not aware of any evidence that shows homeopathic drugs are effective." Indeed the American medical establishment has long rejected the science underlying homeopathic studies, saying the compounds are too diluted to have any meaningful or measurable medicinal value. "Science tells us that most of these medicines aren't useful," said Dr. Wayne Yankus, a Midland Park pediatrician, discussing the efficacy of homeopathic remedies. *See* Colleen Diskin, *Parents Look To Homeopathy As Alternative To Over-The-Counter Cold Medicines,* The Record (Dec. 19, 2010), http://www.northjersey.com/news  /112144649_Over-the-counter_alternatives.html (last accessed March 5, 2012).

**B.   The FDA Does Not Regulate Homeopathic Remedies**

29.   Congress enacted the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.* in 1938, after Congress "became increasingly concerned about unsafe drugs and fraudulent marketing." *Wyeth v. Levine*, 129 S. Ct. 1187, 1198-99 (2009). Among other things, the FDCA prohibits the sale of adulterated or misbranded drugs, and requires manufacturers to apply to the FDA for premarket approval of new drugs. *See* 21 U.S.C. § 331.

30.   The FDCA defines "drug" to include articles like Hyland's Cold and Flu Remedies that are recognized in the official Homeopathic Pharmacopoeia of the United States ("HPUS") and includes both prescription and OTC drugs. *See* 21 U.S.C. § 321(g)(1). Homeopathic OTC drugs, however, are treated as a subset of OTC drugs by the FDCA and its various regulations, and are not subject to the same

CLASS ACTION COMPLAINT

evaluation, testing and substantiation requirements that the FDA applies to conventional non-homeopathic OTC drugs.

31.    The FDA subjects non-homeopathic OTC drugs to stringent evaluations and testing to determine whether such drugs are safe, effective and not misbranded using a drug monograph system created by the FDA.  *See* 21 C.F.R. §§ 330.1, 330.10.  In drafting the monographs, the FDA divided the non-homeopathic OTC drugs into drug categories, which were then assigned an advisory review panel of qualified experts who evaluate the safety and effectiveness of the non-homeopathic OTC drugs, as well as reviewing the drugs' labeling, and advising the FDA Commissioner on the promulgation of monographs establishing conditions under which non-homeopathic OTC drugs listed within each monograph are generally recognized as safe, effective, and not misbranded.  *See* 21 C.F.R. § 330.10(a).

32.    Under this system, a manufacturer seeking approval of a new non-homeopathic OTC drug must submit a detailed new drug application, which must include:

> [E]vidence consisting of adequate and well-controlled investigations, including clinical investigations, by experts qualified by scientific training and experience to evaluate the effectiveness of the drug involved, on the basis of which it could fairly and responsibly be concluded by such experts that the drug will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the labeling or proposed labeling thereof.

*See* 21 U.S.C. § 355.  Moreover, after the FDA approves a new drug application, any change in the drug's labeling requires a supplement to the application, and further approval by the FDA, either before or after the change.  *See* 21 C.F.R. §§ 314.70(b), (c), 314.71.

11

CLASS ACTION COMPLAINT

1    33.    In stark contrast, unlike non-homeopathic OTC drugs, homeopathic

2  OTC drugs, including the Cold and Flu Remedies, are not approved or authorized by

3  the FDA at all.  Indeed, the FDA has "acknowledge[d] that many homeopathic drug

4  products are manufactured and distributed without FDA approval or authorization

5  under [its] enforcement policies."

6    34.    The FDA defines a homeopathic drug as any drug labeled as being

7  homeopathic that is also listed in the HPUS, an addendum, or its supplements.  *See*

8  21 U.S.C. § 321(g)(1)(A); FDA, Inspections, Compliance, Enforcement, and

9  Criminal Investigations, Compliance Policy Guides § 400.400, "Conditions Under

10  Which Homeopathic Drugs May be Marketed" ("CPG § 400.400").[1]

11    35.    According to the FDA, the HPUS is "[a] compilation of standards for

12  source, composition, and preparation of homeopathic drugs.  The HPUS contains

13  monographs of drug ingredients used in homeopathic treatment."  CPG § 400.400.

14  Although the HPUS describes how these ingredients are prepared for homeopathic

15  use, it does not list the drugs as fit to treat specific symptoms, ailments, or

16  conditions.  Instead, the HPUS allows the practitioner or manufacturer to set forth

17  the substance's indications for use.

18    36.    Thus, rather than the stringent testing and evaluation applied to other

19  OTC drugs, homeopathic OTC drug substances are included in the HPUS after

20  having been subjected to the "provings" described above, which were conducted in

21  the 1800's and early 1900's to establish what types of symptoms resulted from the

22  use of a homeopathic substance in a healthy person.

23    37.    The FDA does not impose additional standards for strength, purity,

24  quality, safety, or efficacy on homeopathic OTC remedies.  Indeed, the FDA has

25  advised that unless a homeopathic remedy is "being offered for use (or promoted)

26

27  [1] http://www.fda.gov/ICECI/ComplianceManuals/CompliancePolicyGuidanceManual/ucm074360.htm (Last accessed March 7, 2012).

28

CLASS ACTION COMPLAINT

significantly beyond recognized or customary practice of homeopathy," federal policies on health fraud do not apply. FDA's Compliance Policy Guide § 400.400 (the "CPG").

38. The FDA requires that the labels on homeopathic remedies include at least one major indication (*i.e.*, medical problem to be treated), a list of ingredients, the dilution, and safety instructions. Notably, however, pursuant to FDA Compliance Guidelines, compliance with this labeling requirement or a "product's compliance with requirements of the HPUS . . . *does not establish that it has been shown by appropriate means to be safe, effective, and not misbranded for its intended use.*" *Id.* (emphasis added).

39. The CPG further provides that only "[h]omeopathic products intended solely for self-limiting disease conditions amenable to self-diagnosis (of symptoms) and treatment may be marketed OTC. *Homeopathic products offered for conditions not amenable to OTC use must be marketed as prescription products.*" *Id.* (emphasis added).

## C.   Background Of Hyland's

40. In 1903, Hyland's was founded as a Los Angeles pharmacy when homeopathy was a standard medical practice in the United States. Countless conventional medicines, both prescription and OTC, were developed and began to dominate the pharmaceutical market in the middle of the 20th Century. In response, Hyland's pharmacists began to develop "combination" homeopathic medicines, which they formulated by combining several single homeopathic remedies believed to be effective for a particular ailment into one tablet.

41. In the 1970s, Hyland's began marketing these combination homeopathic remedies in health food stores. By the late 1980s, Hyland's used Hyland's Teething Tablets to break into the chain drugstore market. Since 2000, the company has annually enjoyed double-digit growth, introduced many financially successful new

CLASS ACTION COMPLAINT

products, put its medicines on the shelves of every major drug retailer and has engaged in aggressive marketing to take advantage of the increasing demand for medicines that are perceived as effective without carrying negative side effects.

**D.     Hyland's False And Misleading Labels**

42.     Hyland's has recognized the importance of labeling in capturing the highly competitive OTC market.  In fact, Hyland's was featured in a *Nutritional Outlook* article entitled "Savvy labeling and container design can ensure a sale at first sight."  This article heralded the fact that Hyland's was the first homeopathic company to "collaborate[] with a market research firm to redesign and test bilingual labels for its homeopathic infant products" such as its Cold and Flu Remedies.

43.     The FDCA prohibits the sale of misbranded drugs, whether they are conventional or homeopathic. *See, e.g.,* 21 U.S.C. § 331.  Under the FDCA, a drug will be deemed to be misbranded if the label is false or misleading. *See* 21 U.S.C. § 352(a).  The term "labeling" is defined to include "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." *See* 21 U.S.C. § 321(m).

44.     Nevertheless, Hyland's makes numerous false and misleading marketing claims on the labels of its Cold and Flu Remedies promising fast acting and effective relief from cold and flu symptoms.  For example, virtually every panel of the boxes claim Hyland's Cold and Flu Remedies are "Safe & Effective" and "100% Natural."

45.     The packaging materials for Hyland's Sniffles 'n Sneezes product claims it provides "Safe and Effective relief of cold symptoms."

CLASS ACTION COMPLAINT



46.    Similarly, Hyland's Cold Relief with Zinc promises "Fast relief from cold symptoms," and the same package claims that it "Relieves: Runny nose, Sneezing [and] Sore throat."



47.    Defendants also claim that "**Hyland's Cold 'n Cough 4 Kids** provides effective and quick relief for the symptoms of the common cold... [and] relieves symptoms of: **Sneezing & runny nose, Nasal congestion, Sore throat, Cough**" (emphasis in original).

CLASS ACTION COMPLAINT



48.     On the packaging for Hyland's Complete Flu product, Defendants claim that it "Relieves" "Fevers & Chills," "Body Aches," "Headaches," and "Coughs and Congestion."



49.     Likewise, the label for Hyland's Cough 'n Cold claims to offer "Multi-symptom" relief and claims that the product: "Temporarily relieves the symptoms of

16

CLASS ACTION COMPLAINT

the common cold," including "Sore Throat," "Nasal Congestion," "Cough," "Runny nose" and "Sneezing."

50.     The outer packaging materials and labels on each of the other Cold and Flu Remedies contain similar representations.   Specifically, Hyland's maintains on the packaging and labels of each of the Cold and Flu Remedies that the product that the product is safe and effective for multiple cold and/or flu symptoms.   *See* http://www.hylands.com/gallery/index.php (last accessed March 7, 2012) (including photos of the front packaging of each of the Cold and Flu Remedies).

**E.**   **Hyland's Own Marketing Materials Belie It's Theory Of Effectiveness For The Cold And Flu Remedies**

51.     Hyland's does not believe its own homeopathy theory that "Like Cures Like."   When it suits its marketing purposes, Hyland's promotes its Cold and Flu Remedies based on conventional concepts of chemistry and medical efficacy.

52.     For instance, Defendants promote Sniffles 'n Sneezes 4 Kids on their website by claiming that **"Hyland's New Sniffles 'n Sneezes 4 Kids** Offers Children Relief From Uncomfortable Symptoms with an Active Ingredient Proven to Shorten the     Duration     of     Colds     by     Nearly     Half."   http://www.hylands.com/products/sniffles.php (last accessed March 7, 2012).

53.     Hyland's product catalogue also contains the same misleading representation concerning the effectiveness of Zinc Gluconate in Hyland's product, Zinc Strips.   *See* http://www.hylands.com/Hylands-Catalogue.pdf (last accessed March 5, 2012).   The catalogue notes: "Our children's cold relief formula contains Zinc Gluconate, an essential mineral with antioxidant effects that has been clinically proven to shorten duration of colds by nearly half." *Id.*

54.     These statements are misleading because the clinical study to which Hyland's refers did not include highly diluted homeopathic concentrations of the active ingredient (Zincum Gluconicum), but a standard non-diluted concentration.

CLASS ACTION COMPLAINT

Moreover, Hyland's statements are remarkable because they undermine Hyland's own theory of efficacy for the Cold and Flu Remedies. *Hyland's claims to be treating cold and flu symptoms homeopathically, by using active ingredients that cause the cold symptom in standard concentrations, but the study suggests that standard concentrations treat, rather than cause the symptoms of a cold!*

**F.    Hyland's Markets Its Cold And Flu Remedies By Creating Fear And Distrust Of Conventional OTC Medicines**

55.    To profit from FDA warnings concerning conventional OTC cold and flu medicines and the near flu hysteria which began in 2009, Hyland's promoted its Cold and Flu Remedies through false and misleading print advertisements, television advertisements, Internet advertisements and press releases. Not only does each of these advertisements falsely claim that Hyland's products are fast acting and effective for the treatment of cold and flu symptoms, but many such advertisements also attempt to increase parents' fears of competing products that may actually be effective.

56.    For instance, an edition of Hyland's online newsletter raises questions about each medically accepted treatment for cold and flu symptoms, including conventional non-homeopathic OTC drugs, antibiotics and even flu shots, which the United States Center for Disease Control (the "CDC") recommends to everyone older than 6 months of age[2] (the "Newsletter"). The Newsletter states:

> Over-the-counter (OTC) medications for cold and flu may include a pain and fever reducer, such as acetaminophen or ibuprofen, antihistamines, decongestants and/or cough suppressants. Potential side effects of OTC cold and flu medications include: allergic reactions; liver damage; easy or unusual bleeding or bruising; drowsiness; dizziness;

---

[2] http://www.cdc.gov/flu/about/qa/flushot.htm (last accessed March 5, 2012)

CLASS ACTION COMPLAINT

fainting; dry eyes, nose, and mouth; blurred vision; difficulty urinating; or excitation in children. *Considering the side effects and possible drug interactions, OTC medications should be used with caution.*

Antibiotics continue to be overused, but they are not effective treatment against colds and the flu. Antibiotics fight off bacteria, but colds and flu are caused by viruses. *Tamiflu is one antiviral that has been recommended by the Centers for Disease Control. However, one of the side effects, particularly in children, may be at increased risk for self-injury and delirium.* The FDA's safety information and adverse event reporting program has sent alerts to physicians advising them to closely monitor their patients for signs of abnormal behavior.

One other option is a flu shot. But *an article in the October 28, 2006 issue of British Medical Journal questions the evidence of safety and effectiveness of the flu shot. Some of the known possible adverse effects of flu shots include fever, malaise, muscle aches, irritability, insomnia and allergic reactions (e.g., hives, swelling, asthma and anaphylaxis).*

See http://www.hylands.com/news/treatment-for-common-cold.php (last accessed March 5, 2012) (emphasis added).

57. The Newsletter goes on to laud the safety and efficacy of Hyland's homeopathic products over the dangerous products recommended by the CDC, noting:

Some of the products that appear to be particularly helpful for colds are Hyland's Cold Plus C Tablets and Hyland's Cold 'n Cough 4 Kids. These products contain a group of homeopathic medicines that help relieve symptoms of the common cold. In addition, Hyland's Cough Syrup with 100% Natural Honey 4 Kids is safe for children over 2 years

19

CLASS ACTION COMPLAINT

old. For flu, Hyland's Complete Flu Care and Hyland's Complete Flu Care 4 Kids include some of the top remedies for flu symptoms. For example, some of the medicines in Complete Flu Care 4 Kids specifically help relieve body aches associated with fevers. Other ingredients help with weakness, sleepiness and chills and relieving inflamed and eyes and runny noses.

*Id.*

58.     Moreover, as set forth above, Hyland's published and distributed a brochure promoting its Cold and Flu Remedies for children.   This brochure, maintained on Hyland's website, states in relevant part:

In October of 2008, the Food and Drug Administration (FDA) supported labeling of over-the-counter (OTC) cough and cold medications so that they should not be used in children younger than 2 years of age. ***The FDA was acting in response to lack of data showing efficacy of cough and cold medications in children*** as well as serious adverse effects including tachycardia, decreased levels of consciousness, seizures and even death.

                                    * * *

***Homeopathy is grounded in a scientific method and supported by clinical research.***

                                    * * *

OTC cough and cold medications containing phenylephrine, diphenhydramine, psuedoephedrine, cloropheniramine, brompheniramine, dextromethorphan, guaifensisin, and doxylamine are not a safe or effective treatment option for children under 4 years of age.

                                    * * *

CLASS ACTION COMPLAINT

There are also safe alternative approaches, *e.g.*, FDA regulated homeopathic combination medicines that assist the body to begin the healing process, and can be used in young children without having to worry about any side effects.

\* \* \*

**Homeopathic medications are widely available over the counter medications.**

\* \* \*

**Homeopathic medications are regulated by the FDA** so are unlikely to contain any toxic components.

\* \* \*

**Homeopathic medications are safe to use**. . . They support the body's own healing capacity and do not interact with other medications, so they can be given alongside conventional medications without any interactions.

\* \* \*

In daily clinical practice, **combination homeopathic medications can be recommended that contain many of the individual homeopathic medications that have been known to be effective in alleviating different symptoms of colds and coughs.** This takes the guesswork out of prescribing. **Hyland's provides a complete array of cough and cold products that contain many of these medications and are safe and effective treatment options that you can recommend with confidence to your patients.**

http://www.hylands.com/Cough-Cold-Edu.pdf (last accessed March 5, 2012)(emphasis added).

CLASS ACTION COMPLAINT

59.     Hyland's also issued false and misleading press releases to promote its Cold and Flu Remedies and increase consumers' fears of conventional treatments based on medically sounds principles.  For example, on August 20, 2009, Hyland's issued a press release available on its website, which once again employed scare tactics to raise the concern of parents regarding conventional non-homeopathic OTC cold and flu products, while claiming Hyland's Cold and Flu Remedies are an "effective" alternative.  This press release stated in relevant part:

> Parents everywhere will be searching for a way to relieve their young children's cough and cold symptoms as the autumn months approach and children return to school. ***Many, though, are leery of some over-the-counter (OTC) medications that, this time last year, were under discussion as to their safety and efficacy for young children.*** Add to that the fact that, according to the Center for Disease Control, 22 million school days are lost annually in the U.S. due to the common cold, it's easy to see that not treating symptoms is simply not an option.  As a result, many parents are opting to treat their children with safer, more natural medicines.
>
> In 2007 and 2008, the Food and Drug Administration (FDA) warned parents of children's OTC medications that contained any of the eight specific, active ingredients of concern, including phenylephrine, diphenhydramine, pseudoephedrine, clorpheniramine, brompheniramine, dextromethorphan, guaifensisin, doxylamine. This year, experts say that many parents want to take control of the issue and make sure that when cold season hits, they're prepared.
>
> "The 2008 cold and cough season resulted in thousands of scared, confused parents unsure of how to help their child get some relief from stubborn symptoms," said Jim Sears, M.D., expert on pediatric medicine

CLASS ACTION COMPLAINT

1   and advocate of natural treatments. *"I want parents to find comfort in*
2   *knowing that there are OTC medications in their local drug stores and*
3   *health food stores that are safe for their children. Known as*
4   *homeopathic medications, these OTCs are all natural, extremely safe*
5   *and will effectively relieve a young child's cold, flu and cough*
6   *symptoms."*

7   Hyland's, Inc. is a leading, national provider of homeopathic
8   medications. They are reaching out to parents this cough and cold
9   season to make sure that children everywhere have access to safe
10  symptom relief. "Families need to know that there are ways to safely
11  treat the symptoms of colds and flu this fall, especially in children," said
12  J.P. Borneman, Ph.D., chairman and CEO of Hyland's, Inc. "While
13  persistent or severe symptoms should always be referred to a healthcare
14  professional, *parents remain their child's first defense in alleviating*
15  *symptoms while avoiding the dangers associated with medicines*
16  *containing the active ingredients of concern to the FDA.* For this
17  reason, Hyland's is making time this cough and cold season to educate
18  parents on their OTC options, helping them gain access to safe
19  medications for their child."

20  *See* http://www.hylands.com/news/coldcough4kids.php (last accessed March 5,
21  2012) (emphasis added).

22      60.    Another press release notes: "There's nothing worse than watching a
23  child suffer from the miserable symptoms that accompany a winter cold." *See*
24  http://www.hylands.com/news/snifflesnsneezes.php (last accessed March 5, 2012).
25  The press release also attributes the following quote to Mr. Borneman:

26      Sniffles n' Sneezes 4 Kids tablets dissolve instantly, making it simple to
27      ensure younger children receive the correct dosage.  It also eliminates

28  _____

                                    23
                                                    CLASS ACTION COMPLAINT

the hassle of trying to get children to take medicines they don't like …
The medicine is a great option for parents looking to relieve their
children's cold symptoms without turning to medicines that can make
them drowsy or have other unpleasant side effects.

61.   The intended effect of this marketing and advertising campaign is to create a fear of non-homeopathic OTC remedies, particularly for the treatment of small children.   Instead, they maintain that their homeopathic products are "fast acting" and "effective," when in fact the Cold and Flu Remedies are nothing but a placebo.   While Hyland's maintains that there is nothing worse than a parent watching their child suffer, by promoting their Cold and Flu Remedies as a substitute for alternative products that might actually work, Hyland's dissuades parents from seeking proper medical treatment.

### G.   Hyland's Cold And Flu Remedies Are Neither Fast Acting Nor Effective

62.   Although the label, packaging and advertisements for Hyland's Cold and Flu Remedies state that these drugs provide "Fast acting" and "Safe & Effective" relief from "multiple" cold and flu symptoms, there are no studies which demonstrate that these homeopathic drugs are either fast acting or effective for relief from the symptoms of colds and flu.

63.   The purportedly "active ingredients" in Hyland's Cold and Flu Remedies are so highly diluted that there is no scientific basis to support Hyland's claims that its products are effective.   The majority of the "active ingredients" in Hyland's Cold and Flu Remedies is diluted at a ratio of 1 to 1,000,000, while many are diluted at a ratio of 1 to 1,000,000,000,000.   Moreover, the extract of duck liver and heart purportedly contained in Flu Care is diluted at a ratio of 1 to 10 to the 400th power (1 followed by 400 zeros).

64.   For over 200 years, homeopaths have claimed that with each successive dilution of the active ingredient, when properly shaken, the remedy becomes more

24

CLASS ACTION COMPLAINT

potent.   There is no scientific explanation, however, of how the water or other substance in which the so-called active ingredients are diluted retains a "memory" or "imprint" which would make these remedies effective.

65.   When substances are dissolved in water, the water molecules will form structures around the solute molecules, but the hydrogen bonds between water molecules are far too weak and short-lived to hold that structure once the solute has been removed.  It is not surprising that experiments that claim to have demonstrated the memory of water have failed to be reproducible.  The notion that water could hold imprints of solutions previously dissolved in it is so far removed from current scientific understanding, as opposed to scientific theory 200 years ago, that, as Professor David Colquhoun, Professor of Pharmacology at University College London, put it: "If homeopathy worked the whole of chemistry and physics would have to be overturned."

66.   Moreover, properly conducted random clinical trials have repeatedly demonstrated that homeopathic remedies are no more effective than placebos.  The authors of the Homeopathy Comparative Study, cited above, concluded that *when analyses were restricted to large trials of higher quality there was no convincing evidence that homeopathy was superior to placebo*." (emphasis added).

67.   Similarly, health organizations such as the American Medical Association and the National Health Service have also issued statements that there is no scientific evidence to support the use of homeopathic treatments in medicine.  Even homeopathy's own supporters, such as the National Center for Complementary and Alternative Medicine has been forced to admit that "[t]here is [] no condition for which homeopathy has been proven effective."

68.   In sum, Hyland's produces expensive sweetened, flavored water or sugar tablets and capitalizes on consumers' trust and fears.  Hyland's, through its labeling and marketing, misleads consumers into believing that (i) the ingredients in

CLASS ACTION COMPLAINT

Hyland's Cold and Flu Remedies have been proven effective and deemed as such by the FDA; (ii) homeopathic medicine and treatment have been proven effective; and (iii) the "active ingredients" in Hyland's Cold and Flu Remedies are actually present. In fact, however: (i) the FDA has never deemed Hyland's Cold and Flu Remedies effective against any ailment or condition; (ii) Hyland's Cold and Flu Remedies have never been proven effective, let alone proven to provide fast acting relief; and (iii) the serial dilutions used by Hyland's in the preparation of its Cold and Flu Remedies rendered the "active ingredients" virtually non-existent.

**J.    Hyland's False And Misleading Claims Are Material**

69.    All of Hyland's false and/or misleading claims challenged herein relate to matters that are material and important to a consumer's purchasing decision, as they concern the effectiveness of Hyland's Cold and Flu Remedies to blunt the effects, reduce the duration, and treat the symptoms of colds and flu, all of which, if true, would be inherent and material qualities of those products.

70.    All of Hyland's marketing and packaging materials were further intended to, and did, induce Plaintiff and members of the Class to rely upon Hyland's representations that its Cold and Flu Remedies would provide fast "acting," "effective," "multi-symptom" cold and flu relief.   These representations were a substantial factor in causing Plaintiff and members of the Class to purchase Hyland's Cold and Flu Remedies instead of conventional medication that had been approved or otherwise authorized by the FDA.

71.    At the time Plaintiff and members of the Class purchased Hyland's Cold and Flu Remedies they were unaware of the fact that Hyland's Cold and Flu Remedies were not generally recognized as effective for their intended uses or that there has been no studies which demonstrated that their "active ingredients" were effective for the treatment of the common cold or flu, and therefore it was a violation of state and federal law for Hyland's to sell Hyland's Cold and Flu Remedies and

CLASS ACTION COMPLAINT

promote those products in a false, misleading, deceptive and/or unconscionable manner.

72.   If Plaintiff and members of the Class had been aware of the fact that Hyland's Cold and Flu Remedies were not effective for their intended uses and that it was illegal for Hyland's to sell its Cold and Flu Remedies, Plaintiffs and members of the Class would not have purchased the products.

73.   As a result, Plaintiff and members of the Class who purchased Hyland's Cold and Flu Remedies which were not efficacious, effective, and useful for their intended uses and were illegal for sale at the time of the consumer transactions have been injured in fact and have suffered an ascertainable and out of pocket loss. Plaintiff and members of the Class therefore seek a refund and/or rescission of the transaction and all further equitable and injunctive relief as provided by applicable law.

## PLAINTIFF'S PURCHASE OF HYLAND'S COLD 'N COUGH

74.   Plaintiff Enzo Forcellati read Defendant's advertisements on the outside of the Hyland's Cold 'n Cough and read about the product on Hyland's website.  Mr. Forcellati purchased Cold 'n Cough over the counter at a CVS store in Bergen County, New Jersey after reading that Hyland's Cold 'n Cough provides safe & effective, fast acting multi-symptom relief for nasal congestion, cough, sore throat, runny nose, sneezing and congestion.  His family used the drug as directed, but did not obtain the advertised relief from these symptoms, nor any benefits from using Cold 'n Cough.

75.   Mr. Forcellati would not have purchased Hyland's Cold 'n Cough if he had known that it was not an effective treatment for these symptoms.

## CLASS ACTION ALLEGATIONS

76.   Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class consisting of all persons in the United

CLASS ACTION COMPLAINT

States who, within the relevant statute of limitations period, purchased Hyland's Cold and Flu Remedies.

77.     Plaintiff Enzo Forcellati also seeks to represent a subclass defined as all members of the Class who purchased mislabeled Hyland's Cold and Flu Remedies in New Jersey ("the New Jersey Subclass").

78.     Plaintiff reserves the right to amend or modify the Class definition with greater specificity or further division into subclasses or limitation to particular issues as discovery and Orders of this Court warrant.

79.     Excluded from the Class are Defendants, the officers and directors of Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or had a controlling interest.

80.     Also excluded from the Class are persons or entities that purchased Hyland's Cold and Flu Remedies for purposes of resale.

81.     Plaintiff is a member of the Class he seeks to represent.

82.     The Class is so numerous that joinder of all members is impractical. Although Plaintiff does not yet know the exact size of the Class, Hyland's claims to have its Cold and Flu Remedies in "nearly every pharmacy and grocery store in North America today." Consequently, Hyland's represents on its website that "Standard Homeopathic Company and its operating companies [are] the largest full-service homeopathic firm in the United States in terms of sales and operating results." Hyland's claims that in 2007 "an estimated 3.9 million US adults and 900,000 children used homeopathy." Upon information and belief and based upon Hyland's press releases and public statements, the Class includes more than 1 million members. Accordingly, joinder is impracticable.

CLASS ACTION COMPLAINT

83.   There are numerous questions of law and fact common to the Class which predominate over any individual actions or issues, including but not limited to:

(a)   Whether Hyland's violated the Magnuson-Moss Act, 15 U.S.C. § 2301, *et seq.*;

(b)   Whether Hyland's breached an express warranty made to Plaintiff and the Class;

(c)   Whether Hyland's breached the implied warranties of merchantability and/or fitness for a particular purpose made to Plaintiff and the Class;

(d)   Whether Hyland's marketing of Cold and Flu Remedies is false, misleading, and/or deceptive;

(e)   Whether Hyland's marketing of Cold and Flu Remedies is unfair;

(f)   Whether Hyland's Cold and Flu Remedies are efficacious, effective, and useful for the treatment of common cold symptoms;

(g)   Whether Hyland's Cold and Flu Remedies are efficacious, effective, and useful for the treatment of flu symptoms;

(h)   Whether Hyland's Cold and Flu Remedies provide fast acting relief;

(i)   Whether Hyland's was unjustly enriched by its conduct;

(j)   Whether Hyland's violated the CLRA;

(k)   Whether Hyland's violated the UCL;

(l)   Whether Hyland's violated the FAL;

(m)   Whether Hyland's violated the New Jersey Consumer Fraud Act;

(n)   Whether Class members suffered an ascertainable loss as a result of the Hyland's misrepresentations; and

CLASS ACTION COMPLAINT

(o)   Whether, as a result of Hyland's misconduct as alleged herein, Plaintiff and Class members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

84.   Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Hyland's wrongful conduct. Plaintiff has no interests antagonistic to the interests of the other members of the Class. Plaintiff and all members of the Class have sustained economic injury arising out of Hyland's violations of common and statutory law as alleged herein.

85.   Plaintiff is an adequate representative of the Class because his interest does not conflict with the interests of the Class members he seeks to represent, he has retained counsel competent and experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by Plaintiff and his counsel.

86.   The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Hyland's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Hyland's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

CLASS ACTION COMPLAINT

## COUNT I

### (Violation of Magnuson-Moss Act (15 U.S.C. § 2301, *et seq.*))

87.   Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

88.   Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass.

89.   The Cold and Flu Remedies are consumer products as defined in 15 U.S.C. § 2301(1).

90.   Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

91.   Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

92.   In connection with the sale of the Cold and Flu Remedies, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that the products offer children "Fast acting," "Effective," "Multi-symptom" relief from cold and flu symptoms, including runny noses, sore throats, coughs, headaches, body aches, flu and congestion, when in fact, these products are ineffective and do not provide relief for any of these symptoms.

93.   By reason of Defendants' breach of the express written warranties stating that the Cold and Flu Remedies were "Fast acting," "Effective," and provided "Multi-symptom" relief from cold and flu symptoms, Defendants have violated the statutory rights due Plaintiff and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, thereby damaging Plaintiff and Class members.

94.   By reason of Defendants' breach of the express written warranties stating that the Cold and Flu Remedies were "Fast acting," "Effective," and provided "Multi-symptom" relief from cold and flu symptoms, Defendants have violated the

CLASS ACTION COMPLAINT

statutory rights due Plaintiff and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, thereby damaging Plaintiff and Class members.

95.     Prior to filing this action, Mr. Forcellati, by and through his counsel, provided Defendants with written notice of his claims pursuant to 15 U.S.C. § 2310(e) and also notified Defendants that he was acting on behalf of a Class defined as all persons in the United States who purchased Hyland's Cold and Flu Remedies.

## COUNT II

### (Unjust Enrichment)

96.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

97.     Plaintiff brings this Count II individually and on behalf of the members of the Class and the Subclass.

98.     "Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences. In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched. At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state." *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. Apr. 24, 2009), quoting *Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007).

99.     Plaintiff and Class members conferred a benefit on Hyland's by purchasing Cold and Flu Remedies and by paying a price premium for Cold and Flu Remedies.

100.    Defendants have been unjustly enriched in retaining the revenues derived from Class members' purchases of Cold and Flu Remedies, which retention

CLASS ACTION COMPLAINT

under these circumstances is unjust and inequitable because Defendants misrepresented that Cold and Flu Remedies would provide "Fast acting," "Safe & Effective," "Multi-symptom" relief from cold and flu symptoms.

101. Because Defendants' retention of the non-gratuitous benefit conferred on them by Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

## COUNT III

### (For Breach Of Express Warranty)

102. Plaintiff and Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

103. Plaintiff brings this Count III individually and on behalf of the members of the Class and the Subclass.

104. Defendants expressly warranted that the Hyland's Cold and Flu Remedies were effective and would provide fast acting, multi-symptom relief for the symptoms of the common cold and the flu.

105. Defendants breached this warranty because Hyland's Cold and Flu Remedies are neither fast acting nor effective treatments for the cold or flu or any symptoms thereof.

106. Plaintiff and Class Members were injured as a direct and proximate result of Defendants' breach because: (a) they would not have purchased Hyland's Cold and Flu Remedies on the same terms if they had known the true facts; (b) they paid a price premium due to the mislabeling of Hyland's Cold and Flu Remedies; and (c) Hyland's Cold and Flu Remedies did not have the quality, effectiveness or value as promised.

33

CLASS ACTION COMPLAINT

## COUNT IV

### Breach of Implied Warranty

### (On Behalf of Plaintiff and the Class)

107.   Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

108.   Plaintiff brings this Count IV individually and on behalf of the members of the Class and the Subclass.

109.   Defendants, through their acts and omissions set forth herein, in their sale, marketing, and promotion of their Cold and Flu Remedies made implied representations to Plaintiff and the Class that their Cold and Flu Remedies were fast acting and effective for the treatment of cold and flu symptoms and that the Plaintiff and the Class bought the Cold and Flu Remedies manufactured, advertised and sold by Defendants.

110.   Defendants breached their implied warranties because the Cold and Flu Remedies were not fast acting or effective and as a result of Defendants' conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendants to be merchantable or fit for the purpose they were sold.

111.   Plaintiff and the Class have sustained damages as a proximate result of the foregoing breach of implied warranty in an amount to be determined at trial.

## COUNT V

### (Violation of the New Jersey Consumer Fraud Act, N.J.S.A. . § 58:8-1, *et seq.*)

112.   Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

113.   Plaintiff brings this Count V on behalf of the New Jersey Subclass under New Jersey law.

34

CLASS ACTION COMPLAINT

114.   Defendants violated this provision by representing that Hyland's Cold and Flu Remedies were fast acting and effective at providing multi-symptom relief from the symptoms of the common cold and flu, when in fact they were not.

115.   Plaintiff and members of the New Jersey Subclass suffered an ascertainable loss caused by Defendants' misrepresentations because: (a) Plaintiff and the New Jersey Subclass would not have purchased the Hyland's Cold and Flu Remedies on the same terms if they had known the true facts regarding the effectiveness and contents of the products; (b) Plaintiff and the New Jersey Subclass paid a price premium due to the mislabeling of Hyland's Cold and Flu Remedies; and (c) Hyland's Cold and Flu Remedies did not have the quality, effectiveness or value as promised.

## COUNT VI

### (Violation of the Consumers Legal Remedies Act ("CLRA"),

### California Civil Code §§ 1750, *et. seq.*) (Injunctive Relief Only)

116.   Plaintiff and Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

117.   Plaintiff brings this Count VI on behalf of the Class and at all relevant times, Hyland's Cold and Flu Remedies constituted "goods," as that term is defined in Civ. Code § 1761(a).

118.   At all relevant times, Defendants were "persons," as that term is defined in Civ. Code § 1761(c).

119.   At all relevant times, Plaintiff's purchase of Hyland's Cold and Flu Remedies, and the purchases of other Class and Subclass members constituted "transactions," as that term is defined in Civ. Code § 1761(e).

120.   The policies, acts, and practices described in this Complaint were intended to and did result in the sale of Hyland's Cold and Flu Remedies to Plaintiff

CLASS ACTION COMPLAINT

1   and the Class. Defendants' practices, acts, policies, and course of conduct violated

2   the CLRA, Civ. Code §1750 *et seq.*, as described above.

3       121. Defendants represented that Hyland's Cold and Flu Remedies have

4   sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which

5   they do not have in violation of California Civil Code § 1770(a)(5). Defendants

6   violated this provision by representing that Hyland's Cold and Flu Remedies were

7   safe and effective at providing fast acting, multi-symptom relief from the symptoms

8   of the common cold and flu, when in fact they were not.

9       122. Defendants represented that Hyland's Cold and Flu Remedies were of a

10  particular standard or quality, when Defendants were aware that they were of another

11  in violation of § 1770(a)(7) of the CLRA. Defendants maintained that the Cold and

12  Flu Remedies were fast acting and effective when they were not.

13      123. Defendants advertised Hyland's Cold and Flu Remedies with intent not

14  to sell them as advertised in violation of § 1770(a)(9) of the CLRA. Defendants

15  intended to not to sell the Cold and Flu Remedies as fast acting and effective

16  products, because they know those products contain so-called active ingredients in

17  inactive homeopathic concentrations that are not fast acting or effective.

18      124. Plaintiff and Class members suffered injuries caused by Defendants

19  misrepresentations because: (a) Plaintiff and the Class members would not have

20  purchased Hyland's Cold and Flu Remedies on the same terms if they had known the

21  true facts; (b) Plaintiff and the Class paid a price premium due to the mislabeling of

22  Hyland's Cold and Flu Remedies; and (c) Hyland's Cold and Flu Remedies did not

23  have the level of safety, quality, effectiveness or value as promised.

24      125. On February 29, 2012, prior to the filing of this Complaint, a CLRA

25  notice letter was served on Defendants which complies in all respects with California

26  Civil Code § 1782(a). Plaintiff sent Defendants a letter *via* certified mail, return

27  receipt requested, advising Defendants that they are in violation of the CLRA and

28

CLASS ACTION COMPLAINT

must correct, repair, replace or otherwise rectify the goods alleged to be in violation of § 1770. Defendants were further advised that in the event that the relief requested has not been provided within thirty (30) days, Plaintiff will amend this Complaint to include a request for monetary damages pursuant to the CLRA.

126.   Plaintiff seeks only injunctive relief for this violation of the CLRA.

## COUNT VII

### (For Violation of the False Advertising Law ("FAL"),
### California Business & Professions Code § 17500 *et seq.*)

127.   Plaintiff and Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

128.   Plaintiff brings this Count VII on behalf of the Class and the Prescription-Only Products Subclass under California law.

129.   California's FAL, (Bus. & Prof. Code § 17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

130.   Throughout the Class Period, Defendants committed acts of false advertising, as defined by Bus. & Prof. Code § 17500, by using false and misleading statements to promote the sale of Hyland's Cold and Flu Remedies, as described above.

131.   Defendants knew or should have known, through the exercise of reasonable care that the statements were untrue and misleading.

CLASS ACTION COMPLAINT

132.  Defendants' actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

133.  As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff brings this action pursuant to § 17535 for injunctive relief to enjoin the practices described herein and to require Defendants to issue corrective disclosures to consumers.

### COUNT VIII

### (For Violation of the Unfair Competition Law ("UCL"),

### California Bus. & Prof. Code §§ 17200 *et seq.*)

### (Injunctive Relief And Restitution Only)

134.  Plaintiff and Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

135.  Plaintiff brings this Count VIII on behalf of the Class and Defendants are subject to the UCL, Bus. & Prof. Code § 17200 *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising ...."  The UCL also provides for injunctive relief and restitution for violations.

136.  Throughout the Class Period, Defendants committed acts of unfair competition, as defined by § 17200, by using false and misleading statements to promote the sale of Hyland's Cold and Flu Remedies, as described above.

137.  Defendants' conduct is unfair in that the harm to Plaintiff and the Class arising from Defendants' conduct outweighs the utility, if any, of those practices.

138.  Defendants' conduct described herein, violated the "fraudulent" prong of the UCL by representing that Hyland's Cold and Flu Remedies were fast acting and effective at providing multi-symptom relief from the symptoms of the common cold and flu, when in fact they were not.

CLASS ACTION COMPLAINT

139.   Plaintiff and members of the Class have suffered injury and actual out of pocket losses as a result of Defendants' unfair, unlawful, and fraudulent business acts and practices because: (a) Plaintiff and the Class would not have purchased Hyland's Cold and Flu Remedies on the same terms if they had known the true facts regarding the effectiveness and contents of the products; (b) Plaintiff and the Class paid a price premium due to the misrepresentations of Hyland's Cold and Flu Remedies; and (c) Hyland's Cold and Flu Remedies did not have the quality and effectiveness or value as promised.

140.   Pursuant to Bus. & Prof. Code § 17203, Plaintiff, the Class and the Subclasses are therefore entitled to: (a) an Order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.   Determining that this action is a proper class action;

B.   Awarding compensatory damages in favor of Plaintiff and members of the Class and Subclass against Defendants for all damages sustained as a result of the Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.   Awarding injunctive relief against Defendants to prevent Defendants from continuing their ongoing unfair, unconscionable and/or deceptive acts and practices;

D.   Awarding Plaintiff and members the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.   Awarding such other and further relief as the Court may deem just and proper.

CLASS ACTION COMPLAINT

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable in this action.

Dated:  March 8, 2012

Respectfully submitted,

**FARUQI & FARUQI, LLP**


By: _____
Vahn Alexander (167373)

Christopher B. Hayes (277000)
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA  90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
Email: valexander@ faruqilaw.com
          chayes@faruqilaw.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (276006)
L. Timothy Fisher (191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 482-1515
Facsimile: (925) 407-2700
Email: scott@bursor.com
          ltfisher@bursor.com

*Attorneys for Plaintiff*

40

CLASS ACTION COMPLAINT

1    I, Enzo Forcellati, declare as follows:

2        1.    I am a plaintiff in this action and a citizen of the State of New Jersey. I

3    have personal knowledge of the facts herein and if called as a witness, I could and

4    would testify competently thereto.

5        2.    This is a proper place for trial under Civil Code Section 1780(d) in that a

6    substantial portion of the transaction alleged occurred in the Central District of

7    California because the defendants, Hyland's, Inc., Standard Homeopathic

8    Laboratories, Inc., Standard Homeopathic Company (collectively "Defendants"), have

9    their principal places of business in Los Angeles, California, which is located in this

10   District.

11       3.    I read Defendants' advertisements on the outside of Hyland's Cold 'n

12   Cough 4 Kids ("Cold 'n Cough") and read about the product on Hyland's, Inc.'s

13   website.  I purchased Cold 'n Cough over the counter at a CVS store in Bergen

14   County, New Jersey after reading that Cold 'n Cough provides safe & effective fast

15   acting multi-symptom relief for nasal congestion, cough, sore throat, runny nose,

16   sneezing and congestion. I would not have purchased Cold 'n Cough if I had known

17   that it was not an safe an effective treatment for the indicated cold symptoms.

18       I declare under the penalty of perjury under the laws of the State of New

19   Jersey that the foregoing is true and correct, executed on March 7, 2012 in, New

20   Jersey.

21

22

23

24

25                                                    Enzo Forcellati

26

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge George King and the assigned discovery Magistrate Judge is Michael Wilner.

The case number on all documents filed with the Court should read as follows:

## CV12- 1983 GHK (MRWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| ENZO FORCELLATI, on Behalf of Himself and all Others Similarly Situated | HYLAND'S, INC., STANDARD HOMEOPATHIC LABORATORIES, INC., and STANDARD HOMEOPATHIC COMPANY. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Vahn Alexander (167373); FARUQI & FARUQI, LLP 10866 Wilshire Boulevard, Suite 1470, Los Angeles, California 90024 Tel: (424) 256-2884 Fax: (424) 256-2885; e-mail: valexander@faruqilaw.com | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes  ☐ No   ☒ MONEY DEMANDED IN COMPLAINT: $ In excess of $75,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violation of Magnuson-Moss Act, 15 U.S.C. § 2301

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | | **SOCIAL SECURITY** |
| ☒ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number: CV12 1983

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No   ☑ Yes
If yes, list case number(s):   CV12 1150-DMG (MANx)

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☑ A. Arise from the same or closely related transactions, happenings, or events; or
                               ☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☑ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | New Jersey |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County, California |  |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
     Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County, California |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):**  _____  Date  03/08/2012

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

Name & Address: Vahn Alexander (167373)
FARUQI & FARUQI, LLP
10866 Wilshire Boulevard, Suite 1470
Los Angeles, California 90024
Telephone: (424) 256-2884; Fax: (424) 256-2885
valexander@faruqilaw.com

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENZO FORCELLATI, on Behalf of Himself and all Others Similarly Situated,<br><br>PLAINTIFF(S)<br><br>v.<br><br>HYLAND'S, INC., STANDARD HOMEOPATHIC LABORATORIES, INC., and STANDARD HOMEOPATHIC COMPANY,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV 12   1983** –GHK (MRWx)<br><br><br>**SUMMONS** |

TO:   DEFENDANT(S): HYLAND'S, INC., STANDARD HOMEOPATHIC LABORATORIES, INC., and STANDARD HOMEOPATHIC COMPANY

A lawsuit has been filed against you.

Within   21   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Vahn Alexander _____, whose address is 10866 Wilshire Blvd., Suite 1470, Los Angeles, California 90024 _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:   MAR - 8 2012 _____

By: _____ MARILYN DAVIS
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*