E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MEWx) | Date | June 1, 2012 |
|---|---|---|---|

| Title | *Enzo Forcellati v. Hyland's, Inc., et al.* |
|---|---|

| Presiding: The Honorable | GEORGE H. KING, U. S. DISTRICT JUDGE |
|---|---|

| Beatrice Herrera | N/A | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     **(In Chambers) Order re**: Motion to Dismiss Complaint; **[8]**

This matter is before us on Defendants Hyland's, Inc. ("Hyland's"), Standard Homeopathic Laboratories, Inc., and Standard Homeopathic Company's (collectively, "Defendants") Motion to Dismiss Complaint ("Motion"). We have considered the papers filed in support of and in opposition to this Motion and deem this matter appropriate for resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows.

I.     **Background**

On a motion to dismiss, we accept the allegations of the Complaint as true and construe them in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Plaintiff Enzo Forcellati ("Plaintiff"), a New Jersey resident, states that Defendants "represent[] that [their] homeopathic Cold and Flu Remedies offer children 'Fast acting,' 'Safe & Effective,' 'Multi-symptom' relief from cold and flu symptoms, including runny noses, sore throats, coughs, headaches, body aches, flu and congestion." (Class Action Complaint ("CAC") ¶ 2). Plaintiff asserts, however, that Defendants' products are "nothing more than sweetened, flavored water with only highly diluted concentrations of the products' so-called 'active ingredients.'" (*Id.*). On the basis of these allegations, Plaintiff asserts the following claims: (1) Violation of Magnuson-Moss Act, 15 U.S.C. §§ 2301, *et seq.*; (2) Unjust Enrichment; (3) Breach of Express Warranty; (4) Breach of Implied Warranty; (5) Violation of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 58:8-1, *et seq.* ("NJCFA claim"); (6) Violation of the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA claim"); (7) Violation of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL claim"); and (8) Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code 17200, *et seq.* ("UCL claim"). Plaintiff brings the first, second, third, and fourth claims individually and on behalf of a nationwide class and New Jersey sub-class; the fifth claim on behalf of a New Jersey sub-class; and the sixth, seventh, and eighth claims on behalf of a nationwide class.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MEWx) | Date | June 1, 2012 |
|---|---|---|---|
| Title | *Enzo Forcellati v. Hyland's, Inc., et al.* | | |

Defendants move to dismiss the CAC for the following reasons: First, Defendants argue that based on the Ninth Circuit's opinion in *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), Plaintiff "lacks standing to assert claims under California's consumer protection laws, for himself or on behalf of a putative nationwide class." (Mot. 1).  Second, Defendants argue, also pursuant to *Mazza*, that "Plaintiff cannot certify a nationwide class for alleged violations of consumer protection laws." (*Id.* at 2).  Third, Defendants argue that Plaintiff lacks standing to assert claims regarding any products that he did not use.[1]  Fourth, Defendants argue that Plaintiff's warranty claims fail because "Plaintiff has not alleged any statements that create any actionable express or implied warranties." (*Id.* at 1-2). Defendants further argue that Plaintiff's Magnuson-Moss Act claim fails because their over-the-counter medications are not "consumer products" within the meaning of Magnuson-Moss.  Fifth, Defendants argue that Plaintiff's purported unjust enrichment claim fails because unjust enrichment is a remedy, rather than a claim.[2]  Sixth, Defendants argue that Plaintiff's NJCFA claim is deficient because he does not allege that Defendants engaged in any unlawful conduct or that Plaintiff suffered an ascertainable loss.

## II.    Legal Standard for Motion to Dismiss

In order to survive dismissal for failure to state a claim, a complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  It must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).  Additionally, Plaintiff's fraud-based claims are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement.  *See Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003).  Rule 9(b) requires Plaintiff to "state with particularity the circumstances constituting fraud or mistake."  This means that Plaintiff must allege the "who, what, when, where and how" supporting his fraud-based allegations made in the Complaint.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  Although we must accept the allegations of the Complaint as true and construe them in the light most favorable to Plaintiff in resolving this Motion, we need not accept as true legal conclusions "cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

---

[1] Plaintiff purchased only Hyland's Cold 'n Cough, yet he asserts claims on behalf of individuals who purchased other products that are part of Hyland's line of Cold and Flu Remedies.

[2] In their Reply, Defendants additionally argue that Plaintiff is precluded from asserting an unjust enrichment claim because he asserts contract-based claims (warranty claims).  As this argument was asserted for the first time in Defendants' Reply, we decline to consider it.  *See Ass'n* o*f Irritated Residents v. C & R Vanderham Dairy*, 435 F.Supp. 2d 1078, 1089 (E.D. Cal. 2006) ("It is inappropriate to consider arguments raised for the first time in a reply brief."); *Cedano–Viera v. Ashcroft*, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003) ("[W]e decline to consider new issues raised for the first time in a reply brief.").

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MEWx) | | Date | June 1, 2012 |
| --- | --- | --- | --- | --- |
| Title | *Enzo Forcellati v. Hyland's, Inc., et al.* | | | |

**III.    Discussion**

   *A.    Plaintiff's Nationwide Class Claims*

       Defendants argue that under the Ninth Circuit's decision in *Mazza*, 666 F.3d 581, "the variances in state laws overwhelm any common issues and, as a result, neither the predominance of common issues nor the superiority requirements for class certification under F.R.C.P. 23(b)(3) can be met." (Mot. 22).  We find Defendants' argument to be unripe at this stage of litigation.  *Mazza* did not purport to hold that nationwide classes are, as a matter of law, uncertifiable under California's consumer protection laws, which is unsurprising given the case-specific nature of choice-of-law analysis.  Indeed, the court made clear that its holding was cabined to the facts before it, holding: "Under the facts and circumstances of this case, we hold that each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place."  *Id.* at 594.  Importantly, *Mazza* (and nearly every other case cited by Defendants) undertook a class-wide choice-of-law analysis at the class certification stage, rather than the pleading stage at which we find ourselves.  Until the Parties have explored the facts in this case, it would be premature to speculate about whether the differences in various states' consumer protection laws are material in this case.  *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir. 2010) (noting that California's choice-of-law rules require courts to find that there is a "material difference" between the laws of different states on the basis of the facts presented in each case).

       Additionally, once the relevant facts of the case have been explored during discovery, it is possible that Plaintiff could narrow or define the class in such a way at the class certification stage to make any differences between applicable laws immaterial.  Moreover, should choice-of-law analysis appear to pose problems at the class certification stage, Plaintiff could seek to certify subclasses of putative class members from individual states or subclasses of class members from groups of states with consumer protection laws that are not materially different.

       Courts rarely undertake choice-of-law analysis to strike class claims at this early stage in litigation.  *See In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litigation*, 758 F. Supp. 2d 1077, 1096 (S.D. Cal. 2010) ("In a putative class action, the Court will not conduct a detailed choice-of-law analysis during the pleading stage.").  We likewise decline to do so.[3]  Accordingly, Defendants' Motion is **DENIED** inasmuch as it seeks to strike the nationwide class claims.

---

       [3] We do not, however, purport to conclude that there are no material differences between the laws of different states or that a nationwide class is certifiable.  Instead, we merely defer this decision until the class certification stage.  We caution Plaintiff that depending on the facts of this case, given *Mazza*, he may need to seriously consider whether he can maintain a nationwide class on all of his claims throughout this litigation.  Given *Mazza*, we also caution the Parties to take their meet-and-confer obligations particularly seriously before filing any future motion addressing this issue.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MEWx) | | Date | June 1, 2012 |
|---|---|---|---|---|
| Title | *Enzo Forcellati v. Hyland's, Inc., et al.* | | | |

### B.      *Plaintiff's Standing to Assert Claims Under California Law*

Defendants argue that, as a resident of New Jersey, Plaintiff lacks standing to bring consumer protection claims under California law.  Defendants contend that "the Ninth Circuit recently recognized in *Mazza*" that "a plaintiff or class member's consumer protection claims must be brought under the laws of the state where the consumer received alleged misrepresentations or omissions which resulted in the consumer transaction at issue."  (Mot. 5).  Defendants appear to misunderstand the concept of standing.  As noted by the court in *Mazza*, "standing requires that (1) the plaintiff suffered an injury in fact . . . (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision."  666 F.3d at 594-95 (quoting *Bates v. United Parcel Svc., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)).  Defendants do not argue that any of the Article III standing requirements are not met.  Instead, Defendants' argument appears to be that choice-of-law analysis precludes Plaintiff from pursuing his claims under California law.   To this extent, Defendants appear to conflate two issues: the extraterritorial application of California consumer protection laws (or the ability of a nonresident plaintiff to assert a claim under California law), and choice-of-law analysis (or a determination that, based on policy reasons, non-forum law should apply).

Whether a nonresident plaintiff can assert a claim under California law is a constitutional question based on whether California has sufficiently significant contacts with the plaintiff's claims. *See id.* at 589-90 (noting that "[s]uch a showing is necessary to ensure that application of California law is constitutional").  Plaintiff alleges that Defendants are headquartered in Los Angeles, California. Therefore, application of California law poses no constitutional concerns.  *See Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) ("Defendants are headquartered in California and their misconduct allegedly originated in California.  With such significant contacts between California and the claims asserted by the class, application of the California consumer protection laws would not be arbitrary or unfair to defendants.").  Accordingly, Plaintiff certainly *can* assert a claim under California law, and it is *Defendant's* burden to defeat the presumption that California law applies and to "show[] a compelling reason justifying displacement of California law." *Rasidescu v. Midland Credit Mgmt., Inc.*, 496 F. Supp. 2d 1155, 1159 (S.D. Cal. 2007).

In arguing that choice-of-law analysis requires "Plaintiff [to] seek relief under his home state's consumer protection laws," Defendants do not even discuss the differences between the consumer protection laws of New Jersey and California, let alone address whether these differences are material based on the facts and circumstances of *this* case.  Instead, Defendants rather generically argue that numerous courts, including the Ninth Circuit in *Mazza*, have applied the governmental interests test in consumer protection actions and concluded that California law could not apply to a nonresident's claims.  In doing so, Defendants characterize *Mazza* as creating a general rule that "where an out-of-state plaintiff claims to have been deceived or harmed as a result of misrepresentations or omissions received outside of California, that plaintiff s consumer protection claims must be brought under that plaintiff's own state laws."  (Mot. 8).  But, as mentioned above, the court in *Mazza* did no such thing.  Instead, it made clear its holding was cabined to "the facts and circumstances of th[at] case."  666 F.3d at 594.  Because Plaintiff is not constitutionally precluded from availing himself of

---

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MEWx) | Date | June 1, 2012 |
|---|---|---|---|

| Title | *Enzo Forcellati v. Hyland's, Inc., et al.* |
|---|---|

California's consumer protection laws, and choice-of-law analyses is a case- and fact-specific inquiry, Defendants cannot meet their burden merely by citing cases in which other defendants have met this burden in factually different circumstances. Defendants can only meet this burden by engaging in an analytically rigorous discussion of each prong of California's "governmental interests" test based on the facts and circumstances of *this* case, and *this* Plaintiff's allegations.

Additionally, Defendants cite numerous cases holding that differences between California consumer protection laws and the consumer protection laws of other states preclude class certification. *See, e.g.*, *Mazza*, 666 F.3d 581; *In re Hitachi Television Optical Block Cases*, No. 08cv1746 DMS (NLS), 2011 WL 9403 (S.D. Cal. Jan. 3, 2011); *Gianino v. Alacer Corp.*, No. SACV 09–01247–CJC(RNBx), 2012 WL 724322 (C.D. Cal. Feb. 27, 2012); *Kowalsky v. Hewlett-Packard Co.*, No. 5:10–cv–02176–LHK, 2012 WL 892427 (N.D. Cal. Mar. 14, 2012). These cases are unhelpful in determining whether Plaintiff as an individual may assert claims against Defendants under California law. *See Speyer v. Avis Rent a Car System, Inc.*, 415 F. Supp. 2d 1090, 1094 (S.D. Cal. 2005) (noting that "courts generally consider only claims of named plaintiffs in ruling on [a] motion to dismiss . . . prior to class certification"). These cases are also unhelpful in determining whether the differences between California consumer protection law and New Jersey consumer protection law, as opposed to other states' consumer protection laws, are material based on the facts of this case.

Defendants' briefing on the issues pertinent to this case – that is, whether Plaintiff's *individual* claims asserted under California law should be dismissed – is therefore inadequate for us to conclude that California law should be displaced on the facts of this case. Merely citing other courts' choice-of-law analyses, based on the facts before those courts, fails to discharge Defendants' burden of showing a "compelling reason" justifying the displacement of California law on Plaintiff's claims. Accordingly, Defendants' Motion is **DENIED** insofar as it seeks dismissal of Plaintiff's claims under California law.

### C.    *Plaintiff's Standing to Assert Claims with Respect to Products He Did Not Use*

Defendants argue that Plaintiff cannot assert claims as to the entire *category* of Defendants' "Cold and Flu Remedies" and instead may only assert these claims with respect to the one product within that category that Plaintiff alleges to have purchased – Defendants' Cold 'n Cough product. We disagree. Although the district courts within this circuit have not been entirely consistent on this issue, we agree with the numerous recent decisions that have concluded that Defendants' argument is better taken under the lens of typicality or adequacy of representation, rather than standing. *See Donohue v. Apple*, No. 11–cv–05337 RMW, 2012 WL 1657119, at *6 (N.D. Cal. May 10, 2012); *Cardenas v. NBTY, Inc.*, No. CIV. S–11–1615 LKK/CKD, 2012 WL 1593196, at *7 (E.D. Cal. May 4, 2012) ("[T]he court determines that Plaintiff has standing to assert her UCL and CLRA claims based on her purchase of Osteo Bi–Flex Regular Strength and the product's more general representations that its line of Osteo Bi–Flex products, which ostensibly share many similarities in ingredients, 'improve mobility,' 'improve joint comfort,' and 'support[ ] renewal of cartilage.' The court will analyze solely under Rule 23 whether Plaintiff may be allowed to present claims on behalf of purchasers of the remaining Osteo

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MEWx) | Date | June 1, 2012 |
|---|---|---|---|

| Title | *Enzo Forcellati v. Hyland's, Inc., et al.* | | |

Bi–Flex products."); *Bruno v. Quten Research Inst., LLC*, No. SACV 11–00173 DOC(Ex), 2011 WL
5592880, at *3 (C.D. Cal. Nov. 14, 2011) ("District courts in California routinely hold that the issue of
whether a class representative 'may be allowed to present claims on behalf of others who have similar,
but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of
representation.' Treatises and other circuits reach the same conclusion." (citations omitted)).
Accordingly, Defendants' Motion is **DENIED** insofar as it seeks dismissal of Plaintiff's claims for
Defendants' Cold and Flu products that he did not use.

> ### D.       *Plaintiff's Warranty Claims*
>
> #### 1.         **Breach of Express Warranty**

Plaintiff alleges that "Defendants expressly warranted that Hyland's Cold and Flu remedies were
effective and would provide fast acting, multi-symptom relief for the symptoms of the common cold and
flu." (CAC ¶ 104). These purported express warranties were communicated on the packaging of
Defendants' products. (*Id.* ¶¶ 45-50). Plaintiff alleges that "Defendants breached this warranty because
Hyland's Cold and Flu Remedies are neither fast acting nor effective treatments for the cold or flu or
any symptoms thereof." (*Id.* ¶ 105).

"[T]o prevail on a breach of express warranty claim, the plaintiff must prove (1) the seller's
statements constitute an 'affirmation of fact or promise' or a 'description of the goods'; (2) the statement
was 'part of the basis of the bargain'; and (3) the warranty was breached." *Weinstat v. Dentsply Int'l,
Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) (quoting *Keith v. Buchanan*, 173 Cal. App. 3d 13, 20 (1985)).
Defendants' argument as to why Plaintiff's breach of express warranty fails is not entirely clear. First,
Defendants assert that Plaintiff has failed to identify any false "affirmation of fact or promise."
Defendants' argument appears to be that its packaging statements can only be false if they are construed
to guarantee that the products "will work without fail for everyone, every time," which is a guarantee
that they do not make. (Mot. 10; *see also* Reply 12 ("As the Product does not provide any express or
implied warranty that it will work 100% of the time for everyone, Plaintiff's warranty claims fail.")).
Defendants appear to misunderstand Plaintiff's claim. In asserting his breach of express warranty claim,
Plaintiff does not complain that Defendants' Cold and Flu Remedies guarantee a 100% success rate but
were unsuccessful when he used them. Instead, Plaintiff complains that Defendants' packaging
statements are in fact *false* – that the products *cannot* and *do not* provide fast acting relief, and that they
are *never* and *cannot be* effective in treating cold and flu symptoms. As noted by Judge Dolly Gee in
rejecting Defendants' argument in a similar action involving other homeopathic products, "Plaintiff[]
allege[s] that Defendants' products will not work at any time for anyone because they either lack
ingredients that will produce the advertised relief or contain the ingredients in insufficient quantities to
be effective. If this is true – as the Court must assume on a motion to dismiss – then Defendants'
statements about relief and effectiveness are not." *Allen v. Hylands*, No. CV 12-01150 DMG (MANx),
2012 WL 1656750, at *4 (C.D. Cal. May 2, 2012). We likewise reject Defendants' argument, as it
appears to be based on a misunderstanding of Plaintiff's allegations, and conclude that Plaintiff pleads
sufficient affirmations of fact or promise to support an express warranty claim under California law.

E-Filed
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MEWx) | Date | June 1, 2012 |
|---|---|---|---|

| Title | *Enzo Forcellati v. Hyland's, Inc., et al.* |
|---|---|

Defendants' second argument is even less clear and is based on compliance with regulatory requirements. Defendants appear to argue that their packaging statements are mere "indication for use statement[s] required under federal law in order for consumers to understand the conditions for which the drug is intended," rather than express promises or guarantees. (Mot. 11). Although we do not purport to pass judgment on whether regulatory compliance would immunize Defendants from liability – an argument Defendants do not actually make – we dispute their characterization of the alleged packaging statements as "indication for use statements." One can indicate "the general pharmacological category(ies) or the principal intended action(s) of [a] drug" as Defendants argue is required by regulations, (*id.*), without stating that the product is "safe and effective," (CAC ¶ 16), "relieves fevers and chills," (*id.* ¶ 48), or "fast acting," (*id.* ¶ 2). Indeed, one could merely state that its product is "intended for treatment of cold and flu symptoms." We also reject Defendants' opaque attempt to vaguely reference regulatory compliance without explicitly making any argument on the basis of these federal regulations.

In light of the foregoing, Defendants' Motion is **DENIED** inasmuch as it seeks dismissal of Plaintiff's express warranty claim.

### 2.      Breach of Implied Warranty

To succeed on an implied warranty claim, a plaintiff must demonstrate that the products are not "fit for the ordinary purposes for which such goods are used" or fail to "[c]onform to the promises or affirmations of fact made on the container or label." Cal. Civ. Code § 1791.1(a)(2), (4). Plaintiff alleges that Defendants' products are not "merchantable or fit for the purpose they were sold" – the fast and effective treatment of cold and flu remedies. (*Id.* ¶ 110). Defendants argue that Plaintiff's implied warranty claim "fails for the same reasons his express warranty claim fails" – the "claim is premised simply on the assertion that the Product did not work for him." (Mot. 14). Defendants also argue that their products are intended for use as homeopathic drugs, and "there are no allegations that the Product is not fit for its intended use . . . as a homeopathic drug." (*Id.*).

Defendants again appear to misunderstand Plaintiff's claims. Plaintiff alleges that Defendants' products are not effective *at all*. The fact that Defendants' products contain the word "homeopathic" on the packaging, along with statements that the products provide safe, effective, and fast-acting relief for cold and flu symptoms, does not immunize Defendants from liability if their products are entirely ineffective in treating cold and flu symptoms, as Plaintiff alleges. Accordingly, Defendants' Motion is **DENIED** inasmuch as it seeks dismissal of Plaintiff's implied warranty claim.

### 3.      Magnuson-Moss Act Claim

Defendants' argue that Plaintiff's Magnuson-Moss Act claim fails because the Act only applies to "consumer products," and their over-the-counter homeopathic medications are not "consumer products" as defined by the Act. Defendants acknowledge that Magnuson-Moss does not specifically enumerate what products fall within the definition of "consumer products." However, they note that the

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MEWx) | Date | June 1, 2012 |
|---|---|---|---|

| Title | *Enzo Forcellati v. Hyland's, Inc., et al.* |
|---|---|

Consumer Product Safety Act expressly states that "drugs, devices, or cosmetics" as defined in the Food, Drug, and Cosmetics Act, 21 U.S.C. § 301 et seq. ("FDCA") are not "consumer product[s]." Thus, they contend, citing the California Court of Appeal's decision in *Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 798 (2002), that a drug regulated by the FDCA (which Defendants' products are) is not a "consumer product" under Magnuson-Moss.[4]

The Magnuson-Moss Act defines "consumer product" as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed)." 15 U.S.C. § 2301(1). While the Act does not enumerate any particular "consumer products," numerous courts have discussed FTC regulations articulating such examples as "boats, photographic film and chemicals, clothing, appliances, jewelry, furniture, typewriters, motor homes, automobiles, mobile homes, vehicle parts and accessories, stereos, carpeting, small aircraft, toys, and food." *Kemp v. Pfizer, Inc.*, 835 F. Supp. 1015, 1024 (E.D. Mich. 1993) (quoting Magnuson-Moss Warranty Act: Implementation and Enforcement Policy, 40 Fed. Reg. 25,721, 25,722 (1975)); *accord Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1062 n.6 (5th Cir. 1984); *Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 998 (D. Minn. 2006). Although over-the-counter cold and flu medications are not enumerated in FTC regulation examples, they certainly appear to fit within the broad definition contained in the Magnuson-Moss Act – tangible goods that are "normally used for personal, family, or household purposes."

In *Kanter*, the case cited by Defendants, the plaintiffs sued the manufacturers of an over-the-counter head lice treatment and alleged "that the product labels contain false and misleading statements about the effectiveness of the drugs." 99 Cal. App. 4th at 784. The plaintiffs asserted, *inter alia*, a claim for breach of warranty under the Magnuson-Moss Act. The California Court of Appeal cobbled together three statutes to conclude that the defendants' products were not "consumer products" within the meaning of the Magnuson-Moss Act:

> Magnuson–Moss applies only to "consumer product[s]," defined as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes . . . ." The act does not otherwise enumerate products within the scope of the definition. The federal Consumer Product Safety Act, however, expressly states that "drugs, devices, or cosmetics" as defined in the FDCA are not "consumer product[s]." Reading these statutes together, at least two courts have concluded that a medical device regulated by the [FDCA] is not a consumer product within the meaning of Magnuson–Moss. [*Goldsmith v. mentor Corp.*, 913 F. Supp. 56, 63 (D.N.H. 1995); *Kemp v. Pfizer, Inc.*, E.D. Mich. 1993).] By parity of reasoning, a drug regulated by the FDCA is also not a consumer product within the meaning of Magnuson–Moss.

---

[4] Defendants also argue that because Plaintiff's express and implied warranty claims fail under state law, they also fail under Magnuson-Moss. Because we have determined that Plaintiff's state law warranty claims are valid, we likewise reject this argument as to Plaintiff's Magnuson-Moss Act claim.

E-Filed
### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 12-1983-GHK (MEWx) | Date | June 1, 2012 |
|---|---|---|---|
| Title | *Enzo Forcellati v. Hyland's, Inc., et al.* | | |

*Id.* (some citations omitted).  We respectfully disagree with the California Court of Appeal that parity of reasoning requires the two statutes, with different definitions, to be interpreted similarly.  First, the cases upon which the court relied discussed products that could not reasonably be considered goods that are "normally used for personal, family, or household purposes."  15 U.S.C. § 2301(1).  In *Goldsmith*, the court discussed whether a *testicular prosthesis* was a "consumer product" under the Magnuson-Moss Act.  913 F. Supp. at 57.  *Goldsmith* relied on *Kemp*, which contemplated whether a *prosthetic heart valve* was a "consumer product" covered by Magnuson-Moss.  835 F. Supp. at 1024.  Notably, the court in *Goldsmith* concluded that such a product was not a "consumer product" covered by the Magnuson-Moss Act because it was "not the type of product normally used for consumer purposes by the general public.  Goods that are not customarily available to the ordinary person are not consumer products."  *Id.* While these courts discussed the FDCA's definition of consumer product, it is difficult to imagine how they possibly could have concluded that medical prostheses could have been covered by the Magnuson-Moss Act irrespective of their express exclusion from the FDCA's definition.  As the court noted in *Kemp*, such products are certainly not "normally used" within a household.

Second, we do not consider the FDCA's definition of "consumer product" to be conclusive, or even compelling for determining whether a good is a "consumer product" under Magnuson-Moss.  The FDCA defines "consumer product," in pertinent part, as follows:

> The term "consumer product" means any article, or component part thereof, produced or distributed (i) for sale to a consumer for use in or around a permanent or temporary household or residence, a school, in recreation, or otherwise, or (ii) for the personal use, consumption or enjoyment of a consumer in or around a permanent or temporary household or residence, a school, in recreation, or otherwise; but such term does not include–

> (A) any article which is not customarily produced or distributed for sale to, or use or consumption by, or enjoyment of, a consumer,

> (C) motor vehicles or motor vehicle equipment (as defined by section 30102(a)(6) and (7) of Title 49),

> (G) boats which could be subjected to safety regulation under chapter 43 of Title 46; vessels, and appurtenances to vessels (other than such boats), which could be subjected to safety regulation under title 52 of the Revised Statutes or other marine safety statutes administered by the department in which the Coast Guard is operating; and equipment (including associated equipment, as defined in section 2101(1) of Title 46) to the extent that a risk of injury associated with the use of such equipment on boats or vessels could be eliminated or reduced by actions taken under any statute referred to in this subparagraph,

> (H) drugs, devices, or cosmetics (as such terms are defined in sections 201(g), (h), and (i) of the Federal Food, Drug, and Cosmetic Act [21 U.S.C.A. § 321(g), (h), and (i)]), or

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MEWx) | Date | June 1, 2012 |
|---|---|---|---|

| Title | *Enzo Forcellati v. Hyland's, Inc., et al.* | | |

(I) food. The term "food", as used in this subparagraph means all "food", as defined in section 201(f) of the Federal Food, Drug, and Cosmetic Act [21 U.S.C.A. § 321(f)], including poultry and poultry products (as defined in sections 4(e) and (f) of the Poultry Products Inspection Act [21 U.S.C.A. § 453(e) and (f)]), meat, meat food products (as defined in section 1(j) of the Federal Meat Inspection Act [21 U.S.C.A. § 601(j)]), and eggs and egg products (as defined in section 4 of the Egg Products Inspection Act [21 U.S.C.A. § 1033]).

15 U.S.C. § 2052(a)(5). Accordingly, "consumer product" is defined much differently in the FDCA than the Magnuson-Moss Act, and it expressly *excludes* products that clearly fall within Magnuson-Moss. For example, the FDCA excludes food, boats, and motor vehicles – products that are expressly *included* as consumer products in the FTC's regulations interpreting Magnuson-Moss. Therefore, a product's express exclusion from the definition of "consumer product" in the FDCA does not compel a similar interpretation of the Magnuson-Moss Act where the product is otherwise a good "normally used for personal, family, or household purposes."

Third, there may be very good reasons for "consumer product" to be defined differently in Consumer Product Safety Act (as part of the FDCA) and the Magnuson-Moss Act. The Consumer Product Safety Act is primarily concerned with the safety of various products, and thus it may make sense to exclude products whose safety is regulated by agencies other than the Consumer Product Safety Commission – products like vehicles, food, and drugs. This helps to prevent conflicting or inconsistent regulatory requirements. In contrast, Magnuson-Moss is less focused on safety and more focused on ensuring that products do not have misleading claims as to the efficacy of those products. Thus, it may not be a significant concern if goods considered "consumer products" under Magnuson-Moss are regulated by other agencies with regard to those products' safety. This is perhaps evidenced by the FTC's interpretation of Magnuson-Moss as including vehicles and food, even though the safety of those products are regulated by other acts. Accordingly, Defendants have provided no compelling reason for why we should interpret these two different definitions to be co-terminous, and there appear to be very good reasons not to (not the least of which is the fact that FTC regulations expressly include products that are excluded from the definition in the FDCA).

Defendants have not engaged in a sufficiently comprehensive analysis of these two statutes, their interpretive regulations, and the regulatory structure of the agencies governing over-the-counter medications for us to conclude that over-the-counter homeopathic medications are not "consumer products" under Magnuson-Moss. Accordingly, they have not borne their burden at this stage of litigation of demonstrating that Plaintiff's Magnuson-Moss Act claim should be dismissed as a matter of law. We hereby **DENY** Defendants' motion inasmuch as it seeks dismissal of Plaintiff's Magnuson-Moss Act claim.

### E.     *Plaintiff's Unjust Enrichment Claim*

---

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MEWx) | Date | June 1, 2012 |
|---|---|---|---|

| Title | *Enzo Forcellati v. Hyland's, Inc., et al.* |
|---|---|

Defendants argue that Plaintiff's unjust enrichment claim fails because unjust enrichment is a remedy, rather than a freestanding claim. Although state and federal courts are somewhat inconsistent in their characterization of unjust enrichment under California law, we agree with Defendants that the majority of state and federal district courts in California do not recognize unjust enrichment as a freestanding claim. *See, e.g.*, *Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1138 (2010) ("Although some California courts have suggested the existence of a separate cause of action for unjust enrichment, this court has recently held that "'[t]here is no cause of action in California for unjust enrichment.' Unjust enrichment is synonymous with restitution. Thus, the Levines' unjust enrichment claim does not properly state a cause of action." (citations omitted)); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) ("[T]here is no cause of action in California for unjust enrichment." (alteration in original)); *Williamson v. Reinalt-Thomas Corp.*, No. 5:11–CV–03548–LHK, 2012 WL 1438812 (N.D. Cal. Apr. 25, 2012) (collecting cases from California state and federal district courts). Unpublished Ninth Circuit cases have held the same. *See, e.g.*, *Smith v. Ford Motor Co.*, No. 10–17321, 2011 WL 6322200, at *4 (9th Cir. Dec. 19, 2011) ("Plaintiffs also appeal the district court's ruling that unjust enrichment is not an independent cause of action in California. This argument has no merit.") (collecting California authorities); *Myers-Armstrong v. Actavis Totowa, LLC*, 382 F. App'x 545, 548 (9th Cir. 2010); *Bosinger v. Belden CDT, Inc.*, 358 F. App'x 812, 815 (9th Cir. 2009) ("In California there is no cause of action for unjust enrichment; it is a 'general principle, underlying various legal doctrines and remedies . . . .'" (quoting *Melchior v. New Line Prods., Inc.*, 106 Cal.App.4th 779, 793 (2003)). Accordingly, we hereby **DISMISS** Plaintiff's purported unjust enrichment claim with prejudice.

### F.      *Plaintiff's NJCFA Claim*

To prevail on his NSCFA claim, Plaintiff must establish "1) unlawful conduct by defendant[s]; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009); *see also* N.J.S. 56:8-19 ("Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction."). Unlawful conduct may include an affirmative act, a knowing omission, or a regulatory violation. *See Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994). Defendants first argue that "Plaintiff has failed to allege any unlawful conduct by Defendants" because he merely complains that the product did not work *for him*, and "no drug, OTC or prescription, can be expected to be effective 100% of the time for everyone." (Mot. 17). As discussed at length above, this argument betrays a misunderstanding of Plaintiff's allegations. Plaintiff does not merely complain that the products did not work for him; he claims that they are entirely ineffective for all consumers because they contain insufficient active ingredients to deliver on Defendants' promises of "fast acting" and "effective" relief. Plaintiff adequately pleads that Defendants made fraudulent representations on the packaging materials of their Cold and Flu Remedies products. This fulfills the "unlawful conduct" requirement for pleading a NJCFA claim. *See Mendez v. Avis Budget Grp., Inc.*, No. 11–6537(JLL),

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MEWx) | Date | June 1, 2012 |
|---|---|---|---|

| Title | *Enzo Forcellati v. Hyland's, Inc., et al.* |
|---|---|

2012 WL 1224708, at *13 (D.N.J. Apr. 10, 2012) ("An affirmative act includes unconscionable commercial practices, deception, fraud and misrepresentation.").

Second, Defendants argue that Plaintiff has "failed to adequately plead an ascertainable loss." (Mot. 17). Defendants assert that "Plaintiff merely alleges that he purchased the Product and, without any explanation or details, he makes the conclusory assertion that he 'paid a price premium due to the mislabeling' of the Product." (*Id.*). Defendants argue that this conclusory assertion is insufficient under the heightened pleading standards that apply to this fraud-based claim.

The ascertainable loss element of an NJCFA claim requires that the Plaintiff plead "a loss that is 'quantifiable or measurable[,' not] 'hypothetical or illusory.'" *Lee v. Carter-Reed Co., LLC*, 203 N.J. 496, 522 (2010) (quoting *Thiedemann v. Mercedes–Benz USA, LLC*, 183 N.J. 234, 248 (2005)). The ascertainable loss can be based on one of at least three recognized theories, recently summarized by the District of New Jersey:

> The "out-of-pocket" theory may include the purchase price of a misrepresented product if the purchasers did not receive a refund and the seller's misrepresentations rendered the product essentially worthless. A "loss-in-value" theory is based on the quantifiable difference in value between the merchandise as advertized and the merchandise as delivered. Under the third theory, an "ascertainable loss" can include a nominal overcharge for which the plaintiffs have not made a "pre-suit demand for a refund."

*Hammer v. Vital Pharmaceuticals, Inc.*, No. 11–4124, 2012 WL 1018842, at *8 (D.N.J. Mar. 26, 2012).

Plaintiff clarifies in his Opposition that he relies on the "out-of-pocket" theory, as he claims that Defendants' products are nothing more than "flavored water or sugar tablets." (Opp'n 22-23). Because he is relying on the "out-of-pocket" theory, rather than the "loss-in-value" theory, Plaintiff argues that pleading the loss in purchase price is sufficient to state a claim.

Plaintiff pleads the ascertainable loss element as follows:

> Plaintiff and members of the New Jersey Subclass suffered an ascertainable loss caused by Defendants' misrepresentations because: (a) Plaintiff and the New Jersey Subclass would not have purchased the Hyland's Cold and Flu Remedies on the same terms if they had known the true facts regarding the effectiveness and contents of the products; (b) Plaintiff and the New Jersey Subclass paid a price premium due to the mislabeling of Hyland's Cold and Flu Remedies; and (c) Hyland's Cold and Flu Remedies did not have the quality, effectiveness or value as promised.

(CAC ¶ 115). If we were construing this paragraph in a vacuum, we would agree with Defendants that Plaintiff appears to rely on the "loss-in-value" theory and thus insufficiently pleads an ascertainable loss under Rule 9(b)'s fraud pleading requirement. However, we construe the CAC's allegations in the light

---

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MEWx) | Date | June 1, 2012 |
| --- | --- | --- | --- |

| Title | *Enzo Forcellati v. Hyland's, Inc., et al.* |
| --- | --- |

most favorable to the Plaintiff.  *See Lockyer*, 568 F.3d at 1067.  Taken as a whole, Plaintiff's CAC alleges that Defendants' homeopathic products are nothing more than "expensive sweetened, flavored water or sugar tablets," (*id.* ¶ 68), which are "ineffective and do not provide relief for any of the[] symptoms" for which they are advertised, (*id.* ¶ 92).  Indeed, Plaintiff alleges that Defendants' products are  "no more effective than placebos."  (*Id.* ¶ 66).  Plaintiff also clearly states that he and the putative class members "seek a refund and/or rescission of the transaction."  (*Id.* ¶ 3).  Plaintiff's NJFCA claim explicitly incorporates all of these paragraphs.  (*Id.* ¶ 112).  Therefore, although the specific assertions made under the heading of the NJFCA claim could be clearer on the ascertainable loss theory upon which Plaintiff relies, the CAC taken as a whole and in the light most favorable to the Plaintiff sufficiently pleads an ascertainable loss under the out-of-pocket theory.  *See Hammer*, 2012 WL 1018842, at * 9 (holding that the plaintiff adequately pled ascertainable loss where he alleged that he "suffered an ascertainable loss of monies, including, but not necessarily limited to the purchase price of the" product he purchased and "contend[ed] that he 'would not have purchased' the product but for Defendant's misrepresentations"); *Nelson v. Xacta 3000 Inc.*, 2010 WL 1931251, at *7 (D.N.J. May 12, 2010) (holding that the plaintiffs sufficiently pled ascertainable loss where they "claim[ed] that the Kinoki Pads 'do not work when consumers apply them while they sleep (or during any other time of the day or night for that matter)'").

In light of the foregoing, we hereby **DENY** Defendants' Motion insofar as it seeks dismissal of Plaintiff's NJCFA claim.

**IV.    Conclusion**

Defendants' Motion is **GRANTED** in part and **DENIED** in part.  Plaintiff's unjust enrichment claim is hereby **DISMISSED with prejudice**.  In all other respects, Defendants' Motion is hereby **DENIED**.  Defendants **SHALL** answer Plaintiff's CAC **within fourteen (14) days hereof**.  Fed. R. Civ. P. 12(a)(4)(A).

    **IT IS SO ORDERED.**

                                                                            -    :            -

                                                Initials of Deputy Clerk                          Bea