1   JEFFREY MARGULIES, BAR NO. 126002
    jeff.margulies@nortonrosefulbright.com
2   STEPHANIE STROUP, BAR NO. 235071
    stephanie.stroup@nortonrosefulbright.com
3   MATTHEW M. GURVITZ, BAR NO. 272895
    matthew.gurvitz@nortonrosefulbright.com
4   **FULBRIGHT & JAWORSKI LLP**
    555 South Flower Street
5   Forty-First Floor
    Los Angeles, California  90071
6   Telephone:  (213) 892-9200
    Facsimile:   (213) 892-9494
7
    Attorneys for Defendants
8   STANDARD HOMEOPATHIC COMPANY,
    HYLAND'S, INC. and STANDARD
9   HOMEOPATHIC LABORATORIES, INC.

10

11         IN THE UNITED STATES DISTRICT COURT

        FOR THE CENTRAL DISTRICT OF CALIFORNIA
12
                WESTERN DIVISION
13

14

| | |
|---|---|
| ENZO FORCELLATI and LISA ROEMMICH, on behalf of themselves and all others similarly situated, | Case No. 12-CV-1983-GHK (MEWx) **CLASS ACTION** |
| Plaintiff, | **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION** |
| v. | **REDACTED** |
| HYLAND'S, INC.; STANDARD HOMEOPATHIC LABORATORIES, INC.; and STANDARD HOMEOPATHIC COMPANY, | Hearing: Date: November 25, 2013 Time: 9:30 a.m. Ctrm: 650 Judge: Hon. George H. King |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................. 1

II. PLAINTIFFS HAVE NOT SATISFIED THE RULE 23(A) FACTORS ........................................................................................ 3

    A. There Are No Questions Common To The Class ................................ 4

        1. Efficacy Of Any One of the Products Cannot Be Challenged on a Classwide Basis ................................ 4

        2. Whether Defendants' Representations Are Misleading to Consumers Cannot Be Established on a Classwide Basis .......... 8

        3. There Is No "Common" Basis for Monetary Relief ................. 9

    B. The Class Representatives' Claims Are Not Typical ......................... 11

    C. The Class Is Not Ascertainable ................................................ 12

III. PLAINTIFFS HAVE NOT SATISFIED RULE 23(B) ............................... 14

    A. Plaintiffs Have Not Met The Requirements Of Rule 23(b)(3) ........... 14

        1. Common Issues Do Not Predominate ................................ 15

            a. Common Issues Will Not Predominate for One Nationwide Class ................................ 15

            b. Common Issues Do Not Predominate Because There are Numerous Disparate Factual Issues ............... 16

        2. A Class Action Is Not Superior ................................ 16

            a. Individualized Factual Issues Render the Proposed Class Unmanageable ................................ 17

            b. The Proposed Class Cannot be Certified Because the Laws of Multiple States Must be Applied ............... 17

            c. Defendants Already Have A Complaint System That Addresses Grievances of any Putative Class Members ................................ 18

    B. Plaintiffs Have No Basis for Certification Under Rule 23(b)(2) ........ 19

        1. Plaintiffs Do Not Have Standing To Seek Injunctive Relief ................................ 19

        2. The Rule 23(b)(2) Relief Is Not Primarily Injunctive ............. 19

IV. IT IS INAPPROPRIATE TO APPLY CALIFORNIA LAW TO A NATIONAL CLASS ................................................ 19

    A. The Laws Of All 50 States Materially Differ ................................ 21

    B. Individual States Have An Interest In Protecting Their Own Consumers ................................ 24

    C. The Laws Of Each Class Member's Home State Are Most Impaired ................................ 24

53002717.3

- i -

DOCUMENT PREPARED ON RECYCLED PAPER

1

## TABLE OF CONTENTS
(continued)

**Page**

V.    CONCLUSION ............................................................................................. 25

DOCUMENT PREPARED
ON RECYCLED PAPER

1
2

# TABLE OF AUTHORITIES

3                                                                                  **Page(s)**

**CASES**

4
5

*Allen v. Similasan,*
   2013 WL 2120825 (S.D. Cal. May 13, 2013) .................................................... 10

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ........................................................................................... 15

*Andres v. AT&T,*
   95 F.3d 1014 (11th Cir. 1996) ........................................................................... 17

*In re Aqua Dots Prods. Liab. Lit.,*
   270 F.R.D. 377 (N.D. Ill. 2010) ........................................................................ 18

*Beck-Ellman v. Kaz USA, Inc.,*
   283 F.R.D. 558 (S.D. Cal. 2012) ................................................................. 11, 12

*Carrera v. Bayer Corp.,*
   727 F.3d 300 (3rd Cir. August 21, 2013) ................................................. 2, 13, 14

*Cattie v. Wal-Mart Stores, Inc.,*
   504 F. Supp. 2d 939 (S.D. Cal. 2007) ............................................................... 10

*Cholakyan v. Mercedes-Benz, USA, LLC,*
   281 F.R.D. 534 (C.D. Cal. 2012) ...................................................................... 11

*Comcast v. Behrend,*
   133 S. Ct. 1426 (2013) ......................................................................................... 9

*Davis v. Powertel, Inc.,*
   776 So. 2d 971 (Fla. Ct. App. 2000) ................................................................. 22

*Debra F. Fink, D.M.D., MS, PC v. Ricoh Corp.,*
   839 A.2d 942 (N.J. Ch. 2003) ........................................................................... 23

*Delarosa v. Boiron, Inc.,*
   2012 WL 8716658 (C.D. Cal. Dec. 28, 2012) .................................................. 10

*Feldman v. Mercedes-Benz USA, LLC,*
   2012 WL 6596830 (D.N.J. Dec. 18, 2012) ....................................................... 23

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DOCUMENT PREPARED
ON RECYCLED PAPER

*Gennari v. Weichert Co. Realtors*,
  691 A.2d 350 (N.J. 1997) .................................................................................. 22

*Gest v. Bradbury*,
  443 F.3d 1177 (9th Cir. 2006) .......................................................................... 10

*Gianino v. Alacer Corp.*,
  2012 U.S. Dist. LEXIS 32261 (C.D. Cal. Feb. 27, 2012) .......... 15, 18, 21, 22, 24

*Gotthelf v. Toyota Motor Sales, USA, Inc.*,
  2012 WL 1574301 (D.N.J. May 3, 2012) ......................................................... 23

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ............................................................................ 11

*In re Hitachi Tele. Optical Block Cases*,
  2011 U.S. Dist. LEXIS 135 (S.D. Cal. Jan. 3, 2011) ........................................ 21

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008) ............................................................................... 4

*Int' Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*,
  2005 WL 2205341 (N.J. Super. Ct. Law Div. July 29, 2005)............................ 23

*Jovel v. Boiron, Inc.*, No. 2:11-cv-10803-SVW-SH, Dkt. 78 at 7-10 (C.D.
  Cal. August 16, 2013)....................................................................................... 10

*Keegan v. Amer. Honda Motor Co., Inc.*,
  284 F.R.D. 504 (C.D. Cal. 2012) ...................................................................... 23

*Kennedy v. Axa Equitable Life Ins. Co.*,
  2007 WL 2688881 (D.N.J. Sept. 11, 2007)....................................................... 21

*Kwikset Corp. v. Sup. Ct.*,
  51 Cal.4th 310 (2011) ......................................................................................... 1

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .......................................................................................... 10

*Maniscalco v. Brother Int'l Corp.*,
  793 F. Supp. 2d 696 (D.N.J. 2011).................................................................... 23

53002717.3

- ii -

TABLE OF AUTHORITIES

*Mason v. Nature's Innovation,*
  2013 WL 1969957 (S.D. Cal. May 13, 2013) .................................................... 10

*Mass. Mutual Life Ins. Co. v. Superior Court,*
  97 Cal. App. 4th 1282 (2002) .............................................................................. 1

*Mazur v. eBay, Inc.,*
  257 F.R.D. 563 (N.D. Cal. 2009) ...................................................................... 12

*Mazza v. Amer. Honda Motor Co.,*
  666 F.3d 581 (9th Cir. 2012) ........................................ 3, 4, 15, 19, 20, 21, 22, 24

*Medrazo v. Honda of N. Hollywood,*
  166 Cal. App. 4th 89 (2008) ........................................................................ 11, 12

*Montich v. Miele USA, Inc.,*
  849 F. Supp. 2d 439 (D.N.J. 2012) .................................................................... 23

*Norwest Mortgage Inc. v. Superior Court,*
  72 Cal. App. 4th 214 (1999) .............................................................................. 20

*Pilgrim v. Universal Health Card, LLC,*
  660 F.3d 943 (6th Cir. 2011) ............................................................................. 15

*Rikos v. Procter & Gamble Company,*
  2012 WL 641946 (S.D. Ohio 2012) ........................................................ 20, 23, 24

*Stearns v. Ticketmaster Corp.,*
  655 F.3d 1013 (9th Cir. 2011) ........................................................................... 10

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,*
  546 F.3d 196 (2d Cir. 2008) ................................................................................ 4

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
  267 F.R.D. 291 (N.D. Cal. 2010) ...................................................................... 12

*Wal-Mart Stores, Inc. v. Dukes,*
  131 S. Ct. 2541 (2010) ....................................................................... 4, 9, 14, 19

*Wang v. OCZ Technology Group, Inc.,*
  276 F.R.D. 618 (N.D. Cal. 2011) ...................................................................... 10

DOCUMENT PREPARED
ON RECYCLED PAPER

*Wiener v. Dannon Co., Inc.*,
    255 F.R.D. 658 (C.D. Cal. 2009) ........................................................................ 11

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ................................................... 4, 15, 17, 19, 24

**RULES AND STATUTES**

Cal. Bus. & Prof. Code §§ 17203, 17206 .................................................... 22

Cal. Bus. & Prof. Code § 17204 ................................................................ 22

Cal. Bus. & Prof. Code § 17208 ................................................................ 21

Ca. Civ. Code § 1780 ................................................................................. 22

Cal. Civ. Code § 1783 ................................................................................ 21

Fed. R. Civ. Proc. 23 .............................................................................. 3, 4

Fed. R. Civ. Proc. 23(a) ...................................................................... 3, 4, 15

Fed. R. Civ. Proc. 23(b) ................................................ 3, 14, 15, 16, 17, 19

Ga. Code Ann. § 10-1-372(b) ..................................................................... 22

Mo. Ann. Stat. § 407.025.1 ....................................................................... 22

Mo. Ann. Stat. § 407.1107 ......................................................................... 21

N.J. Stat. Ann. § 2A:14-1 .......................................................................... 21

N.J. Stat. Ann. § 56:8-2 ............................................................................. 22

N.J. Stat. Ann. § 56:8-19 ........................................................................... 22

DOCUMENT PREPARED
ON RECYCLED PAPER

## I.     **INTRODUCTION**

Defendants Hyland's, Inc., Standard Homeopathic Company and Standard Homeopathic Laboratories, Inc. oppose Plaintiffs' Enzo Forcellati and Lisa Roemmich Motion for Class Certification.

Plaintiffs claim that the one time they each purchased Hyland's Cold 'n Cough 4 Kids, the product did not relieve their children's symptoms.  Based on these incidents and the argument that the theories underlying homeopathic medications are "pseudo-science," they attempt to represent a national class asserting consumer protection and related claims over Hyland's Cold 'n Cough 4 Kids and *five additional products* made with different ingredients.  Plaintiffs argue that, because there is no "clinical evidence" to show that homeopathic remedies can treat illness, that all Defendants' products are, *de facto*, ineffective, and that this is a common question, susceptible to common proof, that predominates over individual questions.

Plaintiffs' over-simplified view does not support class certification.  First, Plaintiffs' anecdotal experiences with one product prove nothing.  Unlike a lock that is either "Made in the USA" or not, *see Kwikset Corp. v. Sup. Ct.*, 51 Cal.4th 310  (2011) (Mot. at 6), or a representation regarding an insurance product that is either false or misleading, or not, *see Mass. Mutual Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1286 (2002) (Mot. at 17), a representation that an over-the-counter ("OTC") drug relieves symptoms is not false or misleading simply because one individual claims that it did not work in one instance.  No drug is 100% effective.  If Plaintiffs' claims were correct, then *every drug on the market would be unlawfully marketed*.  Indeed, evidence presented by Defendants demonstrates that many physicians and consumers have positive experiences with their products.  The question of effectiveness in providing the relief claimed in product labeling needs to be subjected to more rigorous scrutiny than the anecdotal, self-serving testimony of Plaintiffs.

Second, even as to Hyland's Cold 'n Cough 4 Kids, the one product Plaintiffs purchased, their proposed proof of liability is not a common question that will generate a common answer for all class members. Plaintiffs' theory is that the common question is the lack of scientific support for homeopathy. Yet their own expert clinical pharmacologist agrees that establishing that homeopathy is not scientifically proven will *not* prove Hyland's Cold 'n Cough 4 Kids is ineffective. Rather, to find a product ineffective, one needs to either assess each ingredient, or the combination product. Deposition of Arthur P. Grollman, at 94:5-21, Ex. A to Declaration of Matthew M. Gurvitz. And, because the other five products contain different ingredients, with different product claims, the question of whether Hyland's Cold 'n Cough 4 Kids is effective is not common with the question of whether any of the other products, or individual active ingredients, are effective in providing the relief claimed on their labeling.

Aside from these central flaws, there are also multiple problems with Plaintiffs' motion that prevent class certification. There is no common injury for the proposed class. Many members are satisfied with Defendants' products; thus the proposed common question of the validity of homeopathy is not truly common to all class members. Further, injunctive relief is unavailable because Plaintiffs admit they will never purchase Defendants' products again. Plaintiffs' claims in this case are also not typical, nor is their proposed class ascertainable. It is undisputed that, of the six products at issue in this action, Plaintiffs have only purchased *one*, making their claims as to the other five products – manufactured with different ingredients and recommended for different uses – not typical of other class members. Moreover, the facts surrounding each Plaintiffs' use of Cold 'n Cough 4 Kids sets them apart from the class. Regarding ascertainability, Plaintiffs have proposed no mechanism by which the Court can accurately determine who should be a part of the class. As the Third Circuit recently held in *Carrera v. Bayer Corp.*, 727 F.3d 300 (3rd Cir. August 21, 2013), a class is not certifiable without a

1   showing that the class members can be identified readily and accurately, which is
2   not satisfied by mere conclusory assertions that all purchasers who can self-identify
3   are entitled to relief.

4        Plaintiffs also fail to satisfy Rule 23(b)(3).  Even if they could show common
5   issues, those issues do not predominate.  Individualized issues regarding the six
6   separate products, their different ingredients, labeling, packaging, methods of
7   manufacturing, manner in which they are taken, and differences in effectiveness for
8   different individuals all overpower any common issues proposed by Plaintiffs.
9   Further, a class action is not superior because Plaintiffs propose combining the laws
10  of several states into a multistate class – a nationwide class, requiring consideration
11  of the laws of 50 states, and the subclasses of two states' laws.  Such an action
12  cannot be effectively managed.  The class vehicle is also inferior because
13  Defendants have a complaint and refund mechanism in place that would fully
14  compensate Plaintiffs, had they only asked, as well as other dissatisfied customers.

15       Plaintiffs similarly fail to satisfy Rule 23(b)(2), which requires that the
16  primary relief sought be injunctive in order to certify a class.  Putting aside
17  Plaintiffs' lack of standing to pursue injunctive relief because they will never
18  purchase Defendants' products again, the primary relief sought is ***not*** injunctive,
19  but individualized monetary relief.

20       Finally, Plaintiffs ask that the Court apply California law to a nationwide
21  class, yet fail to address the choice of law analysis presented by *Mazza v. Amer.*
22  *Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012).  This case, and its progeny,
23  demonstrates that consumer protection claims must be brought under the laws of
24  the state where the purchase was made and that applying the laws of the 50 states to
25  Plaintiffs' claims renders the putative class unworkable and uncertifiable.

26  **II.    PLAINTIFFS HAVE NOT SATISFIED THE RULE 23(A) FACTORS**

27       Plaintiffs must affirmatively demonstrate that the class meets the
28  requirements of Fed. R. Civ. Proc. 23, and their showing is subject to a rigorous

1   analysis by the Court.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551
2   (2010); *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001).
3   Plaintiffs must prove the Rule 23 factors by a preponderance of the evidence.  *See*
4   *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196,
5   202 (2d Cir. 2008); *In re Hydrogen Peroxide Antitrust Litig*., 552 F.3d 305, 320 (3d
6   Cir. 2008).

7   **A.      There Are No Questions Common To The Class**

8          Rule 23(a) requires that Plaintiffs demonstrate there are questions of fact or
9   law common to the class.  *Mazza*, 666 F.3d at 595-596.  Common questions mean
10  common answers, such that the determination of a question's "truth or falsity will
11  resolve an issue that is central to the validity of each one of the claims in one
12  stroke."  *Dukes*, 131 S. Ct. at 2551.  "Dissimilarities within the proposed class are
13  what have the potential to impede the generation of common answers."  *Id*.

14         Here, there are no questions capable of generating one answer for the entire
15  class of purchasers of six different products.  The alleged common question is
16  whether the products are effective, which Plaintiffs claim can be answered by a
17  determination that homeopathy is not a valid scientific theory, and the absence of
18  any studies showing that the individual products or their ingredients are effective.
19  When examined, however, this conclusion does not pass muster.  First, even
20  assuming that Plaintiffs can establish homeopathy is not a "scientific" theory or that
21  there are no studies showing that Hyland's Cold 'n Cough 4 Kids and its
22  ingredients are effective, such evidence does not prove the product is ineffective;
23  thus Plaintiffs' proposed manner of proving the common question does not give rise
24  to common answers.  Second, whether Hyland's Cold 'n Cough 4 Kids is effective
25  does not establish that any of the other five products are not effective.

26         **1.      Efficacy Of Any One of the Products Cannot Be Challenged**
27              **on a Classwide Basis**

28         Plaintiffs' "evidence" of common proof for effectiveness is limited to the

Declaration of Dr. Grollman, a medical doctor who has not spent any significant time studying homeopathy or its principles.   Dr. Grollman concludes that "[h]omeopathy is an irrational belief system" that cannot be effective in treating patients because "[t]here is no credible scientific evidence that relief of symptoms by homeopathic remedies results in anything more than a placebo effect." Grollman Decl., ¶¶ 36, 41.[1]  Yet, contravening the arguments in Plaintiffs' brief, Dr. Grollman *admits* that the only way to prove that a product is not effective is to independently test the effectiveness of each of the ingredients in each product, or to test each product as formulated, which he has not done.  Grollman Depo. at 27:9-17; 87:3-8; 94:5-21.

Moreover, Defendants have introduced significant evidence demonstrating the effectiveness of the remedies and refuting the contention that homeopathic remedies are capable of one common "ineffective" designation by virtue of their preparation.  As discussed in the declarations of Dr. Peter Fisher and Dr. Iris Bell, the extreme dilution of homeopathic remedies does not mean they are ineffective. Declaration of Dr. Iris Bell, at ¶¶ 8-9; Declaration of Dr. Peter A.G. Fisher, at ¶¶ 8-22.   Though some advocates (such as Dr. Grollman) dispute the efficacy of homeopathic treatments, a variety of clinical trials show that homeopathic medicines can produce real and measurable effects.  Bell Decl., at ¶¶ 7-9; Fisher Decl., at ¶¶ 11-25.

Plaintiffs will be unable to make a common determination as to the effectiveness of Cold 'n Cough 4 Kids, let alone the five other products they did not buy.  Each of the active ingredients in Cold 'n Cough 4 Kids has a different

---

[1] Dr. Grollman's opinion is based on his review of general homeopathic articles and studies; during his deposition he could not recall or identify much of the literature that he had reviewed.  *Id*. at 40:3-11.  He also is not aware of any of the latest research into homeopathy or its principles, and cited a text from the late 1980s as a "more up to date" view of "modern" homeopathy.  Grollman Depo., at 32:23-33:14. He has conducted no experiments nor testing of his own on any of the products (or any homeopathic product or ingredient) *Id*. at 27:9-17; 87:3-8.

DOCUMENT PREPARED
ON RECYCLED PAPER

53002717.3

indication for use: allium cepa for "watery runny nose, cold, hacking cough, painful throat"; hepar sulph calc for "cold, sneezing"; natrum muriaticum for "dry cough, sore throat"; phosphorus for "hoarse/dry cough, nasal congestion, chest congestion"; pulsatilla for "moist cough, cold, nasal congestion"; sulphur for "chest congestion, nasal congestion, sneezing, runny nose"; and hydrastis for "rattling/tickling cough, sinus congestion, dry/raw/sore throat." Bell Decl., ¶ 12. As indicated in the Declarations of Drs. Bell and Punzo, each of the active ingredients in this product is known to treat the symptoms it is advertised as relieving. Bell Decl., at ¶¶ 10-11; Declaration of Amalia Punzo, M.D., at ¶¶ 8 & 10. Defendants confirmed as much when they assembled the Proof of Claims for Hyland's Cold & Cough for Kids (a collection of the HPUS excerpts and Materia Medica for each ingredient in the product, which supports the indications for usage on Defendants' packaging). Declaration of Thao Minh Le, Exs. G-L.[2] In order to dispel the efficacy of Cold 'n Cough 4 Kids, Plaintiffs must challenge the literature and studies for each of the active ingredients – a point with which their own expert agrees. Grollman Depo. at 94:5-21. This is not a common question. Determining the effectiveness of this one product for any particular consumer will vary depending on for which symptom(s) a consumer bought it. To determine whether or not Cold 'n Cough 4 Kids is effective for individuals taking it, an analysis must be made regarding the symptoms of each individual class member (*i.e.*, were they

---

[2] Plaintiffs claim that because Defendants rely on the traditional Homeopathic literature ("Materia Medica") to meet the regulatory conditions of the FDA's Compliance Policy Guideline establishing the proper support to market homeopathic medications, this establishes that "common evidence" can be used to demonstrate effectiveness. Motion at 8-9. This argument is a non sequitur. Although the homeopathic "provings" of ingredients are collected in the same Materia Medica texts, this does not mean that the evidence of the effectiveness for individual ingredients is "common." This is akin to arguing that whether conventional medicines used to treat ear infections and high cholesterol are effective is a common question simply because both are discussed in the same medical text. Plaintiffs' logic does not survive scrutiny.

1  taking the correct remedy for the correct symptom), how long the symptom(s)

2  persisted, whether the product was taken correctly, any underlying ailments the user

3  may have had, and other health conditions, to name but a few of the considerations.

4      Contrary to Plaintiffs' assertions, Defendants' homeopathic products,

5  including Cold 'n Cough 4 Kids, *are* effective for many – if not most.  *See* Punzo

6  Decl., ¶¶ 8-11; Bell Decl. ¶¶ 8-17; Fisher Decl. ¶¶ 23-26; Declaration of David

7  Cristofaro, ¶ 15 (94% satisfaction rate with Defendants' products).  As medical

8  professionals recognize, and common sense dictates, no medicine (whether

9  conventional or homeopathic) is effective 100% of the time.  Punzo Decl., ¶ 11;

10  Bell Decl., ¶ 17.  Indeed, Plaintiffs themselves were unaware of other individuals

11  for whom the products did not work.  Deposition of Enzo Forcellati, Ex. C to

12  Gurvitz Decl., at 55:7-10; Deposition of Lisa Roemmich, Ex. D to Gurvitz Decl., at

13  52:20-53:1.  Plaintiffs also said they have taken other conventional over-the-counter

14  remedies in the past that did not work in isolated incidences.  Forcellati Depo. at

15  65:25-66:16; Roemmich Depo. at 51:9-17 (acknowledging that she could not

16  conclude that because a product did not work for her, it would not work for others).

17  That Cold 'n Cough 4 Kids may not have worked for Plaintiffs' children, and that

18  Dr. Grollman does not believe homeopathy is effective, does not mean it does not

19  work for everyone (or any particular individual).  In fact, Defendants have received

20  very few complaints from consumers about Cold 'n Cough 4 Kids having no effect.

21  Declaration of Daniel M. Krombach, at ¶¶ 2-6.  This is supported by testimonials

22  on consumer websites from satisfied purchasers of Cold 'n Cough 4 Kids.  Gurvitz

23  Decl., Exs. E-L.

24      Because they have not shown how evidence that purportedly establishes that

25  homeopathy is not effective shows that Hyland's Cold 'n Cough 4 Kids is

26  ineffective, Plaintiffs have not established that the question of efficacy of this

27  product is common and susceptible to generating common answers as to all of the

28  consumers in the proposed class who purchased it.  Stretching the class definition to

include purchasers of the five other products that Plaintiffs did not purchase does nothing but increase the number of non-common questions five-fold.  Determining the effectiveness for six products in one class is not common, but requires an individual assessment of the effectiveness of each of the products.  This inquiry necessarily means looking at four additional different sets of ingredients,[3] five additional different labels, and five additional different sets of symptoms that the other products relieve.  And, as with Hyland's Cough & Cold 4 Kids, these other five products are effective and work for many consumers.  *See generally* Punzo Decl., ¶¶ 7-10; Bell Decl., ¶¶ 10-17; Fisher Decl., ¶¶ 23-26; Le Decl., Exs. G-L; Gurvitz Decl., Exs. E-L; Krombach Decl., ¶¶ 2-6; Cristofaro Decl.,¶ 15.  Plaintiffs' claim that liability for these five other products is common to the questions relating to Hyland's Cold 'n Cough 4 Kids is solely premised on the fact that all six of the products are homeopathic cold and flu products marketed for children.  Yet, as Dr. Grollman concedes, each product and its ingredients need to be separately assessed to determine effectiveness.  Plaintiffs' theory of commonality does not survive scrutiny.

## 2.   Whether Defendants' Representations Are Misleading to Consumers Cannot Be Established on a Classwide Basis

The majority of Plaintiffs' claims require either proof that the labeling is likely to deceive the average consumer, or that consumers rely on the alleged misrepresentations in purchasing the products.  These claims are not susceptible to common proof.

Plaintiffs cite the Declaration of Dr. Elizabeth Howlett to establish that consumers rely on the labeling of over-the-counter products when making purchasing decisions.  Dr. Howlett's declaration focuses on general trends for OTC

---

[3] The products Hyland's Cold Relief Strips 4 Kids with Zinc (no longer being sold) and Hyland's Sniffles 'n Sneezes 4 Kids (neither of which were purchased by Plaintiffs), have the same ingredients, although one product delivers the medicine in a strip form, and the other in a tablet form.

products, not on whether or how these trends apply with respect to homeopathic remedies generally, or as to those involved in this case.  The evidence before the Court, however, shows that her analysis does not apply to the packaging and labeling for the products at issue in this case.  In March 2012, Defendants commissioned the "Hyland's Advertising Awareness Study" to assess what information consumers rely on when they decide to purchase Hyland's homeopathic products.  Cristofaro Decl., at ¶ 5.  The survey found that packaging and advertising, the source of the alleged misrepresentations that Plaintiffs assert **all** class members relied on, are two of the ***least likely*** sources of information that purchasers of Hyland's products rely upon when making a purchasing decision.  *Id.* at ¶ 12; *see also* Declaration of David Stewart, Ph.D., at ¶ 11.  Roughly 73% of consumer purchasing decisions were made without reference to any advertising or product packaging and were based on past positive experiences and referrals from other satisfied individuals.  Cristofaro Decl., at ¶ 13.  Product packaging and advertising accounted for only 9% and 6%, respectively, of customers' purchasing decisions.  *Id.* at ¶ 12.  Given this evidentiary record, Plaintiffs cannot establish on a classwide basis that, for Hyland's products, the statements made on the packaging or labeling were either reasonably likely to deceive, or were material to, the average consumer.

### 3.   There Is No "Common" Basis for Monetary Relief

Under Rule 23(a), Plaintiffs must demonstrate that class members have suffered the same injury and that damages resulting from that injury can be measured on a class-wide basis with a common methodology.  *See Dukes*, 131 S. Ct. at 2551; *see also Comcast v. Behrend*, 133 S. Ct. 1426, 1430 (2013).  Plaintiffs claim that: (1) all class members purchased a worthless product; and (2) entitlement to injunctive relief can be proven on a class-wide basis.  *See* Motion at 9.  Thus, Plaintiffs conclude that a class-wide damages calculation is simple because all that is required is multiplying the average retail price by the total units

1   sold for each product.  *Id*. at 9-10.

2       In reality, actual harm will vary by individual class member.  Many

3   consumers were perfectly satisfied with Defendants' products, *see* Cristofaro Decl.,

4   at ¶ 15 (94% of the respondents were satisfied with Defendants' products), which

5   raises the question of whether the majority of class members even suffered an

6   injury.  *See, e.g.*,  *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1024 (9th Cir.

7   2011) (upholding denial of certification where overbroad class likely included

8   persons who were not misled into joining fee-based rewards program).

9       Second, Plaintiffs lack standing to seek injunctive relief on a class-wide

10  basis.  A plaintiff does not have Article III standing unless the following is shown:

11  (1) "injury in fact – an invasion of a legally protected interest which is (a) concrete

12  and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2)

13  a causal connection between the injury and the challenged conduct; and (3)

14  redressability.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

15  To pursue injunctive relief, Plaintiffs must show that they are "realistically

16  threatened by a repetition of the violation."  *Gest v. Bradbury*, 443 F.3d 1177, 1181

17  (9th Cir. 2006).  In false advertising cases, the injury necessary to establish standing

18  for injunctive relief is based on the intent to purchase the product again.[4]  Because

19  both Plaintiffs have unequivocally stated they will never purchase Defendants'

20

---

21  [4] *See, e.g., Wang v. OCZ Technology Group, Inc.,* 276 F.R.D. 618, 626 (N.D. Cal.

22  2011) (motion to dismiss granted when no allegation of a likelihood that plaintiff

    would again purchase an allegedly mislabeled product); *Cattie v. Wal-Mart Stores,*

23  *Inc.,* 504 F. Supp. 2d 939, 951-952 (S.D. Cal. 2007) (dismissing injunctive relief

24  claim when plaintiff was "fully aware" of alleged falsity and there were "no

    allegations suggesting she intends to buy linens from Wal-Mart.com in the

25  future."); *Mason v. Nature's Innovation,* 2013 WL 1969957, at *2-5 (S.D. Cal. May

26  13, 2013) (dismissing injunctive relief claim in homeopathic drug litigation); *Allen*

    *v. Similasan,* 2013 WL 2120825 at *4 (S.D. Cal. May 13, 2013) (same);  *Delarosa*

27  *v. Boiron, Inc.*, 2012 WL 8716658 at *4 (C.D. Cal. Dec. 28, 2012) (same); *Jovel v.*

28  *Boiron, Inc.*, et al., No. 2:11-cv-10803-SVW-SH, Dkt. 78 at 7-10 (C.D. Cal. August

    16, 2013) (same), Gurvitz Decl., Ex. M.

products in the future, *see* Forcellati Depo. at 44:20-25; Roemmich Depo. at 66:24-67:4, Plaintiffs do not have standing to pursue injunctive relief.

### B. The Class Representatives' Claims Are Not Typical

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

First, Plaintiffs' claims are not typical of all class members because, other than Hyland's Cold 'n Cough 4 Kids, ***they have not purchased any of the products***. *See* Forcellati Depo. at 53:16-54:18; Roemmich Depo. at 47:7-49:6; *see also Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 666 (C.D. Cal. 2009) (denying class certification where the products not purchased by the named plaintiffs targeted consumers with different health issues, different studies substantiated their health benefits, and had different advertising and marketing); *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 538, 557-558 (C.D. Cal. 2012) ("the evidence of variation among class vehicles indicates that [Plaintiff's] ownership of one type of class vehicle does not necessarily render his claims typical of the class as a whole.")

It is undisputed that Hyland's Cold 'n Cough 4 Kids has different ingredients than the five other products that are part of this suit, has different packaging and labeling, and relieves different sets of symptoms. *See* Gurvitz Decl., Ex. B. The different ingredients in each of the products requires separate analysis of the effectiveness of each product, Grollman Depo. at 94:5-21, only highlighting the impropriety of Plaintiffs' attempt to claim that they are typical of the consumers of the unpurchased products.

The cases cited by Plaintiffs in support of typicality are distinguishable from the facts of this case. Plaintiff cites *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558 (S.D. Cal. 2012), and *Medrazo v. Honda of N. Hollywood*, 166 Cal. App. 4th 89 (2008), both of which involve products as opposed to medicines (defective heating

pads and hanger tags on motorcycles disclosing dealer-added costs, respectively). In both of these cases, the defects were the same across the span of different products. In *Beck-Ellman*, the plaintiff had alleged that there were common defects across a variety of heating pads and that the retailers had failed to include the same types of representations on the packaging informing of these defects. *Beck-Ellman*, at 565-566. Similarly, in *Medrazo*, the issue was that the same type of label failing to explain added charges was not attached to various kinds of motorcycles at the point of purchase. *Medrazo*, at 92. In contrast, Plaintiffs attempt to group together six medicines that have different ingredients to treat different symptoms and are advertised differently, solely because they are homeopathic medications that are made by the same company and are intended for children's cold and flu symptoms.

Moreover, Plaintiffs are not, in fact, typical of putative class members:

- ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████

- Mr. Forcellati son's cold symptoms persisted for more than seven days, yet he failed to consult a doctor as instructed on the packaging of the Cold 'n Cough 4 Kids product. Forcellati Depo. at 41:10-43:24.

## C.     The Class Is Not Ascertainable

A class must be sufficiently ascertainable, meaning that its members must be identifiable "by reference to objective criteria." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 299 (N.D. Cal. 2010). Plaintiffs are required to introduce affirmative evidence of ascertainability. *See, e.g., Mazur v. eBay, Inc.*,

257 F.R.D. 563, 567 (N.D. Cal. 2009).  In this case, Plaintiffs briefly mention their ability to identify the class by simply determining which consumers purchased the products within the class period (Motion at 13, fn. 17), but have not proposed ***any*** means to ascertain class members.

A recent Third Circuit decision demonstrates why the proposed class in this action is not ascertainable, creating significant due process issues for both the defendants and the putative class members.  In *Carrera v. Bayer Corp.*, 727 F.3d 300 (3rd Cir. August 21, 2013), the plaintiff sought to certify a class of purchasers of an over-the-counter supplement that plaintiff alleged was falsely advertised.  The court noted that the ascertainability requirement serves "several important objectives," including "protect[ing] defendants by ensuring that those persons who will be bound by the final judgment are clearly identifiable."  *Id*. at 306.  The court held that plaintiff had failed to demonstrate ascertainability, where he claimed that the class members could be identified through value cards from retailers that purportedly track consumer identities, and/or affidavits from class members attesting to their purchase of the product.  *Id*. at 308.  The court found both of these methods inadequate.  There was no evidence that all class members used loyalty cards.  Furthermore, the affidavits, without accompanying receipts, were inherently unreliable and subject to fraudulent claims.  *Id*. at 308-309.  The court noted that this imprecise means of determining the identity of class members hurts class members and the defendant, as "[i]t is unfair to absent class members if there is a significant likelihood their recovery will be diluted by fraudulent or inaccurate claims," and class members who felt their claims were not adequately represented (by the resulting diluted recovery), could potentially bring new actions against defendant.  *Id*. at 310.  The court rejected plaintiff's argument that affidavits were sufficient because class members were unlikely to retain receipts for the small purchases, because "it does not address a core concern of ascertainability: that a ***defendant must be able to challenge class membership***."  *Id*. at 309 (emphasis

1  added).

2      As in *Carrera*, in this case, there is no evidence to show a reliable method to

3  identify class members.  Individuals are unlikely to remember exactly when they

4  purchased Defendants' products, and even less likely to retain a receipt.  Indeed,

5  neither of the named Plaintiffs in this action have a receipt for their purchase of

6  Cold 'n Cough 4 Kids (Forcellati Depo. at 13:11-15; Roemmich Depo. at 63:24-

7  64:1), and Plaintiff Roemmich cannot even remember when or exactly where she

8  purchased Cold 'n Cough 4 Kids.  Roemmich Depo. at 27:14-28:7; 37:7-20.

9  Defendants, who primarily sell their products to retailers, who then sell the products

10 to consumers, do not have records of the identities of consumers who purchase the

11 products.  Declaration of Daniel Krombach, ¶ 8.  And, though Plaintiffs state that

12 they can "gather sales data from third parties, such as SPINS LLC, IRI of the

13 retailers of the Products," (Motion at 9, fn. 16), this data does not identify the

14 consumers who purchased the products.  Krombach Decl., ¶ 8.  Perhaps most

15 importantly, the broad class of purchasers Plaintiffs propose will include many

16 consumers who are ***satisfied*** with the products, as demonstrated by the evidence

17 submitted by Defendants.  *See* Punzo Decl., at ¶¶ 8-11; Cristofaro Decl., at ¶ 15;

18 Gurvitz Decl., Exs. E-L.  Assuming Plaintiffs would have the class members self-

19 certify through a claim form procedure, there would be no way for Defendants to

20 challenge whether any individual class member in fact purchased a product, or

21 whether the product worked for him or her, absent a mini-trial on liability.

22 Plaintiffs' failure to demonstrate ascertainability is fatal to their motion.

23 **III.   PLAINTIFFS HAVE NOT SATISFIED RULE 23(B)**

24      The proposed class must also satisfy at least one of the three requirements

25 listed in Rule 23(b).  *Dukes*, *supra*, at 2548.  Plaintiffs seek certification of a class

26 under both Rule 23(b)(2) and 23(b)(3), but satisfy neither standard.

27      **A.   Plaintiffs Have Not Met The Requirements Of Rule 23(b)(3)**

28      Rule 23(b)(3) requires predominance of common questions and that the class

action be superior to other available methods for adjudicating the controversy. A court may certify such a class only if it first determines that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members," an inquiry "far more demanding" than Rule 23(a)'s commonality requirement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). The matters pertinent to the Court's superiority analysis include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3); *see also Zinser*, *supra*, at 1190-92.

### 1. Common Issues Do Not Predominate

#### a. *Common Issues Will Not Predominate for One Nationwide Class*

Under *Mazza v. Amer. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), Plaintiffs cannot certify a nationwide class because common issues will not predominate. *Mazza* holds that "variances in state law overwhelm common issues and preclude predominance for a single nationwide class." *Id*. at 596; *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 948 (6th Cir. 2011) ("Because these claims must be adjudicated under the law of so many jurisdictions…a single nationwide class is not manageable."). Variances in state laws overwhelm any common issues and, therefore, requirements for class certification under Rule 23(b)(3) cannot be met. *Mazza*, 666 F.3d at 596; *Gianino v. Alacer Corp.*, 2012 U.S. Dist. LEXIS 32261, at *16-18 (C.D. Cal. Feb. 27, 2012). And, even under any one state's laws, common issues do not predominate.

### b. *Common Issues Do Not Predominate Because There are Numerous Disparate Factual Issues*

Plaintiffs have filed one lawsuit asserting that six different products have been falsely advertised, the core of their claims being that the products do not work because homeopathic products generally *cannot* work. Despite their attempt to persuade the Court that common evidence can demonstrate that all products do not work, this is simply not the case.

- The class members' claims do not "arise from the same misrepresentations about the efficacy of the Products." Motion at 14. The products have different labels and different ingredients that are recommended to relieve different types of symptoms. Le Decl., at Exs. A-F. To demonstrate that the representations for each different product are false or likely to mislead the reasonable consumer will require different proof as it pertains to the effectiveness of each product in relieving each identified symptom and consumers' responses to such representations. Grollman Depo. at 94:5-21.

- Representations on the labeling and packaging are not the primary drivers of purchasing decisions for the products; there are many reasons that consumers purchase Defendants' products. Cristofaro Decl., Ex. A.

- There is no common injury in the class. Plaintiffs assume, without any evidence specific to the actual ingredients, that because Defendants' products are homeopathic remedies, they do not work for *any* of the class members. However, the evidence demonstrates that many consumers using Defendants' products have experienced benefits. *See* Punzo Decl., at ¶¶ 8-11; Bell Decl., ¶ 17; Cristofaro Decl., at ¶ 15; Gurvitz Decl., Exs. E-L. Experiences with the products clearly differ by user, therefore, any injuries experienced by potential class members are not subject to common proof.

### 2. A Class Action Is Not Superior

One important factor identified under Rule 23(b)(3) that is pertinent to a

1   court's determination of superiority is the existence of any management difficulties
2   the class action is likely to present.  Fed. R. Civ. P. 23(b)(3); *see, e.g.*, *Zinser* 253
3   F.3d at 1190-92.

4           **a.      *Individualized Factual Issues Render the Proposed***
5                   ***Class Unmanageable***

6           Manageability encompasses the entire range of practical problems that may
7   render a class action inappropriate to adjudicate a particular issue and, when these
8   problems outweigh the benefits of one common class, certification is not
9   "superior."  *See Andres v. AT&T*, 95 F.3d 1014, 1023 (11th Cir. 1996); *Zinser,* 253
10  F.3d at 1192 (citations omitted).  The myriad of factual issues in this case make the
11  class unmanageable.  Further, as evidenced by the declaration of Dr. Punzo, the
12  favorable comments on the internet, the high levels of customer satisfaction in the
13  survey, and the lack of complaints regarding efficacy of these products, there are
14  many members of the putative class for whom these products ***do work***.  *See* Punzo
15  Decl., at ¶ 11; Cristofaro Decl., at ¶ 15; Gurvitz Decl., Exs. E-L; Krombach Decl.,
16  at ¶¶ 4-6.  Thus, a jury could not determine a single class member's claim without
17  resort to his or her individual circumstances, rendering the proposed class
18  unmanageable.

19          **b.      *The Proposed Class Cannot be Certified Because the***
20                  ***Laws of Multiple States Must be Applied***

21          Plaintiffs' proposal for a nationwide class and, simultaneously, two sub-
22  classes under New Jersey and Missouri law, also render the case unmanageable.
23  First, as discussed below, because the application of one state's law to all 50 states
24  is improper, certification of one nationwide class would require application of the
25  laws of all 50 states.[5]

26  _____
    [5]The trial of a nationwide class "would devolve quickly into an unmanageable
27  morass of divergent legal issues.  Certain evidence would be admissible for some
28  class members but not others.  Fifty different sets of jury instructions and verdict
    forms would have to be crafted . . . .  Needless to say, the trial would be incredibly

1    Plaintiffs' proposal that two sub-classes for the products be certified under
2    New Jersey and Missouri law alongside the nationwide class claims is similarly
3    unmanageable (even if California law were applied to the national class) because of
4    the variations in the consumer laws of these states.   It is easy to imagine the
5    difficulties a jury would face if forced to apply the laws of three different states to
6    different claims for different plaintiffs.

7           **c.**   ***Defendants  Already  Have  A  Complaint  System  That***
8    ***Addresses Grievances of any Putative Class Members***

9    A class action is also not superior because Defendants already have a system
10   in place to address Plaintiffs' concerns.   Out-of-court refund programs have been
11   found superior to class actions because "[w]here available refunds afford class
12   members a comparable or even better remedy than they could hope to achieve in
13   court, a class action would merely divert a substantial percentage of the refunds'
14   aggregate value to the class lawyers."   *In re Aqua Dots Prods. Liab. Lit.*, 270
15   F.R.D. 377, 383 (N.D. Ill. 2010).   If "defendants will provide a refund – without
16   needless judicial intervention, lawyer's fees, or delay – to any purchaser who asks
17   for one, there is no realistic sense in which putative class members would be better
18   off coming to court."   *Id.* at 385.

19   Here, Defendants have a comprehensive system to respond to customer
20   complaints.   Krombach Decl., at ¶¶ 2-3.   Dissatisfied customers are given refunds
21   upon request, and this has always been Hyland's policy in its 110 years of
22   operation.   *Id.* at ¶ 7.   Plaintiffs were explicitly informed of this in response to their
23   CLRA notice letters.   Gurvitz Decl., Exs. N-O.   However, neither of the Plaintiffs
24   even attempted to contact Defendants for refunds, instead opting to file lawsuits.
25   Because Defendants would have refunded the money any class member spent on a

26
27   time-consuming,  unnecessarily  disjointed,  hopelessly  confusing,  and  unfairly
     prejudicial to [defendant] and many, if not all, members of the class.   Justice
28   demands that this case not be adjudicated as a class action." *Gianino*, 2012 U.S.
     Dist. LEXIS 32261, at *17-*18.

1    product she felt was not effective, without incurring costly legal bills or tying up

2    the parties and Court in needless litigation, the Court should find that a class action

3    is not a superior method for adjudicating these claims.

**B.     Plaintiffs Have No Basis for Certification Under Rule 23(b)(2)**

5        To certify a class under Rule 23(b)(2), Plaintiffs must show that "the party

6    opposing the class has acted or refused to act on grounds that apply generally to the

7    class, so that final injunctive relief or corresponding declaratory relief is appropriate

8    respecting the class as a whole." FED. R. CIV. P. 23(b)(2).

**1.     Plaintiffs Do Not Have Standing To Seek Injunctive Relief**

10       As discussed above, injunctive relief is unavailable because Plaintiffs stated

11   they will not purchase any of Defendants' products again.  Without standing to

12   pursue injunctive relief, certification of a Rule 23(b)(2) class is impossible.

**2.     The Rule 23(b)(2) Relief Is Not Primarily Injunctive**

14       "Class certification under Rule 23(b)(2) is appropriate ***only where the***

15   ***primary relief*** sought is declaratory or injunctive."  *Zinser*, 253 F.3d at 1195

16   (emphasis added).  Rule 23(b)(2) "does not authorize class certification when each

17   class member would be entitled to an individualized award of monetary damages."

18   *Dukes*, 131 S. Ct. at 2557-58.

19       In this case, the Complaint reveals that the primary relief sought by Plaintiffs

20   is monetary, including compensatory and punitive damages, in addition to

21   attorneys' fees and costs.  Compl. at 42-43.  Plaintiffs also do not contend that

22   injunctive relief is the ***primary*** relief sought in this action, only summarily

23   concluding that injunctive relief is appropriate.  *See* Motion at 25.  Plaintiffs have

24   not shown that certification of a class under Rule 23(b)(2) is appropriate.

**IV.   IT IS INAPPROPRIATE TO APPLY CALIFORNIA LAW TO A**
**NATIONAL CLASS**

27       Despite the Court's urging to Plaintiffs that "given *Mazza*, [Plaintiffs] may

28   need to seriously consider whether [they] can maintain a nationwide class on all of

[their] claims throughout this litigation," (6/1/12 Order on Motion to Dismiss, Dkt. No. 27) Plaintiffs' argument that California law should apply to a nationwide class is devoid of any discussion of the implication of *Mazza*, or the line of cases that have applied its ruling.  Instead, Plaintiffs' motion focuses solely on the issue of whether application of California's law violates due process concerns and ignores the central choice of law question.  Defendants do not concede that application of California law is constitutional.[6]  However, there is no need to address the constitutional issue, given that choice of law analysis leads to the conclusion that applying California law to a nationwide class is not appropriate.

California applies this governmental interest inquiry: (1) determine if the laws of other states materially differ from California law; (2) if the laws materially differ, determine each state's respective interest in application of its law; and (3) if both states have an interest in litigation, apply the law of the state whose interest would be more impaired if its law were not applied.  *Mazza*, at 590.  Applying this test to California's UCL, False Advertising, and CLRA claims (the same statutes that Plaintiffs in this case seek to apply to a nationwide class), the *Mazza* court held that a class member's consumer protection claims must be brought under the laws

---

[6] Plaintiffs argue that because Defendants have "substantial contacts" with California, this alone establishes that application of California law is constitutional. *See* Motion at 11:3-12:3.  Contrary to Plaintiffs' claims, a number of marketing decisions for the products were not made in California (indeed, the Vice President of Marketing was previously based in Washington D.C., and coordinates with several individuals around the country).  While the fact that a defendant is incorporated and conducts business in California may provide sufficient contacts to establish personal jurisdiction, this does not sufficiently alleviate due process concerns.  *Norwest Mortgage Inc. v. Superior Court*, 72 Cal. App. 4th 214, 226 (1999) ("the existence of personal jurisdiction over the defendant does not alone permit application of forum law to the claims of nonresident plaintiffs.").  Applying California's false advertising laws to class members that do not live and did not purchase the products in California raises constitutional issues.  *See Rikos v. Procter & Gamble Co.*, 2012 WL 641946 (S.D. Ohio 2012) ("CLRA and the UCL cannot be constitutionally applied to the claims of class members who neither reside in California nor purchased the product there.").

of the state where the consumer received the alleged misrepresentations or omissions that resulted in the transaction at issue.  *Id*. at 594.

## A.  The Laws Of All 50 States Materially Differ

There is an actual conflict in the consumer protection laws of the various states.  These conflicts extend to issues relating to: (1) scienter; (2) reliance; and (3) remedies.  *Mazza*, at 591.  Many courts following *Mazza* recognize these material variations in consumer protection statutes in the various states.  *See, e.g., In re Hitachi Tele. Optical Block Cases*, 2011 U.S. Dist. LEXIS 135, at *6 (S.D. Cal. Jan. 3, 2011); *see also Gianino v. Alacer Corp.*, 2012 U.S. Dist. LEXIS 32261, at *6-9 (C.D. Cal. Feb. 27, 2012).[7] *Mazza* and *Gianino* both recognized that these differences are **not** trivial.  *Mazza*, 666 F.3d at 591; *Gianino*, 2012 U.S. Dist. LEXIS 32261, at *11.

The differences between the laws of the three states most directly involved in this case (California, New Jersey and Missouri) demonstrate the material conflicts relevant to the claims in this case.  (1) **Statutes of Limitations**:  Four different limitation periods are at play in these statutes: six years under the New Jersey Consumer Fraud Act ("NJCFA"); four years under California's UCL; three years under California's CLRA and FAL; and two years under Missouri's Merchandising Practices Act ("MMPA").[8]  Application of California law to the entire class allows Ms. Roemmich, a Missouri resident who purchased Cold 'n Cough 4 Kids in Missouri, to bring a claim on behalf of the nationwide class that she is incapable of bringing in her own state.  *See* Roemmich Depo., at 27:23-28:1 (witness could only

---

[7] For the Court's convenience and reference, the nationwide analysis of the variations in the states' consumer protection laws on which Judge Carnac's opinion is based has been submitted as Exhibit A to Defendants' Request for Judicial Notice.

[8] Cal. Civ. Code § 1783; Cal. Bus. & Prof. Code § 17208; Mo. Ann. Stat. § 407.1107; *Kennedy v. Axa Equitable Life Ins. Co.*, 2007 WL 2688881, at *2 (D.N.J. Sept. 11, 2007) (New Jersey's 6-year statute of limitations covers insurance contracts and claims under the CFA); *see also* N.J. Stat. Ann. § 2A:14-1.

confirm that the product had been purchased within the last four years). (2) **Actual Injury**: California and Missouri require actual injury;[9] New Jersey allows false advertising claims to be brought "whether or not any person has in fact been misled, deceived or damaged thereby…."[10] (3) **Reliance**: California's consumer protection laws require plaintiffs to establish reliance; New Jersey and Missouri laws do not.[11] (4) **Remedies/Damages**: Under the CLRA, a plaintiff can recover actual damages, an injunction, restitution, punitive damages and "any other relief that the court deems proper."[12] The UCL and FAL limit the available remedies to equitable and restitutionary relief and do not allow for compensatory or punitive damages.[13] The MMPA specifically provides for actual damages, equitable relief, and attorney's fees, as well as punitive damages in appropriate cases.[14] The NJCFA includes treble damages and attorney fees as its penalties for a violation.[15] Punitive damages are not expressly provided for by the NJCFA and are only allowed in cases of common law fraud.[16] In addition to the *Mazza* and *Gianino* decisions, which unequivocally hold that the consumer laws of the 50 states are materially different, a number of cases in New Jersey find that there are material conflicts between the

---

[9] Cal. Bus. & Prof. Code § 17204; Cal. Civ. Code § 1780; Mo. Ann. Stat. § 407.025.1.

[10] N.J. Stat. Ann. § 56:8-2.

[11] *See, e.g., Davis v. Powertel, Inc.*, 776 So. 2d 971, 973 (Fla. Ct. App. 2000) ("members of a class proceeding under [Florida's] Deceptive and Unfair Trade Practices Act need not prove individual reliance on the alleged representation"); Ga. Code Ann. § 10-1-372(b) ("In order to prevail in an action under [Georgia's Uniform Deceptive Trade Practices Act], a complainant need not prove competition between the parties or actual confusion or misunderstanding.").

[12] Ca. Civ. Code § 1780.

[13] Cal. Bus. & Prof. Code §§ 17203, 17206.

[14] Mo. Ann. Stat. § 407.025.1.

[15] N.J. Stat. Ann. § 56:8-19.

[16] *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 368 (N.J. 1997).

NJCFA and California's consumer laws.[17]   Plaintiffs also seek to have California common law causes of action for breach of express and implied warranties applied to a national class.   These laws also materially differ between the 50 states, cautioning against application of California's law to a nationwide class.[18]

---

[17] *See Gotthelf v. Toyota Motor Sales, USA, Inc.*, 2012 WL 1574301, at *13 (D.N.J. May 3, 2012) (comparing the NJCFA to the CLRA); *Feldman v. Mercedes-Benz USA, LLC*, 2012 WL 6596830, at *6 (D.N.J. Dec. 18, 2012) ("the NJCFA materially conflicts with the consumer protection statutes of California, the CLRA and UCL."); *Maniscalco v. Brother Int'l Corp.*, 793 F. Supp. 2d 696, 704 (D.N.J. 2011) (finding a material difference between the NJCFA and the CLRA because the CLRA only provides relief for a consumer who has purchased goods primarily for personal, family or household purposes); *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 446 (D.N.J. 2012) (UCL requires the element of actual reliance, whereas the NJCFA does not); *Debra F. Fink, D.M.D., MS, PC v. Ricoh Corp.*, 839 A.2d 942, 978-79 (N.J. Ch. 2003) (NJCFA requires proof of both knowledge and intent, while California requires proof of justifiable reliance by the plaintiff on defendant's deceptive acts); *Int' Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 2005 WL 2205341, at *17 (N.J. Super. Ct. Law Div. July 29, 2005) (UCL and CLRA provide varied remedies from the NJCFA and that this difference, along with the varied other differences as related to other states, was material and met the first prong of New Jersey's governmental-interest analysis).

[18] The court in *Rikos v. Procter & Gamble Company*, 2012 WL 641946 at *5-6 (S.D. Ohio 2012), held that the following material variation in the express warranty laws of the 50 states existed: (1) California provides an "exception to the requirement of privity for purchases where the plaintiff relied on the product's labels or advertising, while other states bar claims for breach of express warranty in the absence of privity and a third category have no requirement of privity at all;" (2) California holds that "statements of mere 'puffery' do not constitute an express warranty, while other states hold that a warranty is created when the natural tendency of the statement is to induce a purchase;" (3) California does not require reliance, while "some states require plaintiff to demonstrate reliance, others apply a burden shifting method, and others still presume reliance;" and (4) California requires that notice is given to the manufacture, while other states "require notice only to the seller, and some do not require notice at all."   The court expressly noted that "no discovery will change the simple fact that different states have different elements for claims of breach of express warranty, and the Court finds that these variations are material."   *Id.* at *6; *see also, Keegan v. Amer. Honda Motor Co., Inc.*, 284 F.R.D. 504, 540 (C.D. Cal. 2012) (*Mazza*'s "caution against the

**B.     Individual States Have An Interest In Protecting Their Own Consumers**

When it comes to consumer products, the individual states have an interest in protecting their own citizen consumers.  *Mazza* held, as a matter of law, that the state in which a consumer received a misrepresentation and purchased a product has a strong interest in setting "the optimal balance between protecting consumers and attracting foreign businesses…."  *Mazza*, 666 F.3d at 592; *see also Gianino*, 2012 U.S. Dist. LEXIS 32261, at *13.  The same applies to warranty law, as "each state has an interest in setting the appropriate level of liability for companies conducting business within its territory."  *Rikos*, 2012 WL 641946, at *6, *citing Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001).  The analysis for homeopathic drugs is no different; each of the 50 states has an interest in setting the balance between protecting its consumers and setting limits on when businesses may be sued for the purchase of their products.

**C.     The Laws Of Each Class Member's Home State Are Most Impaired**

In *Mazza*, the court determined that the interests of the consumer's home state are most impaired by the application of one state's law to all jurisdictions at issue because "California considers the 'place of wrong' to be the state where the last event necessary to make the actor liable occurred."  *Mazza*, 666 F.3d at 593-94.  This is "the geographic location of the omission or where the misrepresentations were communicated to the consumer as the place of the wrong."  *Gianino*, 2012 U.S. Dist. LEXIS 32261, at *15; *Mazza*, 666 F.3d at 593-594.   Here, where Plaintiffs propose to certify a class that is primarily made up of consumers whose only exposure to advertising for the products was on-shelf packaging in their home

---

unwarranted extraterritorial application of California law" extended to an implied warranty claim).

1  states (Compl. at ¶¶ 76, 78), controlling law dictates that the interests of each of the

2  consumers' home state are most impaired by the application of California law,

3  preventing application of California law to a national class.

4  **V.   CONCLUSION**

5       For the foregoing reasons, Defendants respectfully request that the Court

6  deny Plaintiffs' Motion for Class Certification.

7  Dated:    October 28, 2013          JEFFREY MARGULIES
                                        STEPHANIE A. STROUP
8                                       MATTHEW M. GURVITZ
                                        **FULBRIGHT & JAWORSKI LLP**
9

10                                          /S/ Stephanie A. Stroup
                                          STEPHANIE A. STROUP
11                                      Attorneys for Defendants
                                        STANDARD HOMEOPATHIC
12                                      COMPANY, STANDARD
                                        HOMEOPATHIC LABORATORIES,
13                                      INC. and HYLAND'S, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28