E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | April 9, 2014 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

**Presiding: The Honorable**     **GEORGE H. KING, CHIEF U.S. DISTRICT JUDGE**

| Beatrice Herrera | N/A | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     **(In Chambers) Order re:** Plaintiffs' Motion for Class Certification [Dkt. No. 82]

This matter is before us on Plaintiffs' Motion for Class Certification ("Motion"). We have considered the papers filed in support of and in opposition to the Motion, including the Parties' supplemental briefing, and deem this matter appropriate for resolution without oral argument. *See* L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows:

**I.     Background**

On December 7, 2012, Plaintiffs Enzo Forcellati and Lisa Roemmich ("Plaintiffs") filed their Consolidated Amended Class Action Complaint ("Complaint"), which principally alleges that Defendants uniformly misrepresent that their homeopathic products provide fast, safe, and effective relief from cold and flu symptoms. Alleging "homeopathy is pseudoscience," Plaintiffs contend that the cold and flu products are actually "nothing more than sweetened, flavored water with . . . highly diluted concentrations of the products' so-called 'active ingredients.'" (Compl. ¶¶ 2, 15, 19).

Based on these allegations, Plaintiffs asserted the following claims: (1) violation of Magnuson-Moss Act, 15 U.S.C. § 2301, *et seq.*; (2) unjust enrichment; (3) breach of express warranty; (4) breach of implied warranty; (5) violation of the New Jersey Consumer Fraud Act ("NJCFA"), § 58:8-1, *et seq.*; (6) violation of California's Consumer Legal Remedies Act ("CLRA"); (7) violation of California's False Advertising Law ("FAL"); (8) violation of California's Unfair Competition Law ("UCL"); and (9) violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Ann. Stat. §§ 407.010, *et seq.* On June 1, 2012, we dismissed Plaintiffs' unjust enrichment claim. [Dkt. No. 27].

Plaintiffs now seek to certify a class for the remaining claims. The proposed nationwide class would consist of "all persons in the United States who purchased any of six Hyland's children's cold and flu products": (1) Cold 'n Cough 4 Kids, (2) Cough Syrup with 100% Natural Honey 4 Kids, (3) Sniffles 'n Sneezes 4 Kids, (4) Cold Relief Strips 4 Kids with Zinc, (5) Complete Flu Care 4 Kids,[1] and

---

[1] To prevent any overlap with the claims certified in the California state court action *Acuna v. Hyland's, Inc., et al.*, Case No. CIVDS1110816 (San Bernardino County), Plaintiffs have excluded from the putative class California purchasers of Complete Flu Care 4 Kids.

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | April 9, 2014 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

(6) Nighttime Cold 'n Cough 4 Kids.  (Compl. ¶¶ 1, 82).  In addition, Plaintiff Forcellati seeks to represent a New Jersey-only NJCFA subclass, and Roemmich seeks to represent a Missouri-only MMPA subclass.  Plaintiffs seek certification under both Rule 23(b)(2) and (b)(3).

**II.    Discussion**

      **A.    Choice of Law**

In a CAFA diversity action, we apply California's choice of law rules.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 538 n.7 (C.D. Cal. 2011) ("*Bruno I*").  "Under California's choice of law rules, the class action proponent bears the initial burden to show that California has significant contact or significant aggregation of contacts to the claims of each class member." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (citations omitted).  "Once the class action proponent makes this showing, the burden shifts to the other side to demonstrate that foreign law, rather than California law, should apply to class claims."  *Id.* at 590.

Given that Defendants are headquartered in California, we have already held that application of California law "poses no constitutional concerns" in this case.  *Forcellati v. Hylands, Inc.*, 876 F. Supp. 2d 1155, 1160 (C.D. Cal. 2012); *see also Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010).  Defendants do not present any new evidence that disturbs our prior conclusion that "California has a constitutionally significant aggregation of contacts to the claims of each putative class member in this case."  *Mazza*, 666 F.3d at 591.  Accordingly, the burden is on Defendants to defeat the presumption that California law applies and to show a compelling reason justifying displacement of California law under the applicable choice-of-law analysis.  *See Kasel v. Remington Arms Co.*, 24 Cal. App. 3d 711, 731 (1972).

Defendants must make this showing under California's three-step governmental interest test.  *Mazza*, 666 F.3d at 590.  First, they must show that the relevant laws of the affected jurisdictions are materially different.  *Id.*  Then, Defendants must show that the foreign jurisdictions have an "interest in the application of [their] own law under the circumstances of the particular case" such that "a true conflict exists."  *Id.*  Finally, if they can show that there is a true conflict, Defendants must engage in a comparative impairment analysis and demonstrate that the foreign states' interests in this matter are stronger than California's such that the foreign states "would be more impaired if [their] law[s] were not applied."  *Id.*  As we expressly instructed in our June 1, 2012 Order, Defendants can only meet their burden under this test "by engaging in an analytically rigorous discussion of each prong of [the] test based on the facts and circumstances of *this* case, and [*these*] Plaintiff[s'] allegations."  *Forcellati*, 876 F. Supp. 2d at 1161.  Defendants' briefing here falls far short of this standard.  Rather than attempt to make a showing based on the particulars of this case, Defendants have opted to rely on conclusory assertions and citations to cases in which defendants met their burdens in different factual circumstances.  As we held in our last Order, "[m]erely citing other courts' choice-of-law analysis, based on the facts before those courts, fails to discharge Defendants' burden of showing a 'compelling

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | April 9, 2014 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

reason' justifying the displacement of California law on Plaintiff[s'] claims." *Id.*

Defendants do identify several differences in the various states' consumer protection statutes and requirements for proving breach of warranty. However, identifying differences in state law is but the first step in an analysis under the first prong of the governmental interest analysis test. The only differences that are relevant to the conflict-of-laws analysis are those that are material *in this litigation*. *Mazza*, 666 F.3d at 590. Here, Defendants' fact-specific materiality analysis ranges from sparse to non-existent.

The deficiencies in Defendants' analysis become even more glaring in the second and third prong of the test. "The second step of the governmental interest analysis requires us to examine each jurisdiction's interest in the application of its own law in the circumstances of the particular case to determine whether a true conflict exists." *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 91 (2010). Here, the full extent of Defendants' analysis is a citation to *Mazza* and the broad statement that "each of the 50 states has an interest in setting the balance between protecting its consumers and setting limits on when businesses may be sued for the purchase of their products." (Opp. 24). This is not enough for Defendants to satisfy their burden of demonstrating the existence of a "true conflict." Given that California law requires a case-specific analysis to demonstrate a true conflict, Defendants' conclusory reliance on *Mazza* does not satisfy their burden under the second prong of the governmental interest analysis test. *See In re POM Wonderful*, 2012 WL 4490860, at *4 (C.D. Cal. Sept. 28, 2012); *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 547 (C.D. Cal. 2012) ("*Bruno II*") ("*Mazza* did not and could not have changed state law requiring the defendant to analyze various states' laws under the circumstances of the particular case and given the particular legal issue in question.").

Defendants also fail to demonstrate the degree to which other states' interests would be impaired by the application of California law. "Under the comparative impairment analysis, we must carefully evaluate and compare the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state." *McCann*, 48 Cal. 4th at 96-97 (internal quotations and alterations omitted). This analysis "does not weigh the conflicting governmental interests in the sense of determining which conflicting law manifested the better or the worthier social policy on the specific issue." *Id.* Instead, our task is "to decide—in light of the legal question at issue and the relevant state interests at stake—which jurisdiction should be allocated the predominating lawmaking power under the circumstances of the present case." *Id.* Here, Defendants once again expect a citation to *Mazza* to be sufficient to carry their burden. (Opp. 24-25). Rather than consider the facts of this case, Defendants simply state that "controlling law dictates that the interests of each of the consumers' home states are most impaired by the application of California law." (*Id.*) As support for this proposition, Defendants rely on *Mazza*'s conclusion that "California considers the 'place of wrong' to be the state where the last event necessary to make the actor liable occurred." (*Id.*) However, while California recognizes that "a jurisdiction ordinarily has the predominant interest in regulating conduct that occurs within its borders," *McCann*, 48 Cal. 4th at 97-98, in a false advertising case the state from which the misrepresentation was

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | April 9, 2014 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

disseminated often has the predominant interest.[2]  *See, e.g.*, *Wershba*, 91 Cal. App. 4th at 243 ("[A] California court may properly apply the same California statutes at issue here to non-California members of a nationwide class where the defendant is a California corporation and some or all of the challenged conduct emanates from California."); *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 616 (1987) ("California's more favorable laws may properly apply to nonresident plaintiffs when their home states have no identifiable interest in denying such persons full recovery.").  Defendants have provided no substantive, fact-specific analysis as to whether California—where Defendants are headquartered and presumably disseminated a good portion of the allegedly false advertising—or the states where the sales occurred have the predominant interest here.  As such, Defendants' analysis under the comparative impairment prong of the governmental interest analysis test is insufficient to carry their burden.

In sum, Defendants—as the party bearing the burden of demonstrating "that foreign law, rather than California law, should apply to class claims," *Wash. Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 921 (2001)—have failed to satisfy their burden under California's governmental interest analysis test.  Given that *Mazza* did not "categorically rule out application of California law to out-of-state class members," simply citing *Mazza* in no way relieves Defendants of their burden.  *See Allen v. Hylands, Inc.*, 2012 WL 1656750, at *2 (C.D. Cal. May 2, 2012); *see also Mazza*, 666 F.3d at 594 (stating that its holding was reached "[u]nder the facts and circumstances of [that] case").  Accordingly, because Plaintiffs have made a sufficient initial showing for application of California law, and Defendants have failed to show otherwise, California law applies to Plaintiffs' proposed nationwide class.  *See Bruno II*, 280 F.R.D. at 550 ("[T]he California Supreme Court requires that Defendants analyze various states' laws under the circumstances of the particular case and given the particular legal issue in question" before they can "deprive consumers in several states who were exposed to misrepresentations of the most efficient vehicle for adjudication of their injury: a nationwide class action.").

    **B.**    **Class Certification Standard**

A motion for class certification is governed by the requirements of Federal Rule of Civil Procedure 23, and the party seeking certification bears the burden of affirmatively demonstrating that the Rule 23 requirements have been met.  *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Here, Plaintiffs seek to certify a Rule 23(b)(2) and (b)(3) class.  In addition to bearing the burden of establishing the requirements of (b)(2) and (b)(3), Plaintiffs must prove the following Rule 23(a) prerequisites:

    (1)  "the class is so numerous that joinder of all members is impracticable";
    (2)  "there are questions of law or fact common to the class";

---

[2] While it is true that the relevant economic injury occurred at the point of purchase for purposes of standing, this does not necessarily mean that the predominant interest for the purposes of the choice-of-law analysis is in the state of the point of purchase.  *See Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 243 (2001).

E-FILED
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | April 9, 2014 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

(3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and

(4) "the representative parties will fairly and adequately protect the interests of the class."

In addition, although not specifically mentioned in Rule 23(a), ascertainability is a threshold prerequisite to class certification. *See Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 163 (C.D. Cal. 2002).

Before certifying Plaintiffs' class, we must conduct a "rigorous analysis" to ensure Plaintiffs have met the prerequisites of Rule 23. *Zinser*, 253 F.3d at 1186. While we may generally accept the allegations in the complaint as true in determining class certification, we must consider the merits of the claims to the extent they overlap with the Rule 23 requirements, *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011), as "the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978)).

  1. **23(a) Requirements**

    a. **Ascertainability**

"The requirement of an ascertainable class is met as long as the class can be defined through objective criteria." *Guido v. L'Oreal, USA, Inc.*, 2013 WL 3353857, at *18 (C.D. Cal. July 1, 2013). A class is sufficiently ascertainable if "the proposed class definition allows prospective plaintiffs to determine whether they are class members with a potential right to recover." *Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 593-94 (C.D. Cal. 2008).

Here, Plaintiffs have precisely defined their class based on an objective criteria: purchase of Defendants' children's cold or flu products within a prescribed time frame. This is enough to satisfy Rule 23(a)'s implied ascertainability requirement. *See McCrary v. Elations Co., LLC*, 2014 U.S. Dist. LEXIS 8443, at *25 (C.D. Cal. Jan. 13, 2014) (holding that class was sufficiently ascertainable because "the class definition clearly define[d] the characteristics of a class member by providing a description of the allegedly offending product and the eligible dates of purchase"); *L'Oreal*, 2013 WL 3353857, at *18 (holding that class was sufficiently ascertainable where "the requirement for membership in the class [was] whether a consumer purchased a product after a particular date").

Defendants argue that Plaintiffs' proposed class is insufficiently ascertainable because, although they know how many sales they have made, there are no records that could confirm class membership: purchasers likely have not retained proof of purchase for such low-cost products, and Defendants do not have any records identifying the consumers who purchased their products via retail intermediaries. Relying primarily on the Third Circuit's reasoning in *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir.

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | April 9, 2014 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

2013), Defendants contend that this inability to feasibly ascertain the identity (not the existence) of class members should preclude class certification because: (i) a self-identified class deprives Defendants of their due process rights to challenge individual members' claims; (ii) the finality of any judgment would be undermined because class members could later assert that fraudulent claims diluted their recovery; and (iii) the challenges in confirming class membership make a class action an inferior method of adjudicating this controversy. We disagree. Given that facilitating small claims is "[t]he policy at the very core of the class action mechanism," *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 617 (1997), we decline to follow *Carrera*. *See McCrary*, 2014 U.S. Dist. LEXIS 8443, at *24 ("*Carrera* eviscerates low price consumer class actions in the Third Circuit . . . . While this may now be the law in the Third Circuit, it is not currently the law in the Ninth Circuit.").

### i. Defendants Have No Due Process Interest in How Damages Are Distributed

While a defendant undeniably has an interest in not paying excess damages, this interest would only be implicated if (i) its aggregate liability could not be reliably determined; or (ii) the defendant is entitled to unclaimed portions of the judgment. Neither of these scenarios is at play here. First, Defendants have no cognizable interest in challenging class membership because its aggregate liability is tied to a concrete, objective set of facts—its total sales—that will remain the same no matter how many claims are submitted. *Cf. Marcus v. BMW of North America LLC*, 687 F.3d 583, 593-94 (3d Cir. 2012) (class was unascertainable because there were no records as to how many individuals fit the class definition); *Williams v. Oberon Media, Inc.*, 2010 WL 8453723, at *3 (C.D. Cal. Apr. 10, 2010) (same). Second, any unclaimed funds would likely be distributed pursuant to *cy pres* standards; in light of the relevant statutes' deterrence goals, such funds would not be returned to Defendants. *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307-08 (9th Cir. 1990) (reversion of funds to defendant is only appropriate "when deterrence is not a goal of the statute").

In short, because Defendants' liability will be determined in the aggregate, and they will have no claim to any leftover damages, whether any given individual is or is not a rightful class member is entirely immaterial to Defendants' monetary liability in this case. *See id.* at 1307 ("Where the only question is how to distribute the damages, the interests affected are not the defendant's."); *see also* 3 Conte & Newberg, Newberg on Class Actions § 10:5 (2002) ("Aggregate computation of class monetary relief is lawful and proper. . . . Challenges that such aggregate proof affects substantive law and otherwise violates the defendant's due process rights or jury rights to contest each member's claim individually will not withstand analysis."). Accordingly, Defendants have no due process interest in challenging class membership that stands in the way of certification. *See Hilao v. Estate of Marcos*, 103 F.3d 767, 786 (9th Cir. 1996) (noting that a defendant's interest is "only in the total amount of damages for which it will be liable," not "the identities of those receiving damage awards").

### ii. Class Members Would Be Bound by Final Judgment

In *Carrera*, the Third Circuit held that a defendant "has an interest in ensuring it pays only

E-FILED

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | April 9, 2014 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

legitimate claims" even when its total liability will not increase or decrease based on the number of claims submitted: "If fraudulent or inaccurate claims materially reduce true class members' relief, these class members could argue the named plaintiff did not adequately represent them because he proceeded with the understanding that absent members may get less than full relief . . . . [Defendant] has a substantial interest in ensuring this does not happen." 727 F.3d at 310. This is not a legitimate concern.

First, as a practical matter, even if we assume that some inaccurate or fraudulent claims will inevitably get past the claims administrator's screening mechanisms, it is highly unlikely that any true class member's recovery would, in fact, be diluted. The reality is the number of class members who actually file claims is relatively low. "[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3-5 percent." *Ferrington v. McAfee, Inc.*, 2012 U.S. Dist. LEXIS 49160, at *13 (N.D. Cal. Apr. 6, 2012). In all likelihood, then, any fraudulent or inaccurate claimants would merely be standing in the stead of legitimate ones, and no material dilution would occur.

Second, even if we assume that some pro rata dilution might occur, there is no case law suggesting that such dilution would threaten to de-legitimize the adequacy of the class representatives and undermine our ability to issue a final judgment by which class members would be bound. Defendants have been unable to find a single case where a class member has challenged the adequacy of a named plaintiff "because he proceeded with the understanding that absent class members may get less than full relief." *Carrera*, 727 F.3d at 310. In fact, "broad collateral review of the adequacy of representation (or the other due process requirements for binding absent class members) is not available." *Epstein v. MCA, Inc.*, 179 F.3d 641, 649 (9th Cir. 1999). Collateral review would only be permissible if this Court were to altogether fail to make explicit findings as to adequacy of representation before certifying the class or approving a settlement. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 588 (9th Cir. 2010). "Simply put, the absent class members' due process right to adequate representation is protected not by collateral review, but by the certifying court initially, and thereafter by appeal." *Epstein*, 179 F.3d at 997.

Moreover, even if collateral review were available, a court would have no sound basis for finding that the representatives are inadequate in this case. "Class representation is inadequate if the named plaintiff fails to prosecute the action vigorously on behalf of the entire class or has an insurmountable conflict of interest with other class members." *Hesse*, 598 F.3d at 589. "Proceed[ing] with the understanding that absent class members may get less than full relief," *Carrera*, 727 F.3d at 310, in no way implicates either of these grounds for finding inadequacy.[2] Nothing suggests that Plaintiffs here will not vigorously prosecute this action on behalf of the entire class. Nor can Defendants credibly charge that Plaintiffs have a conflict of interest with absent class members. To the extent that fraudulent and inaccurate claims might reduce true class members' recovery, Plaintiffs' recovery would be diluted to the same extent. They therefore share absent class members' interest in

---

[2] Notably, the Third Circuit itself "express[ed] no opinion on whether absent class members would be successful in arguing they were not adequately represented on this ground." 727 F.3d at 310 n. 7.

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | April 9, 2014 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

screening out potential bad claims. And they propose to do so by subjecting claims to "a thorough and detailed fraud analysis during the claims administration process." (Jt. Br. 8).[3] Finally, "[t]he due process touchstone of adequacy and fairness of representation must be judged in light of" the alternatives to class treatment. *See Blackie v. Barrack*, 524 F. 2d 891, 910 (9th Cir. 1975). Here, with so little money at stake, class members lack any incentive to pursue claims individually. Accordingly, even though some inaccurate or fraudulent claims may go undetected, a diluted recovery is surely preferable to absent class members' only realistic alternative: no recovery at all. *See Weiner*, 255 F.R.D. at 672.

### iii. Confirming Class Membership Is Not Overly Burdensome and Does Not Render Class Action an Inferior Method of Adjudicating This Controversy

That Plaintiffs' class definition may include "individuals that have inadequate proof to go forward with the class" is "not fatal to class certification and may be addressed later in the litigation." *Galvan v. KDI Distrib.*, 2011 U.S. Dist. LEXIS 127602, at *16 (C.D. Cal. Oct. 25, 2011). However, to the extent that determining individuals' entitlement to relief during the claims administration process creates manageability problems, these ascertainability issues must be addressed pursuant to Rule 23(b)(3). *See Red v. Kraft Foods*, 2012 WL 8019257, at *6 (C.D. Cal. April 12, 2012).

Generally, potential manageability problems during the damages phase of a class action do not defeat certification. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("[T]here is a big difference from the standpoint of manageability between the liability and remedy phases of a class action."); *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 550 (C.D. Cal. 2012) (certifying class even though there was "no practicable way" to identify the class members entitled to payment). In light of Plaintiffs' proposed claims administration procedure, we are confident that confirming individuals' class membership does not pose overwhelming manageability hurdles in this case. Moreover, should screening out fraudulent or inaccurate claims "prove unmanageable—something [we] do[] not anticipate—[we] 'retain[] the flexibility to address problems with a certified class as they arise, including the ability to decertify.'" *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 572 (W.D. Wa. 2012) (quoting *United Steel Workers Int'l Union v. ConocoPhillips Co.*, 593 F.3d 802, 807 (9th Cir. 2010)).

---

[3] This process would screen out, *inter alia*: (i) any claim form that stated that a product was purchased from a retailer that does not sell the product (by cross-checking them with records showing which retailers sold which products in which locations); (ii) any claim form that cannot properly identify the images featured on the product packaging; (iii) any claim form that misidentifies whether the particular product was in pill, liquid, or strip form; (iv) duplicate claims; and (v) known frequent fraudulent filers. Defendants' records could also be used to screen out any consumers who have already received refunds pursuant to Defendants' refund program. *See Wiener v. Dannon*, 255 F.R.D. 658, 670 (C.D. Cal. 2009). Finally, claimants will be required to affirm their statements under penalty of perjury.

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | April 9, 2014 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

Finally, the possibility that class members' individual recoveries will be diluted by inaccurate or fraudulent claims does not automatically make class treatment unwarranted. Given that class members have no other realistic way to pursue such low-value claims, class treatment cannot fairly be construed as an inferior method of adjudication here. *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (holding that where an individual action's "litigation costs would dwarf potential recovery," a "fair examination of alternatives can only result in the apodictic conclusion that a class action is the clearly preferred procedure"). Accordingly, neither manageability concerns nor the potential for diluted recovery defeat class certification because "a class action has to be unwieldy indeed before it can be pronounced an inferior alternative . . . to no litigation at all." *Carnegie*, 376 F.3d at 661.

In sum, Defendants present no persuasive arguments as to why an inability to absolutely confirm class members' identities should act as an independent bar to class certification. While it is undeniable that there is no surefire method to confirm on a class-wide basis whether class members actually purchased one of Defendants' products, this ascertainability problem is of no material relevance to Defendants, as it does not affect their bottom-line in any cognizable way, and there is no reason it should inure to Defendants' benefit. *See Six (6) Mexican Workers*, 904 F.2d at 1306-07; *Wiener*, 255 F.R.D. at 672 ("[T]he Ninth Circuit has minimized the weight to be placed on the existence of unknown class members.").

Accordingly, we view this class as sufficiently ascertainable because "it can be identified through reference to objective criteria." *L'Oreal*, 2013 WL 3353857, at *18; *see also Knutson v. Schwan's Home Serv., Inc.*, 2013 WL 4774763, at *5 (S.D. Cal. Sept. 5, 2013); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. July 30, 2013); *Agne*, 286 F.R.D. at 566; *Keilholtz v. Lennox Hearth Products, Inc.*, 268 F.R.D. 330, 336 (N.D. Cal. 2010); *Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 594 (C.D. Cal. 2008).[4] Under this definition of ascertainability (which comports with the rule's historic "liberal construction"), that class members' identities are unknown is insufficient to defeat class certification on its own. *See* Wright & Miller, 7A Federal Practice and Procedure (3d ed., 2013) § 1760;

---

[4] Defendants cite several cases from this Circuit in which courts have denied certification on ascertainability grounds. However, by and large, these cases are readily distinguishable, as they involve: (i) an unknown number of total class members, and/or (ii) class definitions based on imprecise, non-objective, or complex criteria such that people could not easily determine whether or not they were members. *See Astiana v. Ben & Jerry's Homemade*, 2014 WL 60097, at *3 (N.D. Cal. Jan. 7, 2014) (no records of how many purchases fell within class definition, and class definition was too complex to allow for self-identification); *Hernandez v. Chipotle Mexican Grill*, 2013 WL 6332002, at *1-2 (C.D. Cal. Dec. 2, 2013) (same); *In re Phenylpropanolamine Prod. Liab. Litig.*, 214 F.R.D. 614, 618 (W.D. Wash. 2003) (same); *Rowden v. Pac. Parking Sys.*, 282 F.R.D. 581, 585 (C.D. Cal. 2012) (no records of how many people fell within class definition); *Xavier v. Phillip Morris USA, Inc.*, 787 F. Supp. 2d 1075, 1089-90 (N.D. Cal. 2011) (same); *Williams v. Oberon Media, Inc.*, 2010 WL 8453723, at *3-4 (C.D. Cal. Apr. 10, 2010) (same).

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | April 9, 2014 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

*see also McCrary*, 2014 U.S. Dist. LEXIS 8443, at *25-26 ("[T]he fact that particular persons may make false claims of membership does not invalidate the objective criteria used to determine inclusion.").[5]

    **b.**  **Numerosity - 23(a)(1)**

  Defendants concede that they have sold millions of units of their children's cold and flu products nationwide. Accordingly, the numerosity requirement is satisfied here.

    **c.**  **Commonality - 23(a)(2)**

  Rule 23(a)(2) requires Plaintiffs to show that "there are questions of law or fact common to the class." These common issues must be material to the resolution of the claims asserted and demonstrate that the putative class members "suffered the same injury." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 (1992). After the Supreme Court's decision in *Dukes*, "what matters to class certification is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (internal quotations and alterations omitted).

  Here, all of Plaintiffs' claims share the same fundamental premise: Defendants misrepresent that their products safely and effectively treat flu and cold symptoms when, in fact, they have no medicinal value whatsoever. If Plaintiffs can prove that homeopathy is a "pseudoscience," as they claim, and that Defendants' products therefore uniformly do not perform as advertised, then the putative class will be entitled to relief under Plaintiffs' warranty and false advertising claims. "Because a determination of the truth or falsity of Defendant[s'] representation of [the products'] efficacy will resolve an issue that is central to the validity of each one of the claims in one stroke," and the products' efficacy can be established on a class-wide basis through clinical studies and expert testimony, Plaintiffs have sufficiently shown commonality. *See Delarosa*, 275 F.R.D. at 589.

  Defendants contend that commonality cannot be established here because: (i) each product uses different ingredients and treats different symptoms; (ii) whether the products' labels are misleading to consumers cannot be established on a classwide basis; and (iii) some consumers were satisfied with Defendants' products. These arguments do not withstand scrutiny. First, it is immaterial that

---

  [5] In this Circuit, classes that are objectively defined by the purchase of a low-cost product during a prescribed timeframe are routinely certified. *See, e.g.*, *McCrary*, 2014 U.S. Dist. LEXIS 8443, at *20 (joint supplements); *Kashi Co.*, 291 F.R.D. at 500 (snack products); *In re POM Wonderful*, 2012 WL 4490860 (C.D. Cal. 2012) (juice products); *L'Oreal*, 2013 WL 3353857, at *18 (hair products); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 560 (S.D. Cal. 2012) (multivitamins); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. Nov. 27, 2012) (tea products); *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 595 (C.D. Cal. 2011) (homeopathic products); *Johnson v. Gen. Mills, Inc.*, 276 F.R.D. 519, 524 (C.D. Cal. 2011) (yogurt products); *Zeisel v. Diamond Foods, Inc.*, 2011 U.S. Dist. LEXIS 60608, at *19-*21 (N.D. Cal. 2011) (walnuts); *Chavez v. Blue Sky Natural Bev. Co.*, 268 F.R.D. 365, 377 (N.D. Cal. 2010) (soda products).

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | April 9, 2014 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

Defendants' products contain different ingredients because Plaintiffs are challenging the products' common homeopathic preparation. The efficacy of homeopathy is a question that will "generate common answers apt to drive the resolution of the litigation." 131 S. Ct. at 2551.

Defendants' second argument also fails. For purposes of class certification, the UCL, FAL, and CLRA are materially indistinguishable. *See Delarosa*, 275 F.R.D. at 589 n. 3; *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011). Each statute allows Plaintiffs to establish the required elements of reliance, causation, and damages by proving that Defendants made what a reasonable person would consider a material misrepresentation. *Bruno*, 280 F.R.D. at 534; *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009); *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010). As such, whether or not Defendants' claims are misleading is an objective, classwide inquiry for purposes of the UCL, FAL and the CLRA. It is simply a matter of common sense that consumers who purchased Defendants' products did so in reliance on Defendants' claims that the products provided effective relief from cold and flu symptoms. *See Delarosa*, 275 F.R.D. at 586 ("The Court has no trouble finding that a 'reasonable man' would attach importance to a statement that a product, which appears to have no purpose other than to remedy colds, does, in fact, relieve the symptoms of a cold.").

Finally, Defendants' argument that any satisfied customers would not be entitled to restitution is without merit. Plaintiffs allege that Defendants' products are placebos, and that the products' "effectiveness arises solely as a result of the placebo effect." *See FTC v. Pantron I Corp.*, 33 F.3d 1088, 1100 (9th Cir. 1994). If Plaintiffs' allegations are proven true, Defendants' representations about the products' effectiveness would constitute false advertising "even though some consumers may experience positive results." *Id.* The efficacy claims would still be misleading because the products are "not *inherently* effective," their results instead "being attributable to the psychosomatic effect produced by the advertising and marketing of the product[s]." *Id.* (quotation marks and citation omitted).

Accordingly, because Plaintiffs' central theory of the case is susceptible to class-wide proof, Plaintiffs have satisfied the commonality requirement.

### d. Typicality - 23(a)(3)

A class representative must "possess the same interest and suffer the same injury" as the class members. *Gen. Tel. Co.*, 457 U.S. at 156 (internal quotation marks omitted). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citations omitted). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Defendants argue that Plaintiffs' claims are atypical because their children differ from the "average child taking the products." (Opp. at 12). This argument fundamentally misunderstands the typicality inquiry, which turns on Plaintiffs' legal theory, not the "specific facts from which it arose."

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | April 9, 2014 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

*See Hanon*, 976 F.2d at 508. Here, Plaintiffs' theory of the case is that Defendants' products are uniformly ineffective because of their homeopathic preparation. Because the extent to which Plaintiffs' children differ from absent class members is immaterial to Plaintiffs' ability to prove the general inefficacy of homeopathy, any such differences are irrelevant for purposes of assessing the typicality of Plaintiffs' claims.

Defendants also argue that Plaintiffs' claims are atypical because absent putative class members have purchased different products, and these different products "have different ingredients to treat different symptoms and are advertised differently." (Opp. at 12). This argument was unpersuasive in the commonality context, and it fares no better here. "The typicality requirement does not mandate that the products purchased . . . must be the same as those of absent class members." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 593 (N.D. Cal. Mar. 28, 2010). Here, Plaintiffs allege that the same homeopathic preparation renders all of Defendants' products ineffective, and that misrepresentations about the products' efficacy are uniformly made across Defendants' product line. *See Rivera v. Bio Engineered Supplements & Nutrition, Inc.*, 2008 WL 4906433, at *6-7 (C.D. Cal. Nov. 13, 2008). Accordingly, the "various products purchased . . . do not negate a finding of typicality" because Plaintiffs allege that the class members' injuries "arise[] from a common wrong." *See Pecover v. Electronic Arts Inc.*, 2010 WL 8742757, at *11 (N.D. Cal. Dec. 21, 2010). Plaintiffs' claims are therefore "reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020; *see also, e.g.*, *Galluci v. Boiron, Inc.*, 2012 WL 5359485, at *3 (S.D. Cal. Oct. 31, 2012); *Chavez*, 268 F.R.D. at 378; *Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. 233, 244 (D.N.J. 2008) ("[T]he fact that the named plaintiffs did not purchase some of the products at issue does not render plaintiffs' claims atypical from the potential class members nor does it defeat commonality.").

e.  **Adequacy - 23(a)(4)**

Two questions determine whether the adequacy requirement is satisfied: "(1) do the named plaintiffs and their counsel have any conflicts of interests with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, Defendants do not raise any adequacy arguments that are divorced from their ascertainability concerns. Based on Plaintiffs' showing, we conclude that the named Plaintiffs and their counsel "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

2.  **23(b)(3) Requirements**

a.  **Predominance**

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). It focuses on the relationship between the common and individual issues, requiring that the common issues be qualitatively substantial in relation to the issues peculiar to individual class members. *See Hanlon*, 150

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | April 9, 2014 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

F.3d at 1022.  The predominance standard is "far more demanding" than Rule 23(a)'s commonality requirement.  *Amchem*, 521 U.S. at 623-24.  Where dissimilarities among class members do not impede the generation of common answers, the post-*Dukes* predominance inquiry requires us to consider whether other issues unique to individual class members are likely to render adjudication by representation impractical.  *See* 131 S. Ct. 2541 at 2256.

    In the predominance section of their brief, Defendants reassert the arguments they raised concerning commonality:  (i) each product uses different ingredients and treats different symptoms; (ii) consumers purchase Defendants' products for many different reasons apart from the representations made on the packaging; and (iii) some consumers were satisfied with Defendants' products.  The individual questions associated with these three issues do not overwhelm the far more substantial common questions that drive Plaintiffs' theory of the case.

    First, the focus of Plaintiffs' case is the products' homeopathic preparation and lack of scientific testing, not their individual ingredients.  The crux of Plaintiffs' allegations is that Defendants' products "contain no active ingredients at all" because of their common homeopathic dilution.  (Reply at 3).  As a result, the products' unique ingredients are relatively unimportant and do not threaten to predominate.

    Second, that a large number of factors may have gone into each consumer's decision to purchase Defendants' products is immaterial here given the objective materiality of the alleged misrepresentations.  *See, e.g.*, *Stearns v. Ticketmaster*, 655 F.3d 1013, 1020 (9th Cir. 2011); *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292 (2002).  "Defendant[s] cannot reasonably argue that a putative class member would purchase a product that does not work."  *McCrary*, 2014 U.S. Dist. LEXIS 8443, at *44.  Accordingly, the particular circumstances under which each individual purchase was made cannot "transform the common question" of whether the alleged misrepresentations were objectively material "into a multitude of individual ones."  *Mass. Mut. Life Ins.*, 97 Cal. App. 4th at 1292.

    Finally, Defendants' argument that the products "worked for some individual class members goes to the proof of the merits of Plaintiff[s'] claim."  *Delarosa*, 275 F.R.D. at 594.  Such an argument that challenges the merits of Plaintiffs' allegation about the uniform inefficacy of the products has no bearing on the Rule 23 predominance inquiry.  *See id*; *see also Blackie*, 524 F.2d at 901.  Accordingly, Plaintiffs have sufficiently shown that "common questions present a significant aspect of the case" to satisfy the predominance requirement.  *Hanlon*, 150 F.3d at 1022.

        **b.**     **Superiority**

    Rule 23(b)(3) also requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy."  "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution."  *Id.* at 1023.

    Aside from the ascertainability arguments addressed in Section II.B.1.a.iii, *supra*, Defendants

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | April 9, 2014 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

also argue that a class action is not superior here because Defendants have a refund program in place that would serve the needs of dissatisfied customers "without needless judicial intervention, lawyer's fees, or delay." (Opp. at 18 (quoting *In re Aqua Dots Prods. Lit.*, 270 F.R.D. 377, 385 (N.D. Ill. 2010))). This argument exclusively relies on a Northern District of Illinois case that was later overturned by the Seventh Circuit. We decline to take this approach, as it does not comport with the plain language of Rule 23, which directs courts to consider other available methods of *adjudication*. *See In re Aqua Dots Products Liability Litig.*, 654 F.3d 748, 751-52 (7th Cir. 2011) ("[T]he advisory committee's notes demonstrate that Rule 23(b)(3) was drafted with the legal understanding of 'adjudication' in mind: the subsection poses the question whether a single suit would handle the dispute better than multiple suits."). We are foreclosed from "disregard[ing] the text of Rule 23" simply because we think we have "a better idea." *Id.* at 751. Accordingly, Defendants' refund program does not defeat superiority.

Based on the foregoing, all of the Rule 23(a) and (b)(3) requirements are satisfied. Accordingly, we **GRANT** Plaintiffs' motion to certify a (b)(3) class.

### 3. 23(b)(2) Requirements

To certify a (b)(2) class, we must find that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Defendants argue that Plaintiffs cannot represent a (b)(2) class because they lack Article III standing to seek injunctive relief. We agree. A plaintiff only has standing to sue for injunctive relief if "there is a real and immediate threat of repeated injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1982). No such realistic threat exists here because Plaintiffs have no reason to re-purchase cold and flu products that they consider to be completely worthless and ineffectual.

Plaintiffs do not suggest that they are likely to purchase Defendants' products in the future. Instead, they contend that the Article III standing requirement for injunctive relief does not apply in the consumer protection context. Some district courts in this Circuit have taken this approach, holding that a plaintiff in a false advertising case retains standing to pursue injunctive relief so long as the products continue to be deceptively marketed and sold by the defendant. *See, e.g.*, *Henderson v. Gruma Corp.*, 2011 WL 1362188, at *8 (C.D. Cal. Apr. 11, 2011). These courts have reasoned that to hold otherwise would severely undermine the efficacy of California's consumer protection laws. *Id.* at *7. We decline to adopt this approach. We find more persuasive the courts that have insisted that it is improper "to carve out an exception to Article III's standing requirements to further the purpose of California consumer protection laws." *Mason v. Nature's Innovation, Inc.*, 2013 WL 1969957, at *5 (S.D. Cal. May 13, 2013); *see also Delarosa v. Boiron, Inc.*, 2012 WL 8716658, at *4-5 (C.D. Cal. Dec. 28, 2012) ("To the extent that *Henderson* and other cases purport to create a public-policy exception to the standing requirement, that exception does not square with Article III's mandate"). Accordingly,

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | April 9, 2014 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

Plaintiffs lack Article III standing to pursue injunctive relief, and their motion to certify a (b)(2) class is **DENIED**.

### III.    Conclusion

Based on the foregoing, Plaintiffs' Motion is **GRANTED in part and DENIED in part**:

(1) We hereby **GRANT** Plaintiffs' Motion to certify the following Rule 23(b)(3) classes for monetary relief with respect to Claims 1, 3, 4, 6, 7, and 8:

(a) A nationwide class of all persons in the United States who purchased the following Hyland's products on or after March 8, 2008: (i) Cold 'n Cough 4 Kids, (ii) Cough Syrup with 100% Natural Honey 4 Kids, (iii) Sniffles 'n Sneezes 4 Kids, (iv) Cold Relief Strips 4 Kids with Zinc, and (v) Nighttime Cold 'n Cough 4 Kids.

(b) A 49-state class of all persons in the United States except for those in California who purchased Hyland's Complete Flu Care 4 Kids on or after March 8, 2008.

(2) Pursuant to Rule 23(g), we appoint the law firms of Bursor & Fisher, P.A., and Faruqi & Faruqi, LLP as class counsel.

(3) We appoint Plaintiffs Enzo Forcellati and Lisa Roemmich as class representatives.

(4) We **DENY** Plaintiffs' request to certify a Rule 23(b)(2) class for injunctive relief.

(5) Finally, because Plaintiffs have provided no reason for seeking alternative relief under the NJCFA and MMPA, we **DENY** certification of Plaintiffs' proposed New Jersey and Missouri subclasses.

**Within thirty (30) days hereof**, class counsel **SHALL** meet and confer with defense counsel regarding the proposed method and form of class notice. Any agreed-upon notice shall be presented to the Court for approval **within fourteen (14) days thereafter**. In the event the Parties cannot agree upon the form of the notice, each side shall file its proposal **within sixty (60) days** of this Order.

**IT IS SO ORDERED.**

|  | -- | : | -- |
|---|---|---|---|
|  | Initials of Deputy Clerk | | Bea |