E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | January 12, 2015 |
|---|---|---|---|

| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* |
|---|---|

| **Presiding: The Honorable** | **GEORGE H. KING, CHIEF U. S. DISTRICT JUDGE** |
|---|---|

| Beatrice Herrera | N/A | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**   **(In Chambers) Order Re:** Defendants Hyland's, Inc., Standard Homeopathic Company, and Standard Homeopathic Laboratories Inc.'s Motion for Summary Judgment (Dkt. 159)

This matter is before us on the above-captioned Motion. We have considered the papers filed in support of and in opposition to the Motion and deem this matter appropriate for resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows:

**I.      Background**

Plaintiff Enzo Forcellati ("Forcellati") filed this class action on March 8, 2012, asserting eight claims against Defendants Hyland's Inc., Standard Homeopathic Laboratories, and Standard Homeopathic Company ("Defendants") relating to the companies' over the counter ("OTC") homeopathic cold and flu remedies. (Dkt. 1.) On June 1, 2012, we dismissed Forcellati's unjust enrichment claim in our opinion *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1158 (C.D. Cal. 2012). On November 8, 2012, we consolidated Forcellati's case with another similar class action, and Plaintiff Lisa Roemmich ("Roemmich") was designated as an additional class representative alongside Forcellati (collectively, "Plaintiffs"). (Dkt. 43.) A consolidated complaint was then filed. (Dkt. 44.) On April 9, 2014, we certified the following classes:

> a) A nationwide class of all persons in the United States who purchased the following Hyland's products on or after March 8, 2008: (I) Cold 'n Cough 4 Kids, (ii) Cough Syrup with 100% Natural Honey 4 Kids, (iii) Sniffles 'n Sneezes 4 Kids, (iv) Cold Relief Strips 4 Kids with Zinc, and (v) Nighttime Cold 'n Cough 4 Kids.

> b) A 49-state class of all persons in the United States except for those in California who purchased Hyland's Complete Flu Care 4 Kids on or after March 8, 2008.

(Dkt. 144 at 15.) The classes were certified under Rule 23(b)(3) to seek monetary relief for violations of the Magnusson-Moss Act ("MMA"), breach of warranty, violations of California's Consumer Legal Remedies Act ("CLRA"), violations of California's False Advertising Law ("FAL"), and violations of California's Unfair Competition Law ("UCL"). (*Id.*)

E-FILED
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

The six products at issue in this class action are OTC homeopathic remedies for treating cold and flu symptoms in children (collectively, the "Class Products"). (Dkt. 168, SUF D1-6.) Plaintiffs contend that Defendants uniformly misrepresent these products as providing fast, safe, and effective relief when they are actually "nothing more than sweetened, flavored water with . . . highly diluted concentrations of the products' so-called 'active ingredients.'" (Cons. Compl. ¶¶ 2, 15, 19.)

According to his deposition testimony, Forcellati purchased Defendants' Cold n' Cough 4 Kids ("CC4K") sometime around December 2011 when his son was experiencing cold symptoms. (SUF D36-38.) Forcellati purchased the product at least in part because of representations on the label that it was for children ages 2 and up and was "safe," "effective," and "quick acting." (SUF D39.) Forcellati says that his son did not experience any relief from taking the product. (SUF D38.) Lisa Roemmich also bought CC4K for her child, sometime after 2009, when her daughter had a cold. (SUF D44-45.) She relied solely on the representation appearing on the product labeling that the product was "one hundred percent natural and safe and effective." (SUF D46.)

## II.     Legal Standard

We may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment, the district court's "function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

The moving party bears the initial responsibility to point to the absence of evidence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its initial burden of demonstrating that summary judgment is proper, "[t]he nonmoving party must come forward with specific facts showing there is a genuine issue for trial" in order to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citations omitted).

Where the nonmoving party has the burden of proof at trial, the moving party can carry its initial burden by "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim . . . [or by] demonstrat[ing] . . . that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex*, 477 U.S. at 323. The burden then shifts to the nonmoving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex*, 477 U.S. at 324). This means that the evidence is such that "a jury could reasonably render a verdict in [the nonmoving party's] favor." *Id.* (citing *Anderson*, 477 U.S. at 252). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## III.    Preemption

E-FILED
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

Defendants claim that Plaintiffs' state law claims are preempted because the Class Products are subject to federal regulation by the Food & Drug Administration ("FDA"). "Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010). Defendants base their preemption argument on a preemption clause in the Food, Drug, and Cosmetic Act ("FDCA"). As such, we treat their argument as one of express preemption.[1]

21 U.S.C. § 379r of the FDCA expressly preempts certain state laws. Section 379r(a) generally preempts state law claims that impose a requirement on a drug regulated by the FDA that "is different from or in addition to, or that is otherwise not identical with" a requirement under the FDCA, the Poison Prevention Act of 1970, or the Fair Packaging and Labeling Act. Homeopathic drugs fall under an exception to section 379r(a) found in subsection (d). *See Delarosa v. Boiron, Inc.*, 818 F. Supp. 2d 1177, 1185 (C.D. Cal. 2011). Subsection (d), however, is not very different from subsection (a). For drugs that fall under subsection (d), state laws are preempted if they impose a requirement that is "different from or in addition to, or that is otherwise not identical with" FDCA regulations and certain FDCA amendments *and* if they relate to the "same subject as" FDCA requirements. 21 U.S.C. § 379r(d).

Defendants argue that Plaintiffs are attempting to impose a requirement that homeopathic drugs must undergo randomized placebo-controlled trials ("RCTs") before being marketed as effective, something which the FDA does not require of homeopathic drugs. All that the FDA requires of homeopathic drugs is that they comply with basic labeling requirements. *See* Food & Drug Admin., Inspections, Compliance, Enforcement, and Criminal Investigations, Compliance Policy Guides § 400.400, "Conditions Under Which Homeopathic Drugs May be Marketed," (hereinafter "CPG § 400.400") (discussing labeling requirements for OTC homeopathic drugs). Homeopathic products must include information on the label such as "adequate directions for use, a statement of ingredients, the dilution, and at least one major OTC indication for use." *Delarosa*, 818 F. Supp. 2d at 1189 (citing 21 C.F.R. §§ 201.5, 201.10, 201.61, & 201.62.) Homeopathic drugs do not need to undergo any testing before being sold to the public, and compliance with FDA labeling requirements does "not establish that [a homeopathic drug] has been shown by appropriate means to be safe, effective, and not misbranded for its intended use." CPG § 400.400. According to Defendants, since an RCT requirement would be additional to or different from what the FDA requires of homeopathic drugs, Plaintiffs' state law claims should be preempted.

Defendants' argument fails from the outset because Plaintiffs are not making a substantiation claim. Plaintiffs are not arguing that Defendant's use of the word "effective" is false or misleading because Defendants did not conduct tests to substantiate their claim before marketing their product.

---

[1] State law claims of this sort would not likely be preempted under conflict or field preemption analysis. *See Delarosa v. Boiron, Inc.*, 818 F. Supp. 2d 1177, 1190-92 (C.D. Cal. 2011) (analyzing similar claims under conflict and field preemption and finding they are not preempted).

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

Rather, Plaintiffs claim that using the word "effective" is false because Defendants' products are not effective, period. *See, e.g.*, Cons. Compl. ¶ 129 ("Defendants maintained that the Cold and Flu Remedies were fast acting and effective when they were not."). A claim of this sort is not inconsistent with FDA labeling requirements. The FDA prohibits the sale of "misbranded" drugs. 21 U.S.C. § 331(a). A drug is misbranded if its labeling is "false or misleading in any particular." *See id.* § 352. The FDCA's definition of "labeling" includes all "written, printed, or graphic matter" appearing on the product, and the definition of "misleading" extends "not only [to] representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material." 21 U.S.C. § 321(m) & (n). Plaintiffs' claim that the Class Products are falsely described as effective and fast-acting on their labels fits comfortably within the FDA's prohibition of misbranded drugs. Thus, Plaintiffs are not imposing a requirement that is in addition to, different from, or otherwise not identical with FDA requirements.

Looking to the legislative history of 21 U.S.C. § 379r confirms that Congress did not intend to preempt claims like those presented by Plaintiff. When section 379r was added to the FDCA in 1997, the House Conference Report contained a comment explicitly addressing the effect of the preemption clause on state false advertising claims:

> All states have laws prohibiting false and misleading advertising . . . . These laws have been applied to prohibit unsubstantiated claims for nonprescription drugs and cosmetics, and to require corrective advertising. *This provision is not intended to preempt the application of these laws under such circumstances*.
>
> The Conference Committee intends to make clear that "Little FTC" laws . . . are not preempted. The scope of national uniformity is modified to only apply to state requirements that relate to labeling and packaging or, if they go beyond labeling and packaging, to requirements relating to warnings. Thus, *advertising issues relating* to claims substantiation, fair balance, and *misleading or deceptive claims are outside the scope of preemption*.

H.R. Conf. Rep. 105-399, 103, 1997 U.S.C.C.A.N. 2880, 2893. In light of this legislative history, it is clear that 21 U.S.C. § 379r was not meant to preempt Plaintiffs' claims.

The two cases that Defendants cite in support of their preemption argument are inapposite. In *Green v. BDI Pharmaceutical*, a state appellate court found that state law failure-to-warn claims were preempted by section 379r with respect to certain non-homeopathic drugs. 803 So. 2d 68, 74 (La. App. 2 Cir. 2001). But Plaintiffs have not raised any failure-to-warn claims in this case and the reasoning in *Green* was based in part on FDA regulations that do not apply to homeopathic drugs. As for *National Council Against Health Fraud, Inc. v. King Bio Pharmaceutical, Inc*., there is no discussion of preemption in the opinion at all. It has no bearing on our preemption analysis. *See* 107 Cal. App. 4th 1336 (2003). Accordingly, these cases do not persuade us that Plaintiffs' claims should be preempted by the FDCA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

### IV. The CLRA, UCL, and FAL

Defendants claim that Plaintiffs have no evidence of any actionable misrepresentations under the CLRA, UCL, or FAL. All three California laws require proof that consumers are "likely to be deceived" by Defendants' representations, which is otherwise known as the "reasonable consumer standard." *See Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1125 (C.D. Cal. 2010); *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 682, (2006) ("A reasonable consumer standard applies when determining whether a given claim is misleading or deceptive.").[2]

In *King Bio*, the California Court of Appeal made clear that the reasonable consumer standard cannot be met by demanding that defendants substantiate their advertising claims. 107 Cal. App. 4th at 1345; *see also Fraker v. Bayer Corp.*, 2009 WL 5865687, at *8 (E.D. Cal. Oct. 6, 2009) (concluding, in light of *King Bio*, that "to maintain an action . . . for false or misleading advertising, . . . Plaintiff will be required to adduce evidence sufficient to present to a jury to show that Defendant's advertising claims with respect to Product [sic] are actually false; not simply that they are not backed up by scientific evidence."). Defendants claim that *King Bio* is controlling here in light of its "nearly identical facts." (Jt. Br. at 22.) We disagree. The similarities between this case and *King Bio* are mostly superficial because, as we have already noted, Plaintiffs are not alleging that Defendants failed to substantiate their representations.

In *King Bio*, a plaintiff brought a class action under the UCL and FAL against a seller of homeopathic remedies, claiming they were ineffective. 107 Cal. App. 4th at 1340. At trial, the plaintiff failed to produce any test or scientific evidence regarding the efficacy of the defendant's products or even anecdotal evidence that the products were ineffective. *Id.* at 1341. Instead, the plaintiff argued that because the defendant's products were drugs, they should be held to the standards expected of drugs by the scientific community and that any claims "regarding the efficacy of drugs [should be] supported by acceptable scientific evidence." *Id.* The plaintiff further argued the normal burden of proof at trial should be reversed such that the defendant would have to affirmatively prove that its products worked, rather than the plaintiff having to prove that they do not work. *Id.* The defendant moved for a directed verdict after trial, the trial court granted it, and the California Court of Appeals affirmed. *Id.* at 1340.

Unlike the plaintiff in *King Bio*, Plaintiffs are not arguing that Defendants have the burden to prove that their products are effective or that they must conduct tests showing their products are effective; Plaintiffs argue that they can affirmatively prove that the Class Products do nothing. Plaintiffs' argument relies on studies and expert evidence—but that is appropriate under *King Bio*. The state court in *King Bio* explicitly acknowledged that plaintiffs may, without resorting to any

---

[2] Defendants claim that Plaintiffs are not arguing that the representations were misleading, only that they were false. That is incorrect. The Complaint uses the word "misleading" or a variation thereof over a dozen times. (Dkt. 44, Cons. Compl., ¶¶ 3, 46, 55, 56, 61, 70, 71, 73, 90(d), 135-38, 141-42.) Plaintiffs also devote an entire section of the Joint Brief to arguing that Defendants' claims are misleading. (Jt. Br. at 30-32.) And we already indicated that a "misleading" theory would apply in this case because it would be misleading to call the products "effective" if they are only as effective as a placebo. *Forcellati v. Hyland's Inc.*, 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014).

Case 2:12-cv-01983-GHK-MRW Document 179 Filed 01/12/15 Page 6 of 10 Page ID #:8135

E-FILED
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

impermissible substantiation argument, establish "[t]he falsity of [] advertising claims . . . by testing, scientific literature, or anecdotal evidence." 107 Cal. App. 4th at 1348.

Plaintiffs' evidence creates a triable issue of fact on whether the Class Products are misrepresented as effective and fast-acting. Plaintiffs' prime evidence is a study that the Defendants commissioned themselves to test the efficacy of CC4K. Defendants hired Dr. James A. Taylor to perform a study (the "Taylor Study") on CC4K. Dr. Taylor studied the effectiveness of CC4K by administering a total of 982 doses of either CC4K or a placebo to 263 patients. (SUF P120-21.) According to Dr. Taylor's deposition testimony, the result of the study showed that there was no statistically significant difference between CC4K and a placebo. (SUF P124; Taylor Dep. II, at 96:19-97:10, 113:2-114:7.)

These results tend to show that CC4K has no more effect than a sugar pill, and if that is true, then at least one of the Class Products could not possibly be "effective" in any sense of the word that a reasonable consumer would understand it to mean. *See FTC v. Pantron I Corp.*, 33 F.3d 1088, 1100 (9th Cir. 1994) ("Where, as here, a product's effectiveness arises solely as a result of the placebo effect, a representation that the product is effective constitutes a 'false advertisement' even though some consumers may experience positive results."). Defendants claim that the Taylor Study—the study they commissioned themselves—should not be credited as evidence because one of Plaintiffs' experts, Dr. R. Baker Bausell, expressed reservations about its methodology. (Dkt. 160, Jt. App. at 1960.) But this argument is highly misleading. Dr. Bausell noted that there was an "unusually high attrition rate" in the Taylor Study—out of 263 study subjects, Dr. Taylor obtained only 155 outcome dosage logs from the participants. Dr. Bausell was concerned that the participants with no reported logs "were systematically different (e.g., *dissatisfied with the efficacy of the therapy and the placebo*) from those that did remain in the trial" because "typically this is the reason for participants dropping out of a trial." *Id.* (emphasis added). In other words, Dr. Bausell was worried that the study might be *underreporting* the number of people who found the product or the placebo to have no effect. To the extent that he is questioning the reliability of the study, Dr. Bausell is questioning it in a way that makes the results of the study potentially even more harmful to Defendants' claim that the Class Products are effective. Despite this concern, Dr. Bausell still considered the study results to be "definitively negative" in that they show CC4K is no more effective than a placebo. *Id.* at 1961, 1965.

Defendants also argue that the Taylor study cannot be used to create a triable issue of fact on all the Class Products because the study was limited to only one of the Class Products. We disagree. The theory behind Plaintiffs' class action is that the homeopathic method of preparing the active ingredients in the Class Products renders their active ingredients ineffective. The CC4K study suggests this theory may be correct as to one of the Class Products. It is reasonable to infer that the theory may be correct as to all the Class Products as well, since they are all prepared using the same homeopathic methods.

Furthermore, Plaintiffs have other evidence suggesting the Class Products are ineffective. Plaintiffs submitted declarations from two experts, Drs. Grollman and Ernst, who both opine that the Class Products are ineffective based on their knowledge of homeopathy and of clinical studies that have been performed on homeopathic remedies. Dr. Grollman claims that the fundamental concepts of

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

homeopathic preparation run contrary to established medical principles. (*See* J.A. at 1699, Expert Rep. of Grollman, Ex. 8 ("Suggesting that extreme dilutions of drugs should be associated with observable biologic effects and actions is, however, wholly contrary to the proven dose-response relationships of modern pharmacology and medicine in which the intensity of drug action is proportional, not inversely proportional, to dose.").) Dr. Grollman also examined the specific ingredients and quantities of ingredients listed in the Class Products and concluded, based on his medical and scientific knowledge, that the Products should not have any positive effect in treating cold and flu symptoms. (*Id*. at 1703-1709.) Dr. Ernst corroborates Dr. Grollman's conclusions based on his review of published clinical trials regarding homeopathy: "A systematic review of the totality of the most reliable trial data on homeopathy to date indicates that homeopathic remedies are no more effective than placebos." (*See* J.A. at 1755, Expert Rep. of Ernst, Ex. 9.) These reports may be circumstantial evidence in that the experts did not test the Class Products directly through clinical trials, as was done in the Taylor Study, but they give rise to a reasonable inference that the Class Products cannot be effective because the homeopathic methods of preparation render their active ingredients ineffective. When these reports are considered alongside the Taylor Study, there is undoubtedly a triable issue of fact as to whether Defendants have made misrepresentations regarding the Class Products.[3]

## V. Breach of Warranty

Plaintiffs' breach of warranty claim is premised on the theory that Defendants warranted that their products were effective by labeling them as such and breached that promise by providing an ineffective product. As with the UCL, FAL, and CLRA claims, Defendants argue that there is no triable issue on the breach of warranty claim because Plaintiffs have no evidence that the Class Products are ineffective. Our reasoning in rejecting that argument in the previous section applies equally here. Plaintiffs have produced evidence showing a factual dispute as to whether the products work. Therefore, we cannot conclude as a matter of law that Defendants did not breach any alleged warranty.

## VI. Magnusson Moss Warranty Act

Defendants contend that Plaintiffs are barred from asserting a claim under the MMWA because of 15 U.S.C. § 2311(d). Section 2311(d) states that the MMWA "shall be inapplicable to any written warranty the making or content of which is otherwise governed by Federal law." This statute is not relevant to this case. Section 2311(d) applies only to claims relating to "written" warranties. The MMWA has a narrow definition of "written warranty," and Defendants' labeling of the Class Products as effective and fast-acting does not fall within that definition. The MMWA defines "written warranty" as follows:

---

[3] Notably, Defendants present expert reports of their own suggesting that the homeopathy is effective. (*See* J.A., Exs. 2, 40-43). But these reports merely reinforce our conclusion that there is a factual dispute over the Class Products' efficacy.

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and *affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time*, or

(B) *any undertaking in writing* in connection with the sale by a supplier of a consumer product *to refund, repair, replace, or take other remedial action* with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6) (emphasis added).

Labeling the Class Products as effective and fast-acting does not fit either definition of a written warranty. Subsection (B) is clearly inapplicable because Defendants never undertook to "refund, repair, replace, or take other remedial action" if the Class Products were not effective. Subsection (A) is also inapplicable. Defendants did not promise that their products "will meet a specified level of performance over specified period of time." By claiming that the Class Products are effective and fast-acting, they promised an unspecific level of performance over an unspecified period of time. Nor have Defendants promised that the Class Products are "defect free," because guaranteeing that something is effective or fast-acting is not a guarantee that it will not have flaws. *See In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1102 (C.D. Cal. 2012) (concluding that "100% Natural" is not a written warranty under the MMWA because it is not "a promise to take any remedial action" or "an assertion that the product is defect free or that it will meet a specific level of performance over a specified period of time"); *see also Semitekol v. Monaco Coach Corp.*, 582 F. Supp. 2d 1009, 1027 (N.D. Ill. 2008); *Kelley v. Microsoft Corp.*, 2007 WL 2600841, at *3-5 (W.D. Wash. Sept. 10, 2007); *In re Sears, Roebuck & Co. Tools Mktg. and Sales Practices Litig.*, 2006 WL 1443737, at *4 (N.D. Ill. May 17, 2006).

Since the representations appearing on the labels of the Class Products do not constitute a written warranty under the MMWA, section 2311(d) is wholly inapplicable. This does not mean that Plaintiffs have no MMWA claim. MMWA claims may be based on implied warranties. The MMWA defines an implied warranty as any "implied warranty arising under State law." 15 U.S.C. § 2301(7). Under California law, all products have an implied warranty that they are "fit for the ordinary purposes for which such goods are used" and "conform to the promises or affirmations made on the container or label." Cal. Civ. Code § 1791.1(a). Plaintiffs have alleged a breach of an implied warranty by claiming that the Class Products are not effective and fast-acting as advertised and do not work for their intended purpose as cold and flu remedies. As discussed, Plaintiffs have raised a triable issue of fact on whether Defendants have breached this warranty. Thus, there is also triable issue of fact on Plaintiffs' MMWA claim.

**VII. Punitive Damages**

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

Under California law, punitive damages may be awarded if there is "clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). Section 3294(c) of the California Civil Code defines the operative words of the statute as follows:

(1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.

(2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.

(3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

In federal court, when "ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254. Thus, we must decide whether a reasonable jury could find, based on the evidence on the record, that the Plaintiffs have shown by clear and convincing evidence that Defendants have been guilty of fraud, oppression, or malice. *See id.* at 256-57.

Viewing the evidence in the light most favorable to the Plaintiffs, we conclude that Plaintiffs have presented sufficient evidence for a reasonable jury to find that Defendants engaged in fraud by claiming the Class Products were effective. Plaintiffs' evidence permits a reasonable inference that Defendants knew their products were ineffective and intentionally misrepresented them as such. The CEO of Hyland's Inc., Dr. Bornenman, has a Masters in chemistry and a PhD in health policy. (SUF P193-94.) Hyland's Director of Scientific Affairs, Dr. Iris Bell, has a PhD in neuro-biobehavioral sciences from Stanford University. (SUF P196-97.) A jury could infer from these executives' high levels of scientific education that they were aware that homeopathic preparation would render the active ingredients in the Class Products ineffective. Plaintiffs also cite an email from Dr. Bell in which she admits that homeopathic remedies may not "work on the population at large" and that when tested "broadly" they may not be found to "work." (J.A., Ex. 44.) From this statement, a jury could infer that Defendants were aware that it was misleading to call the products effective but deliberately advertised them as such anyway. Accordingly, there is sufficient evidence to present the question of punitive damages to a jury.

### VIII. Conclusion

In light of the foregoing, the Defendants' Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | January 12, 2015 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

|  | -- | : | -- |
|---|---|---|---|
| Initials of Deputy Clerk | | Bea | |