E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | February 17, 2016 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

| Presiding: The Honorable | GEORGE H. KING, CHIEF U.S. DISTRICT JUDGE | |
|---|---|---|
| Beatrice Herrera | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** **(In Chambers) Order Re:** Defendants' Motion to Judicially Estop Plaintiffs from Changing Case Theories or, in the Alternative, Decertify the Class and Reopen Discovery (Dkt. 252)

This matter is before us on Defendants' Motion to Judicially Estop Plaintiffs from Changing Case Theories or, in the Alternative, Decertify the Class and Reopen Discovery ("Motion"). (Dkt. 252.) We have considered the papers filed in support of and in opposition to this Motion and deem this matter appropriate for resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows:

**I.   BACKGROUND**

Trial was scheduled to begin in this matter on October 27, 2015. On October 20, 2015, Plaintiffs filed their trial brief, in which they claimed for the first time that "[t]his should not be a trial about 'homeopathy,'" "[n]one of Plaintiffs' claims concern 'homeopathy' in general," and that their "central theory of the case" is that the products at issue "are placebos." (Dkt. 238, Pls.' Tr. Br. at 1.) Two days later, Defendants filed an ex parte application to judicially estop Plaintiffs from changing case theories or, in the alternative, to continue the trial. (Dkt. 239.)

On October 23, 2015, we issued an order noting that from the face of the ex parte application and Plaintiffs' trial brief, "it appear[ed] to us that there may have been a shift in Plaintiffs' theory of the case, which is inconsistent with what they have previously argued. . . . Up until this point, there . . . had been no indication that Plaintiffs would premise their case on an argument that Defendants' products were not even homeopathic." (Dkt. 245.) Due to this possible change in case theories, the Parties' untimely filing of their motions *in limine*, and a last-minute request to rule on various objections to Plaintiffs' lodged exhibits, we determined that the matter was "not ready for trial." (*Id.* at 2.) Accordingly, we vacated the trial date. (*Id.*)

On November 4, 2015, we issued an order requiring the Parties to meet and confer regarding the relief sought by Defendants in the ex parte application. (*See* Dkt. 249.) We stated that if Defendants still sought relief after the meet and confer, they shall file a duly noticed motion in compliance with the

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | February 17, 2016 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

Local Rules.[1]  (*Id.*)  On December 11, 2015, Defendants filed the instant Motion, arguing that Plaintiffs must be judicially estopped from changing case theories.  In the alternative, Defendants argue that the class should be decertified, and they should be allowed to conduct discovery on Plaintiffs' new theory.  Plaintiffs oppose the Motion.

II.     ANALYSIS

Defendants argue that, from the inception of this litigation, Plaintiffs' theory of the case has been that "homeopathy is a pseudoscience and that the homeopathic preparation of Defendants' products renders them ineffective."  (Mot. at 2.)  Plaintiffs assert that the six products at issue here are not homeopathic and that this case has never been about homeopathy in general.  (*See* Dkt. 257, Opp'n at 1, 8-9.)  They argue that their theory of the case "has always been that the six Class Products are placebos."  (*Id.* at 8.)  Defendants contend that these assertions constitute an impermissible shift in case theory, and "Plaintiffs must be judicially estopped from changing theories."  (Mot. at 2.)

   A.    **Legal Standard**

"Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks and alteration omitted).  "This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."  *Id.* (internal quotation marks omitted); *see also Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910, 917 (9th Cir. 2001) ("Judicial estoppel . . . prohibits a litigant from asserting inconsistent positions in the same litigation.  The doctrine is commonly applied to bar a party from making a factual assertion in a legal proceeding which directly contradicts an earlier assertion made in the same proceeding." (internal quotation marks and citation omitted)).  The purpose of judicial estoppel "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  *New Hampshire*, 532 U.S. at 749-50 (internal quotation marks and citations omitted).

Judicial estoppel "is an equitable doctrine invoked by a court at its discretion."  *Id.* (internal quotation marks omitted).  Courts typically consider three factors in deciding whether to apply the doctrine in a given case.  *See id.*  "First, a party's later position must be 'clearly inconsistent' with its earlier position."  *Id.*  "Second, courts regularly inquire whether the party has succeeded in persuading a

---

[1] We also ordered the Parties to meet and confer to attempt to resolve both the objections to Plaintiffs' lodged exhibits and the issues presented in the motions *in limine*.  The Parties were directed to address any remaining issues in a joint briefing format.  On December 4, 2015, the Parties filed a joint brief regarding the objections, (Dkt. 250), and on January 4, 2016, they re-filed their joint brief concerning motions *in limine*, (Dkt. 254).

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | February 17, 2016 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Id.* (internal quotation marks omitted). "A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751. These factors are not "inflexible prerequisites . . . for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *Id.* Indeed, courts also consider invoking the doctrine out of "general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (internal quotation marks and alteration omitted).

> **B.   Whether Judicial Estoppel Precludes Plaintiffs from Changing Case Theories**
>
> **1.   Whether Plaintiffs' Current Theory of the Case Is "Clearly Inconsistent" with Their Earlier Theory**

At virtually every stage of the proceedings until submitting the trial brief, Plaintiffs have argued that Defendants' products are homeopathic and that the products' homeopathic preparation renders them ineffective. Plaintiffs' current assertion that the products are not homeopathic and that this case is not about homeopathy is clearly inconsistent with Plaintiffs' earlier position.

As noted, Plaintiffs argue that they have not changed case theories because their "theory of the case has always been that the six Class Products are placebos." (Opp'n at 8.) To support this argument, Plaintiffs point to sections of their Consolidated Amended Class Action Complaint ("Complaint"), discovery responses, expert reports, class certification brief, and opposition to Defendants' summary judgment motion that state that Defendants' products are no more effective than placebos, but which do not mention homeopathy. (*See id.* at 9-10.) This argument is unconvincing. It is true that Plaintiffs have consistently claimed that Defendants' products are placebos, but that does not mean that Plaintiffs have been arguing all along that the products are not homeopathic. Rather, the contents of Plaintiffs' Complaint, moving papers, and pre-trial filings demonstrate that Plaintiffs consistently have argued that Defendants' products are ineffective *because* they are homeopathic.

First, the Complaint contains numerous allegations that Defendants' products are homeopathic, homeopathy is a "pseudoscience," and the products do not work because of their homeopathic preparation. The first paragraph of the Complaint begins by stating that this action "arise[s] out of the sale of *homeopathic* cold and flu remedies sold over the counter[.]" (Dkt. 44, Compl. ¶ 1 (emphasis added).) The Complaint describes Defendant Hyland's, Inc. as a corporation that is "in the business of manufacturing, mass marketing and distributing *homeopathic* formulas[.]"  (*Id.* ¶ 7 (emphasis added).) As Defendants note, the first section of the factual allegations is entitled, "Homeopathy is a Pseudoscience." (*Id.* at 4; Mot. at 3.) This fifteen-paragraph section describes the basic principles underlying homeopathy and argues that "[b]ecause they are so heavily diluted, homeopathic remedies may not contain any pharmacologically active molecules, and, therefore, for such remedies to have pharmacological effect violates fundamental principles of science. . . .  The efficacy of homeopathic

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | February 17, 2016 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

remedies has been rejected repeatedly by medical science." (Compl. ¶¶ 26-27.) The next section describes how the Food and Drug Administration ("FDA") does not regulate homeopathic remedies, presumably to imply that homeopathic products are somehow inferior to other drug products. (*See id.* ¶¶ 31-41.)

The Complaint goes on to allege that there are "no studies which demonstrate that [Defendants'] *homeopathic* drugs are either fast acting or effective for relief from the symptoms of colds and flu." (*Id.* ¶ 64 (emphasis added).) After having explained that homeopathy is based on diluting active ingredients, Plaintiffs allege that Defendants' products "are so highly diluted that there is no scientific basis to support Hyland's claims that its products are effective." (*Id.* ¶ 65.) Within the same discussion, Plaintiffs assert that "properly conducted random clinical trials have repeatedly demonstrated that homeopathic remedies are no more effective than placebos." (*Id.* ¶ 68.) Taken together, these statements demonstrate that Plaintiffs were arguing that Defendants' products are homeopathic and are ineffective because of their homeopathic preparation.

Second, in their motion for class certification, Plaintiffs explicitly claimed that the products are homeopathic in making their commonality argument: "All of the Products are homeopathic. Defendants extoll the virtues of homeopathy and uniformly claim that their homeopathic Children's Cold and Flu Products will provide fast, safe, and effective relief for multiple cold and flu symptoms. But homeopathy is a pseudoscience." (Dkt. 82-1, Class Cert. Mot. at 4 (internal citations and footnote omitted).) Plaintiffs' reply similarly stated that "[e]ach and every one of the Products was homeopathically prepared, with extreme dilution of ingredients, and each claims to treat children's cold and flu symptoms. Whether the homeopathic preparation of the ingredients renders the Products mere placebos is an issue 'apt to drive the resolution of the litigation.'" (Dkt. 113, Pls.' Class Cert. Reply at 2 (internal citations omitted).)

Third, on summary judgment, in arguing that Defendants misrepresented the products as effective, Plaintiffs contended that "Defendants' claims are based on scientifically implausible theories contrary to fundamental principles of modern medicine." (*See* Dkt. 159, Jt. Br. at 3, 13.) By "scientifically implausible theories," Plaintiffs unquestionably were referring to homeopathy given their statement only a few lines later that "numerous studies have confirmed that homeopathy is not efficacious." (*See id.* at 3.) Two of Plaintiffs experts, Drs. Arthur Grollman and Edzard Ernst, lambasted homeopathy at length in their expert reports, supporting the notion that Plaintiffs were attempting to make this case about the ineffectiveness of homeopathy and, in turn, Defendants' homeopathic products. (*See* Dkt. 160, J.A. at 1698-1700, 1747-50, 1755.)

Fourth, leading up to trial, in both their Memorandum of Contentions of Law and Fact and in the Proposed Final Pretrial Conference Order, Plaintiffs represented that they would present expert evidence from Dr. Ernst "regarding the general principles of homeopathy and its ineffectiveness" and that Dr.

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | February 17, 2016 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

James Taylor[2] would testify that "there is no known biologic mechanism of action for homeopathy, and that the key concepts of homeopathy are not consistent with the established laws of science." (Dkt. 204, Pls.' Memo. at 6; Dkt. 218, Proposed Order at 16.)  These representations are consistent with Plaintiffs' general attack on homeopathy throughout this litigation and their repeated claims that Defendants' products are homeopathic.

In the Opposition, Plaintiffs contend that there is not a clear inconsistency in their positions for three primary reasons.  They first argue that "[t]here is no inconsistency between Plaintiffs' argument that the six Class Products are ineffective because they are placebos with no biologically active ingredients, and the argument that they are *not* homeopathic drugs because they are not listed in the [Homeopathic Pharmacopeia of the United States ("HPUS")] or in any Materia Medica."[3]  (Opp'n at 17 (emphasis in original).)  But, as explained, Plaintiffs' placebo argument always has been linked to the notion that the products are homeopathic.  Thus, there is in fact a clear inconsistency between Plaintiffs' prior assertion that the products are placebos and their current assertion that the products are not homeopathic.

Second, Plaintiffs argue that there is no "inconsistency between [their] argument that the products are not bona fide homeopathic drugs, and the statement in Plaintiffs' class certification brief . . . that 'All of the products are homeopathic.'"  (*Id.* at 18.)  Plaintiffs claim that the reason they claimed the products were homeopathic was because "Defendants wrote the word 'homeopathic' on the label for each of the Class Products[.]'"  (*Id.*)  This argument is both unconvincing and disingenuous.  It stands to reason that Plaintiffs would not have continuously referred to Defendants' products as homeopathic if Plaintiffs were arguing that the products are not homeopathic.  It also stands to reason that Plaintiffs would have stated at some point in the last three years, prior to submitting their trial brief a week before the trial date, that the products are not homeopathic.

Finally, Plaintiffs argue that no "estoppel can arise from the fact that some of the Plaintiffs' discovery responses and prior briefing included broader criticisms of homeopathy. . . . Plaintiffs' discovery responses were required to answer questions framed by Defendants, and in some instances . . . to rebut arguments advanced by Defendants, who have sought to rely on general theories of homeopathy as a substitute for proof of the efficacy of their products."  (*Id.*)  Again, this argument is disingenuous.  Plaintiffs, not Defendants, framed the Complaint, which discusses homeopathy at length and calls Defendants' products homeopathic.  Moreover, if Plaintiffs' argument had always been that the products are not homeopathic, one would expect *that* argument to be a rebuttal to Defendants' assertions that

---

[2] Defendants hired Dr. Taylor to perform a study on Cold 'n Cough 4 Kids ("CC4K"), one of the products at issue in this litigation.  According to Dr. Taylor's deposition testimony, the study showed that there was no statistically significant difference between CC4K and a placebo.  (*See* Dkt. 179, Summ. J. Order at 6.)

[3] The HPUS and Materia Medica are authoritative guides that catalog homeopathic ingredients.  Defendants argue that because HPUS and Materia Medica only catalog *ingredients*, not combination products, the six class products obviously would not appear in these texts.  (Reply at 7-8.)

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | February 17, 2016 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

homeopathy is effective. In sum, Plaintiffs have advanced clearly inconsistent positions by claiming that the products are ineffective because they are homeopathic and then asserting that the products are not homeopathic.

### 2.  Whether Plaintiffs Succeeded in Advancing Their Earlier Theory

The second *New Hampshire* factor—that a party persuaded a court to rely on or accept its earlier position—"is often dispositive." *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012); *see also Interstate Fire & Cas. Co., an Ill. Corp. v. Underwriters at Lloyd's, London*, 139 F.3d 1234, 1239 (9th Cir. 1998) ("A majority of courts apply judicial estoppel only if the court has relied on the party's previously inconsistent statement, and we have recently adopted that rule.").

Here, we twice relied on Plaintiffs' earlier position. In certifying the class, we relied on Plaintiffs' theory that Defendants' products are ineffective because of their homeopathic preparation. This theory was central to our commonality analysis under Federal Rule of Civil Procedure ("Rule") 23(a)(2):

> [A]ll of Plaintiffs' claims share the same fundamental premise: Defendants misrepresent that their products safely and effectively treat flu and cold symptoms when, in fact, they have no medicinal value whatsoever. *If Plaintiffs can prove that homeopathy is a "pseudoscience," as they claim, and that Defendants' products therefore uniformly do not perform as advertised, then the putative class will be entitled to relief under Plaintiffs' warranty and false advertising claims.* . . . Plaintiffs have sufficiently shown commonality.

(Dkt. 144, Class Cert. Order at 10 (emphasis added) (internal quotation marks and alterations omitted).) We rejected Defendants' argument that commonality could not be established given the different ingredients in each product. We said, "Plaintiffs are challenging the products' common homeopathic preparation. The *efficacy of homeopathy* is a question that will generate common answers apt to drive the resolution of the litigation." (*Id.* at 11 (emphasis added) (internal quotation marks omitted).) In discussing typicality under Rule 23(a)(3), we stated,

> *Plaintiffs' theory of the case is that Defendants' products are uniformly ineffective because of their homeopathic preparation.* Because the extent to which Plaintiffs' children differ from absent class members is immaterial to Plaintiffs' ability to prove the general inefficacy of homeopathy, any such differences are irrelevant for purposes of assessing the typicality of Plaintiffs' claims.

(*Id.* at 12 (emphasis added).) Thus, at class certification, we premised much of our Rule 23 analysis on the argument that Defendants' products are homeopathic and are ineffective because of their homeopathic preparation.

Plaintiffs' earlier theory also affected our analysis on summary judgment:

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | February 17, 2016 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

> Defendants also argue that the Taylor study cannot be used to create a triable issue of fact on all the Class Products because the study was limited to only one of the Class Products. We disagree. The theory behind Plaintiffs' class action is that the *homeopathic method of preparing the active ingredients in the Class Products renders their active ingredients ineffective.* It is reasonable to infer that the theory may be correct as to all the Class Products as well, since they are all prepared using the *same homeopathic methods*.

(Summ. J. Order at 6 (emphasis added).) As such, Plaintiffs prevailed in opposing summary judgment in large part because they argued that the products are homeopathic and that homeopathy is ineffective. Moreover, that the products are homeopathic was treated as an undisputed fact. (*See id.* at 2 ("The six products at issue in this class action are OTC homeopathic remedies for treating cold and flu symptoms in children[.] (Dkt. 168, SUF D1-6.)").)[4] Thus, at both the class certification and summary judgment stages, we relied on Plaintiffs' earlier theory to make a ruling that favored them.

Plaintiffs argue that when we referenced the products' "homeopathic preparation" or "common homeopathic dilution," the references "were merely a shorthand way to refer to Plaintiffs' central theory that the products are placebos because they do not contain any biologically active material." (Opp'n at 16.) Plaintiffs misconstrue our orders. We would not have used the term "homeopathic" as a shorthand way of referring to something that was not homeopathic. Again, Plaintiffs had advanced the theory that the products are placebos and contain no biologically active material *because* they are homeopathic. The block quotes above demonstrate that this was our understanding and that we relied on this understanding in reaching our conclusions. If Plaintiffs are now allowed to argue that the products are not homeopathic, then we will have been misled. "We don't allow parties to play fast and loose with the courts by adopting such contradictory positions." *Baughman*, 685 F.3d at 1134 (internal quotation marks and alterations omitted) (judicially estopping plaintiff in ADA case from claiming that she needed to use a Segway because she could not use a wheelchair when she successfully had claimed in earlier lawsuits that she needed to use a wheelchair); *see also Milton H. Green Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 994 (9th Cir. 2012) ("[I]f a litigant's current position is manifestly inconsistent with a prior position such as to amount to an affront on the court, judicial estoppel may apply." (internal quotation marks omitted)). Because we twice accepted Plaintiffs' earlier, inconsistent position, this factor favors judicial estoppel.

### 3. Whether Defendants Would Be Disadvantaged if Plaintiffs Are Not Estopped

The third *New Hampshire* factor asks us to consider "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing

---

[4] In the Statement of Undisputed Facts, Defendants listed the six products at issue as "over-the-counter ('OTC') homeopathic drug[s]." (*See* SUF D1-6.) Plaintiffs disputed this fact in part. (*See id.*) They did not dispute the fact that the products are "homeopathic." Rather, they disputed that the products are "drugs" "in the sense that [they have] any biological effect . . . or similarity to non-homeopathic over the counter drugs." (*See id.*) Plaintiffs' citations to admissible evidence in opposition to the proffered fact focus on the flaws of homeopathy in general and the results of the Taylor study, not on any evidence suggesting that the products are not homeopathic. (*See id.*)

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1983-GHK (MRWx) | Date | February 17, 2016 |
|---|---|---|---|
| Title | *Enzo Forcellati, et al. v. Hyland's, Inc., et al.* | | |

party if not estopped." 532 U.S. at 751. Defendants contend that they would be prejudiced by having to defend against a new case theory that abandons attacks on homeopathy. (Mot. at 11.) They argue that they have prepared their case for trial by gathering various experts to testify and write reports on the effectiveness and safety of homeopathy. (*Id.*) But Plaintiffs' new theory is an attempt to exclude these experts and frustrate three years of preparing to attack a now-abandoned argument. (*Id.* at 11-12.)

      We agree that Defendants would be prejudiced if Plaintiffs are permitted to advance their new theory. Defendants have spent years preparing a defense that responds to Plaintiffs' consistent argument that the products are homeopathic and that homeopathy is a pseudoscience. Allowing Plaintiffs to now claim that the products are not homeopathic and that this case is not about homeopathy would effectively allow them to disavow an undisputed fact that we, and Defendants, relied on at class certification and on summary judgment. As the *New Hampshire* Court stated, the purpose of judicial estoppel "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." 532 U.S. at 749-50 (internal quotation marks and citations omitted). This factor also favors the application of judicial estoppel here.

### III. CONCLUSION

      For the foregoing reasons, we conclude that the doctrine of judicial estoppel prevents Plaintiffs from changing case theories. For approximately three years, Plaintiffs continually have argued that Defendants' products are homeopathic, that homeopathy is a pseudoscience, and that the products are ineffective because of their homeopathic preparation. Plaintiffs are judicially estopped from making arguments inconsistent with this position. As such, Defendants' motion to judicially estop Plaintiffs from changing case theories is **GRANTED**. Because Defendants move for decertification only in the alternative, we decline to reach the merits of that aspect of the Motion.

      **IT IS SO ORDERED.**

|  | -- | : | -- |
|---|---|---|---|
| | Initials of Deputy Clerk | | Bea |